FILED
2025 Sep-10 PM 07:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Appendix H

# McKOOL SMITH

Jon Corey
jcorey@mckoolsmith.com

1717 K Street, NW
Suite 1000
Washington, D.C. 20006

Telephone: (202) 370-8300

August 21, 2025

**VIA ELECTRONIC MAIL**

Karin A. DeMasi
Cravath, Swaine & Moore LLP
Two Manhattan West
375 9th Avenue
New York, New York 10001

RE: *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406 (N.D. Ala.)

Dear Karin:

We write pursuant to the Court's August 8 Order directing counsel in certain Provider Opt-Out ("Provider") cases to discuss potential coordination with counsel for the Blue Defendants and counsel in the Subscriber Opt-Out cases. Specifically, we write to address your August 17, 2025 Letter that responded to the Provider's August 12 information requests that would permit Providers' counsel to identify what, if any, prior discovery in the MDL record could be applicable to the Provider cases so that the parties can have a more informed discussion about potential coordination.

The August 8 Order directed the parties to meet and confer. On August 12, 2025, to facilitate a meeting of counsel, Providers' counsel sent Defendants an information request to help Providers' counsel understand the scope of the Blues' MDL discovery record[1] and make informed and intelligent decisions with respect to the feasibility of coordination and to avoid duplication and delay. A copy of that request is attached as Exhibit A. The request asked for basic information regarding the parameters of prior discovery provided by the Blues in the MDL litigation, such as identifying depositions taken, custodians, search terms, productions, written discovery, the timing and scope of data production and the sources of such production, etc.

Aside from referencing the executive summaries of expert reports publicly available on the MDL Docket, you advised that no summaries or indices exist. That is not accurate; during our call, we discussed how, in the Subscriber Opt-Out matters, Defendants provided information similar to what the Providers requested (such as a list of depositions) to the plaintiffs, which Providers

[1] All references to MDL discovery and the MDL discovery record refer to documents, materials, information, data, and discovery responses the Blues produced or to testimony provided by Blue witnesses.

received from Subscriber counsel. You advised that Defendants remain unwilling to provide any sort of high-level summary or log of MDL litigation materials. You instead referred the Providers to information that could be gleaned from the massive MDL docket and suggested that the Subscriber Opt-Outs should collect this sort of information and provide it to the Providers. But that suggestion was not without condition; you asked Subscribers to check with Defendants first to confirm that such types of high-level information could be shared.

The Blues' response does not promote coordination or efficiency. The Blues, from Providers' perspective, would greatly benefit from providing the information requested, as it would allow the Providers to identify previously produced information that the Blues could efficiently produce again to Providers and help avoid any duplicative discovery. The alternative is for Providers to issue, and the Blues to respond to, discovery without regard to the contours of the Blues' previous productions, which does not seem aligned with the Court's directive.

Instead of answering basic questions regarding the MDL discovery record that would assist the Providers in forming an early assessment of the discovery materials needed in this complex case, you summarily advised that each Blue is willing to produce "relevant discovery (including documents and relevant structured data productions) that it previously produced in the MDL." August 17 Letter at 1. The Blues further offer to produce "relevant discovery produced in the Subscriber Opt-Out Actions (including MDL deposition transcripts, expert reports and written discovery responses." *Id.* This record, according to the Blues, comprises tens of millions of documents and many terabytes of data, as well as transcripts of hundreds of depositions." *Id.*[2] However, the Blues have provided neither guidance on what discovery they deem "relevant," nor any timeline for such productions. Delivering undifferentiated and unexplained information imposes unreasonable burdens on the Providers and their counsel. It also conflicts with the Court's directive that the parties across the cases engage in a constructive dialogue concerning discovery efficiencies that may be gained through coordination.

The Blues' offer to provide only certain information to Providers raises important questions, calling for more specific information. As matters stand, it appears the Blues are willing to provide a curated—yet still massive—production to Providers' counsel at a time of their choosing, expecting Providers to sort out what is or what may not be in the production. What criteria are the Blues using to determine what is and what is not "relevant" and, based on those criteria, what is being withheld? Is this the same MDL production made to the Subscriber counsel or is it different? If different, how is it different, and why is it different?

These questions are serious and not hypothetical. By way of example, during the August 18 call, Provider counsel asked whether all of the claims data that was produced in the MDL and Subscriber Opt-Out cases would be made available to Providers. You advised that Providers should assume that the Blues would not produce the same data to the Providers, without any further explanation. To be clear, Providers will not agree upfront to a production of only the structured data the Blues deign to provide, with no explanation of the specific data, whether it was previously produced, and how it may be different from other previous productions. And perhaps most

[2] The Blues are unwilling to produce any information to Providers' counsel without entry into a "data security agreement," that has yet to be circulated.

importantly, Providers need to understand why the Blues intend to limit their productions and the criteria for doing so.

The sooner the Blues provide details around what specifically the Blues are proposing to give, what the Blues are proposing to not give, and the basis for any distinctions, the sooner the Providers can assess the common ground, what sorts of holes need to be addressed, and work towards a plan to conduct efficient discovery. The Providers have no interest in a drawn-out discovery process—such as the Subscriber opt-out case, where: (i) there were extensive, specific dialogues on a Defendant-by-Defendant basis; (ii) it took approximately 7 months for Defendants to produce the portion of the MDL record Defendants' deemed relevant; (iii) approximately a year and a half lapsed before Defendants started producing documents from the period following MDL discovery; and (iv) Defendants attempted to withhold prior MDL deposition transcripts and interrogatory responses from production. The Providers hope that, through coordination, document discovery will be tailored to the claims and matters at issue, the Blues cannot unilaterally dictate the discovery needed to support the Providers' claims or address the Blues' defenses. At the pre-answer stage (that all of these cases are in), there is a transparent information asymmetry that needs to be addressed. Refusing to engage with the Providers in a constructive dialogue in the spirit of Rule 1 to identify the discovery relevant to this case and instead insisting on a massive document and information dump, contravenes the thrust of the Court's order.

Notwithstanding Defendants' refusal to provide the requested information, the Providers will attempt in good faith to identify (even at this early stage) what they understand to be significant shortcomings with Defendants' unclear proposal. The MDL discovery record was limited. Providers understand that: (a) no depositions occurred after 2017, (b) document productions generally were cut off in November 2016, and (c) pursuant to the Court's October 30, 2015 Order, discovery on both the subscriber track and the provider track in the MDL was limited to Alabama-specific cases *American Electric Motor Services Inc. v. Blue Cross and Blue Shield of Alabama et al.*, Case No. 2:12-cv-02169-RDP and *Conway v. Blue Cross and Blue Shield of Alabama et al.*, Case No. 2:12-cv-02532-RDP. (MDL Dkt. No 469). The depositions of the Blues seem to have tracked a narrow focus (and were split between subscriber issues and provider issues) and some Defendants do not appear to have been deposed at all.

Accordingly, the MDL discovery record will necessarily need to be updated and expanded. The Blues offer no suggestion to address that deficiency. Providers believe that proceeding into discovery promptly in the cases that have been transferred will address that concern. The Blues suggest that the Providers should be satisfied with "access to all prior litigation material" (albeit with numerous caveats as highlighted above) and that will be sufficient to permit Providers to proceed directly into resolution of certain "threshold issues" including standard of review. We do not understand what issues that the Blues believe need to be addressed concerning the "standard of review." To be sure, we are aware of Subscriber and Defendant submissions relating to the Court's scheduling of standard of review briefing following the close of fact discovery. We also are aware of the Court's 2018 Order and its 2022 Order relating to standard of review. We are not aware, however, what "standard of review" issues the Blues intend to raise with respect to these cases, when Defendants propose this happen, and how, procedurally this happens when Providers have received no discovery from any of the cases, some cases have yet to be transferred and others are just recently or soon to be filed, some complaints may still be amended and Defendants have

indicated that they intend to move to dismiss the complaints that are presently on file. Providing that sort of information may aid the Providers' assessment of appropriate discovery coordination.

Your letter also references the availability of (portions of) the discovery record in the Subscriber opt-out cases. We appreciate that offer, but the Blues cannot expect post-2016 materials produced in the Subscriber Opt-Out action, focused on Blues overcharging for administering large employer self-funded medical benefits plans, to satisfy Providers' discovery needs. Finally, and to be clear, even for materials that were produced for the older time-period within the MDL record, Providers are entitled to assess the discovery, determine its sufficiency and pursue discovery relevant to their case. The Providers' request for discovery lists was targeted at identifying the specific overlaps for the purposes of coordination; the Blues' refusal to meaningfully engage in that discussion is unhelpful.

**Provider Requests**

*MDL / Subscriber Discovery Record Questions*. Given the Blues' position, we ask that the Blues respond to the following.

1. What information are the Blues agreeing to produce, and what are they refusing to produce from the MDL discovery record? Why do the Blues find certain information to be not relevant?

2. What information are the Blues agreeing to produce and what are they refusing to produce from the Subscriber Opt-Out discovery record? Why do the Blues find certain information to be not relevant?

3. Which, if any, Defendant is willing to produce its entire discovery record from either the MDL or the Subscriber Opt-Out matters?

4. Are the Blues offering to produce any potentially relevant information beyond that which appears in the MDL discovery record or the Subscriber Opt-Out discovery record? If so, specifically what is that?

5. To determine overlap, if any, between (a) Blue witnesses or custodians in the MDL, and (b) potential Blue witnesses and custodians our clients are in the process of identifying, we need each Blue to identify their respective custodians in the MDL and the Subscriber Opt-Out cases.

6. What structured data sets is each Blues willing to reproduce from the MDL or Subscriber Opt-Out cases, and what structured data sets is each Blues unwilling to produce? Generally, for each such data set, please explain the basic parameters for the production: the sources of the data, the time frame covered, whether they are Alabama-specific or are productions covering more or all Blues, and the identification of the major data fields, and whether these include final claims payment information at the patient encounter level.

7. Are the Blues willing to stipulate that written discovery can proceed in the transferred actions?

8. What types of materials can be presently shared by the Subscriber Opt-Outs with the Providers including: custodial lists provided by Defendants, all discovery correspondence, including search term correspondence, Blue claims data dictionaries and related correspondence explaining it, organizational charts, written discovery requests (interrogatories and requests for admission); 30(b) notices and related correspondence? Any specific rules of the road to speed up the flow of information would be appreciated.

9. For the MDL non-expert deponent list and deposition log sent on August 18, are the Blues willing to provide a supplement with the following categories of information?

    a. Date of deposition;
    b. Noticing Party;
    c. Whether the deposition was 30(b)(1) or 30(b)(6); and
    d. If 30(b)(6), copy of 30(b)(6) notice and list of topics covered in the deposition.

10. Is there an equivalent non-expert deponent list and deposition log for the subscriber opt-out and ASO opt-out actions that the Blues are willing to send? Are the Blues willing to supplement it with the following categories of information?

    a. Date of deposition;
    b. Noticing Party;
    c. Whether the deposition was 30(b)(1) or 30(b)(6); and
    d. If 30(b)(6), copy of 30(b)(6) notice and list of topics covered in the deposition.

11. We further renew our requests for the discovery indices and lists specified in our August 12 letter as we continue to believe that information would allow both the Court and the parties to efficiently identify the overlap and gaps with existing discovery.

**Blues' Response to Providers' Complaints**

During the August 18 Call, Providers asked the Blues their position on responding to the complaints. Counsel for one of the Blues responded that they had identified deficiencies in the complaints, and suggested prospective motion practice, but the Blues were unwilling to state a position without knowing whether the filed complaints were the operative complaints. Certain counsel identified their complaints as being operative, and that they did not intend to amend at this time so the Blues can explain how they plan to respond to those complaints.

**Responses to Blues Requests for Information**

*Plaintiffs' Counsel and Transferred cases.* The plaintiffs' counsel group includes all counsel that have filed complaints, including the Boies Schiller firm in connection with the pending *Anesthesia Associates* case. We understand that the Zuckerman Spader and Susman Godfrey firms filed a complaint in the Northern District of California on behalf of a number of providers on August 20, 2025. That case is styled *Memorial Hospital for Cancer and Allied Diseases et al. v. Blue Cross Blue Shield Association et al.*, Case 3:25-cv-07066 (N.D. Cal.). Separately, at least one firm will be filing an additional complaint in the coming weeks.

*Operative Complaints*. Plaintiffs in the provider opt-out actions do not plan on filing amended complaints to add new allegations but are reserving their rights to do so consistent with the Federal Rules of Civil Procedure.

*Challenged Blue Rules.* You have asked for information identifying specific Blue Rules that are challenged and citations to paragraphs of the Complaint. The allegations in the respective complaints are clear and this is not an issue that falls within the scope of the coordination discussion contemplated by the August 8 Order. Furthermore, the details of the Blue Rules are contained in documents that are not public. Plaintiffs will not indulge Defendants' attempt to leverage early information asymmetry to "box in" Plaintiffs.

*Love Providers.* The Blues' request that plaintiffs identify providers that may fall within the *Love* settlement at this point is inappropriate. That is a discovery issue unique to the Provider Opt-Out cases and has nothing to do with coordination. Providers will address that question at the appropriate time in the appropriate context.

We look forward to our next conference on August 22, 2025.

Best regards,

/s/ Jon Corey

Jon Corey

cc: Provider Opt-Out Counsel
Subscriber Counsel
Defense Counsel

Enclosure