FILED

2026 Feb-26  PM 08:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |
|---|---|
| **IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION** | **Case No. 2:25-md-10000-AMM** |
| **(MDL No. 2406)** | Provider Opt-Out Cases |
|  | OPPOSED |
|  | ORAL ARGUMENT REQUESTED |
| THIS DOCUMENT RELATES TO ALL CASES |  |

## PROVIDER OPT-OUTS' OPPOSED MOTION TO COMPEL PRODUCTION OF PREVIOUSLY PRODUCED DISCOVERY

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ....................................................................................................1

II.     BACKGROUND ......................................................................................................4

        A.      Transfer of Provider Opt-Outs' Direct Actions to This MDL and
                Order for Early Coordination ...............................................................4

        B.      September 2025 Initial Status Conference ...........................................5

        C.      Defendants Renege on Their Discovery Commitments.......................7

III.    ARGUMENT.............................................................................................................8

        A.      The Court Should Compel the Blues to Produce the Previous
                Structured Data Discovery They Already Committed to Produce........8

                1.      All Parties Agreed that Reproduction of Structured Data Sets is
                        Efficient and Warranted. ...........................................................8

                2.      The Blues Agreed to Give Provider Opt-Outs Access to
                        Previously Produced Structured Data as Part of the Court
                        Ordered Meet and Confer Process. ...........................................10

                3.      The Blues' Reversal of Prior Representations Obstructs
                        Progress, Causes Unnecessary Delays, and Undermines
                        Efficient Case Management. ......................................................12

IV.     CONCLUSION........................................................................................................15

The Provider Opt-Out Plaintiffs ("Provider Opt-Outs") seek an order compelling the prompt production of structured data sets the Blues previously agreed to produce.

## I.    **INTRODUCTION**

Provider Opt-Outs began filing their complaints against the Blues in March of 2025, following more than twelve years of what the Blues have called "substantially identical" litigation in this MDL involving health care subscriber and provider class actions and ASO opt-outs ("ASOs"[1]), as well as certain provider opt-outs in California state court.[2] In those cases, the Blues produced structured data documenting their payments to health care providers, including the Provider Opt-Outs, for every single bill or "claim" for health care services providers rendered to Blues' subscribers since 2008 through 2023.[3] This structured data is likewise a

---

[1] "ASO" refers to "Administrative Services Only," plans of insurance offered by the Blues, whereby employers self-fund and are financially at risk for payments to providers. The Blues administer these employer self-funded plans in exchange for fees. For purposes of this Motion, "ASO opt-outs" refer to the National Account ASO Opt-Out Subscriber actions that were filed in this district beginning in September 2021 and were transferred to the MDL on August 8, 2025. *See* Compl., *Alaska Air Group, Inc. v. Anthem. Inc.*, No. 21-1209, ECF No. 1 (N.D. Ala. Sep. 4, 2021); Compl., *JetBlue Airways Corp. v. Anthem, Inc.*, No. 22-558, ECF No. 1 (N.D. Ala. May 2, 2022); Compl., *Bed Bath & Beyond, Inc. v. Anthem, Inc.*, No. 22-1256, ECF No. 1 (N.D. Ala. Sep. 27, 2022); Transfer Order, *In re Blue Cross Blue Shield Antitrust Litig.*, MDL No. 2406, ECF No. 951 (N.D. Ala. Aug. 8, 2025).

[2] *See VHS Liquidating Tr. v. Blue Cross of Cal*., No. RG21-106600 ("*Prime*") (Cal. Super. Ct. – Alameda Cnty., May 21, 2025).

[3] "Structured data" refers to any data that resides in a fixed field within a record or file, such as data stored in Oracle, SQL, or files that are in columns/rows or a fixed field with a predefined format. For purposes of this motion, structured data also includes data dictionaries, field listings and crosswalks, which define and describe data elements within a dataset, identify specific data points, and map data elements from one database to another, respectively.

critical part of the Provider Opt-Outs' cases, given the core allegation that the Blues conspired to underpay Provider Opt-Outs by billions of dollars.

The Blues sought transfer of the Provider Opt-Out actions to the MDL on the basis of efficiency, including integration with respect to their ability to use prior discovery produced in the MDL to avoid duplicative and inefficient discovery. *See* JPML Doc. 951 at 1, 9.[4] Immediately after the JPML's transfer order, Judge Proctor ordered the Blues, ASOs and Provider Opt-Outs to meet and confer to pursue appropriate coordination. Provider Opt-Outs and the Blues have since engaged in numerous meet and confers regarding access to the preexisting discovery record even as all parties acknowledged substantial new discovery needs to occur in the Provider Opt-Out cases. Throughout these discussions, the Blues requested that new discovery not be duplicative of earlier productions in the class and ASO actions—a condition to which Provider Opt-Outs have agreed.

Consistent with these discussions, at the first status conference in this case, *over five months ago* in September 2025, the Blues told this Court they were ready and willing to provide discovery already produced in this MDL and the *Prime* litigation in California following entry of an appropriate protective order.

---

[4] The Provider Opt-Out cases were first assigned to Judge Proctor and then reassigned to Judge Manasco. We refer to both judicial officers as "the Court." Citations using the format "Doc. ___" are to the Provider Opt-Out MDL docket, No. 25-md-10000, unless another docket is otherwise identified. Citations to the Judicial Panel on Multidistrict Litigation's ("JPML") docket for MDL No. 2406 use the format "JPML Doc. ___."

Specifically, in order to promote the efficiency promised to the JPML, the Blues told the Court that they were ready and willing to reproduce "all of [their] documents" promptly, and acknowledged that this would be an efficient approach.[5]  Following the status hearing, the Blues and Provider-Opt-Outs engaged in ten additional meet and confers during September and October 2025 regarding the specific structural data each Defendant would provide to the Provider Opt-Outs once a protective order was entered.

Unfortunately, on the same day the protective order was entered, the Blues reneged on their representations to the Court and have refused to provide the existing structured data unless Provider Opt-Outs accede to new concessions or obtain a Court order.  Notwithstanding this reversal, in their Opposition to Provider Opt-Outs' Motion to Set a Deadline for Responsive Pleadings, Doc. 83, the Blues contend that their "goal is the orderly and efficient progress of these cases" and request a case management order to "maximize[] the efficiencies to be gained from MDL coordination." *Id.* at 1, 5.  Provider Opt-Outs agree that efficiency is the goal. Moving the litigation forward by producing already-existing structured data—which the Blues have held for years—is the most efficient step available.  For all these reasons, Provider Opt-Outs respectfully request the Court's assistance and ask that the Court issue the attached Proposed Order, requiring the Blues to produce the

---

[5] Sep. 24, 2025 Status Conference Tr., Doc. 39 at 27:20-28:4.

structured data produced in the MDL and in *Prime* to Provider Opt-Outs within thirty (30) days.

## II.    **BACKGROUND**

### A. Transfer of Provider Opt-Outs' Direct Actions to This MDL and Order for Early Coordination

On August 8, 2025, the JPML transferred the Provider Opt-Out actions to the Northern District of Alabama.  In advocating for transfer, the Blues trumpeted the benefits of the MDL court's history with these cases to "ensure that discovery in the opt-out cases proceeds as expeditiously and equitably as possible."  *See* JPML Doc. 951 at 10.  On the day of the transfer, the Court ordered the parties "to meet and confer to consider what, if any, coordination would be appropriate between the ASO opt-out cases and the Provider opt-out cases" and file a joint report summarizing any conclusions reached during the meet and confer discussions.[6]  The parties subsequently met and conferred, including under Special Master Gentle's direction, and discussed, among other issues, how the existing discovery record should be shared with Provider Opt-Outs.  *See, e.g.*, Ex. A at 1 (Sep. 4, 2025 Letter from Blues to Provider Opt-Outs) (the Blues "suggested that *discovery from the MDL and other related cases* might allow the parties to coordinate and streamline discovery in these

---

[6] *See* August 8, 2025 Order ("Coordination Order") (citation modified) entered in *Alaska Air Group, Inc. v. Anthem, Inc.*, No. 21-cv-1209, Doc. 613; *JetBlue Airways Corp. v. Anthem, Inc.*, No. 22-cv-558, Doc. 537; and *Bed Bath & Beyond Inc., v. Anthem, Inc.*, No. 22-cv-1256, Doc. 504.

cases" *and* agreed to produce documents, including structured data "by early this fall; ***without the need for discovery requests***") (emphasis added).

Addressing structured data in the Joint Status Report, the Blues stated: "based on the Blues' proactive outreach, the parties to the Provider Opt-Out Actions are negotiating what structured data from the MDL will be reproduced in the Provider Opt-Out Actions. . . . Defendants proposed a [vendor security agreement ("VSR")] and request that it be entered so that structured data can be reproduced." Doc. 7 at 10.[7]

### B. September 2025 Initial Status Conference

On September 9, 2025, Judge Proctor set a status conference for September 24, 2025. Doc. 5 at 1. The Parties jointly proposed an agenda for the status conference, identifying "Discovery Record Coordination" and specifically, "[a]ccess to pre-existing discovery record," as the first item on the agenda. Doc. 23. Immediately after introductions, the Court addressed access to the preexisting discovery record. Sep. 24, 2025 Status Conference Tr., Doc. 39 at 7:14-24. The Parties were pleased to report progress on several gateway issues regarding coordination of access to the pre-existing discovery record. The Blues represented to the Court:

---

[7] This statement directly refutes the Blues' assertion at Doc. 83, footnote 8 (citing Doc. 7 at 9-10).

> [A]t the very outset of this case, **to afford [Provider Opt-Outs] efficiency and to ensure that they got the benefit of all the documents the Blues have already produced in this case**, we actually suggested to them as soon as you're part of the MDL and as soon as you're under the protective order, which they are, **you can have all of our documents. We will get them to you.** We will get them to you for the MDL. We will get them to you for the ASO cases.
>
> There's also a *Prime* case . . . over in California also has some productions. . . . We've said you can have all of that for the Blues documents, the ones we're in control of.

*Id.* at 27:22-28:12 (emphasis added). The Blues also told the Court they had offered to meet and confer on a plan-by-plan basis (with Cravath accounting for about fifteen Blue plans plus the Blue Cross Blue Shield Association) to address any gaps in production of both unstructured and structured data; the goal being "how can we move through this efficiently so that **we can get these documents in [Provider Opt-Outs] hands**." *Id.* at 29:2-4 (emphasis added); *see also* 29:25 ("[W]e're prepared to do those [meet and confers] promptly."). In response, the Court expressed its appreciation for everyone working together, noting: "I think this case affords us the opportunity to jump right into some discovery exchanges early on without having to go through [the pleadings before discovery]." *Id.* at 30:6-8.

Following the hearing, Judge Proctor promptly entered the stipulated order for VSR on September 25. *See* Doc. 34.

### C. Defendants Renege on Their Discovery Commitments

As offered by the Blues, Provider Opt-Outs participated in over ten conferences with different counsel for the Blues from September 26 through October 27, 2025, regarding the promised production of existing structured data. In an October 10, 2025 letter, the Blues committed to begin a production of the structured data produced in the *Prime*[8] case "***within approximately 2 weeks from entry of the protective order, and will aim to complete any such production within 4 weeks of that***." Ex. B at 5 (Oct. 10, 2025 Letter from Blues to Provider Opt-Outs) (emphasis added).

On November 4, 2025, the Court entered a stipulated protective order enabling Provider Opt-Outs' access to documents and data previously produced by the Blues. Doc. 59. That same day, however, the Blues suddenly reversed course and stopped cooperating regarding structured data. Despite their prior commitments and representations to the Court, the Blues informed Provider Opt-Outs that they now refuse "to provide **any** discovery until the [C]ourt . . . issued an order on a consolidated complaint and the parties . . . engaged in the standard Rule 16/Rule 26 processes." Ex. C at *5 (Nov. 4, 2025 Email from Blues to Provider Opt-Outs).

---

[8] In the MDL and *Prime* cases, the Blues produced structured data documenting their payments to health care providers, including the Provider Opt-Outs, for every single bill or "claim" for health care services providers rendered to Blues' subscribers since 2008. In the MDL, the Blues produced structured data from at least 2008 through 2014, and in *Prime,* the Blues supplemented their structured data productions from 2015 through 2023.

The Blues have maintained this position ever since and have refused to produce this relevant and readily available structured data discovery in their possession. Instead, the Blues have continued to use the existing structured data discovery as leverage to pressure Provider Opt-Outs to agree to the Blues' demands for a consolidated complaint,[9] leaving Provider Opt-Outs with no choice but to seek an order to enforce the Court's coordination goals and compel the Blues to do what they already told this Court they would do: produce all structured data already produced in the MDL and *Prime* matters.

## III. ARGUMENT

### A. The Court Should Compel the Blues to Produce the Previous Structured Data Discovery They Already Committed to Produce

#### 1. All Parties Agreed that Reproduction of Structured Data Sets is Efficient and Warranted

This motion presents an easy issue for resolution as all parties have repeatedly discussed and agreed that the Blues' early reproduction of previously produced structured data sets is desirable. Health care claims data is extraordinarily complex and encompasses billions of different data points. Access to the already-produced structured data is essential as it contains numerous data points that may not exist in Provider Opt-Outs' own claims data. The analysis and interpretation of such large

---

[9] The Blues have failed to respond to any of the Provider Opt-Out complaints. That failure is subject to a separate pending motion. *See* Doc. 80.

data sets, which is common in complex antitrust actions, typically requires many months of sustained analysis.

Reproducing these complex data sets assists all parties by allowing Provider Opt-Outs to understand the many nuances and intricacies of these previous productions from numerous different Blues and thus take steps to avoid future duplication.  The Blues and their experts have had access to this data for many years. The Provider Opt-Outs have never seen any of it.  Allowing Provider Opt-Outs to understand what discovery has already been produced will greatly reduce and potentially avoid future disputes regarding the scope of any additional structured discovery requests, conserve this Court's case management resources, and expedite and streamline the litigation.  Ordering the Blues to reproduce the structured data furthers the directives behind the Court's Coordination Order and efficient case management in this MDL.  *See* Coordination Order at ¶¶ 2-3; Fed. R. Civ. P. 26(d)(1) (permitting a party to seek discovery before Rule 26(f) conference "by court order"); Manual for Complex Litigation § 11.13 (4th ed. 2004) ("[Rule 26(a)(1)] does not require actual production (except for damage computations and insurance agreements), but only identification of relevant information and materials.  The judge may nevertheless direct the parties to produce and exchange materials in advance of discovery, subject to appropriate objections.  Effective use of this device

without excessive and unnecessary burdens on the parties can streamline the litigation.").

The Blues told this Court that Provider Opt-Outs would be afforded that efficiency—once subject to the protective order, they represented that Provider Opt-Outs **"can have all our documents"** from the MDL, the ASO cases, and the *Prime* case.  Sep. 24, 2025 Status Conference Tr., Doc. 39 at 27:22-28:12 (emphasis added).  And they repeatedly represented to the Court and Provider Opt-Outs that they would provide the existing structured data discovery within weeks of the entry of the Protective Order.  *See* Ex. B at 5 (Oct. 10, 2025 Letter from Cravath to Provider Opt-Outs) (stating that the Blues would be in a position to produce the data dictionaries and field listings "***one week after the parties entered into a protective order***," and "***to be able to begin reproducing any agreed-upon structured data from Prime within approximately 2 weeks from entry of the protective order, and will aim to complete any such production within 4 weeks of that***" (emphasis added)).  In short, the Blues have already conceded the obvious: turning over previously produced structured data at the outset of the case is most efficient.

### 2. The Blues Agreed to Give Provider Opt-Outs Access to Previously Produced Structured Data as Part of the Court Ordered Meet and Confer Process

Immediately after the JPML transferred these actions to the Northern District of Alabama, the Court, recognizing the importance of discovery efficiencies,

instructed the parties to "meet and confer to consider what, if any, coordination would be appropriate between the ASO opt-out cases and the Provider opt-out cases." *See* Coordination Order at ¶ 2.  The parties subsequently met and conferred on coordination and, under Special Master Gentle's direction, discussed issues including sharing the existing discovery record.

During the meet and confer process ahead of the September 24, 2025 status conference, the Blues told Provider Opt-Outs that "[a]s you know, immediately upon transfer of these cases by the JPML, ***Defendants suggested that discovery from the MDL and other related cases might allow the parties to coordinate and streamline discovery in these cases***."  Ex. A at 1 (Sep. 4, 2025 Letter from Blues to Provider Opt-Outs) (emphasis added).  The Blues further stated that they had also "offered to provide a Defendant-by-Defendant chart setting forth the scope of reproduction that each Blue Plan is willing to make on a priority basis, *i.e.*, ***by early this fall; without the need for discovery requests***; and based only on our expectation that additional requests will be tailored and non-duplicative."  *Id.* (emphasis added).  The Blues attached to the September 4 letter Exhibit A, a chart listing the structured data each Blue plan and the Blue Cross Blue Shield Association agreed to produce.  *See id.* at 4-8.

The Blues made similar representations to the Court in the September 10, 2025 joint status report, including a slightly revised version of their list of the

structured data each agreed to produce (*see* Doc. 7-5), and included the Blues' promise "to make substantial amounts of discovery available [to Provider Opt-Outs] as soon as all necessary protective orders are in place."  Doc. 7 at 4.  The Blues further advised Provider Opt-Outs they were willing to produce a substantial amount of structured data, but also required that Provider Opt-Outs negotiate separately with counsel for each of the 35 Blues concerning their respective data.  Doc. 7 at 2. Provider Opt-Outs did so without delay and met and conferred with counsel for each of the many Blues, beginning on September 26, 2025, and concluding on October 27, 2025.  *See, e.g.,* Ex. D (Emails from Provider Opt-Outs to Blues).

During these meet and confer calls and in a subsequent written communication by the Blues on October 10, 2025 (*see* Ex. B (Oct. 10, 2025 Letter from Blues to Provider Opt-Outs)), Provider Opt-Outs were led to believe that the only hold up on producing data dictionaries, field listings and the remaining substantial structured data from the MDL and *Prime* matter was the entry of a new protective order.  The Blues raised no other basis for delaying this production.  *See id.*

### 3. The Blues' Reversal of Prior Representations Obstructs Progress, Causes Unnecessary Delays, and Undermines Efficient Case Management

The ***same day*** the Protective Order was entered, the Blues reneged on their commitment to produce structured data already produced in the MDL and *Prime*

case, now conditioning production on Provider Opt-Outs' agreement to file a consolidated complaint. *See* Ex. C at *5 (Nov. 4, 2025 email from Cravath to Provider Opt-Outs). The Blues (represented by Cravath) and Provider Opt-Outs exchanged emails from November 4 through 10, 2025, attempting unsuccessfully to resolve this newly created dispute. Since then, the Blues' position remains unchanged, and they refuse to produce the previously produced structured data absent Provider Opt-Outs' agreement to file a consolidated complaint or pursuant to a Court order. *See* Ex. C (Emails between Cravath and Provider Opt-Outs from November 4 through 10, 2025); *see also* Ex. E (Dec. 15, 2025 Letter from Blues to Provider Opt-Outs); Exs. F-H (Emails from counsel Bodman, PLC (counsel to BCBS-MI and BCBS-VT) on November 12, Hogan Lovells (counsel to BCBS-LA, BCBS-MN, BCBS-RI, Cambia/Regence, Elevance and Horizon) on November 15, and Brunini Law (counsel to BCBS-MS) on December 1, 2025, referring to the same position referenced in the November 4 email from the Cravath Blues regarding their refusal to produce the previously produced structured data).

The Blues' reversal contravenes the Court's directive requiring the Parties to coordinate regarding potential efficiencies that can be obtained through prior discovery, and it contradicts the Blues' representations to this Court. Even as the Blues continue to withhold the structured data, they have recently claimed that their "goal is the orderly and efficient progress of these cases" and purport to "maximize[]"

the efficiencies to be gained from MDL coordination." Doc. 83 at 1, 5. If efficiency is the Blues' goal, then they should be compelled to adhere to the most efficient course of producing the already-collected, already-produced structured data immediately, rather than conditioning it on Provider Opt-Outs' capitulation to unrelated procedural demands.

Time is of the essence. The Blues' previously produced structured data exists in raw form, extracted from several different software programs from 2008 through 2023, and will require substantial time and effort for Provider Opt-Outs' experts to process before it can be analyzed. There is also no justification for delaying production of structured data the Blues have already produced in related actions; the burden of production is minimal because, by definition, the data already exists in produced form. And the Blues have not provided any such justification. In fact, they stated numerous times from August through November, before abruptly changing their position, that they favored efficiently moving these cases forward and were ready and willing to produce the structured data without the need for discovery requests. *See* Ex. A (Sep. 4, 2025 Letter from Blues to Provider Opt-Outs); Ex. B (Oct. 10, 2025 Letter from Blues to Provider Opt-Outs); *see also* Doc. 7 at 10; Sep. 24, 2025 Status Conference Tr., Doc. 39 at 29:2-4).

This is not a question of burden or feasibility. The Blues have agreed to allow Provider Opt-Outs access to previously produced unstructured documents without

condition, yet now refuse to produce the structured data they also specifically committed to provide. The asymmetry is not accidental—unstructured documents (the majority of which were produced a decade ago) are of less immediate use to Provider Opt-Outs' experts than structured claims data, which goes to the heart of Provider Opt-Outs' cases. The Blues' selective invocation of "efficiency" in recent filings, Doc. 83 at 1, 5-6, exposes that their delay is strategic, not principled. Any continued delay of production is manufactured and exists only to delay and prejudice Provider Opt-Outs. The Blues already possess the structured data and can deploy their experts to use the data to prepare their defense, while Provider Opt-Outs are prevented from moving their expert analyses forward. The result is an unjustified and asymmetric advantage without a proper basis and an unnecessary delay of the litigation.

## IV.    **<u>CONCLUSION</u>**

For the foregoing reasons, Provider Opt-Outs respectfully request that the Court order the Blues to produce all previously produced structured data in the MDL and the *Prime* case within thirty (30) days, as set forth in the Proposed Order.

Dated: February 26, 2025

Respectfully submitted,

*/s/ Judith A. Zahid*
Judith A. Zahid
Eric W. Buetzow
Heather T. Rankie
Sarah Van Culin
**Zelle LLP**
555 12th Street, Suite 1230
Oakland, CA 94607
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
jzahid@zellelaw.com
ebuetzow@zellelaw.com
hrankie@zellelaw.com
svanculin@zellelaw.com

*Attorneys for Associated Health Services, Inc.; Duke Affiliations Network, Inc.; Duke Health Integrated Practice, Inc.; Duke University Affiliated Physicians, Inc.; Duke University Health System, Inc.; Duke University*

*/s/ Sean S. Zabaneh*
Sean S. Zabaneh
Sean P. McConnell
Sarah O'Laughlin Kulik
Jessica Priselac
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, Pennsylvania 19103
(215) 979-1000
sszabaneh@duanemorris.com
spmcconnell@duanemorris.com
sckulik@duanemorris.com
jpriselac@duanemorris.com

*/s/ Michael E. Martínez*
Michael E. Martínez (Ill. Bar No. 6275452)
Lauren Norris Donahue (Ill. Bar No. 6294505)
Victoria S. Pereira Duarte (Ill. Bar No. 6336540)
**K&L GATES LLP**
70 W. Madison St., Suite 3300
Chicago, IL 60602
Telephone: (312) 372-1121
Michael.Martinez@klgates.com
Lauren.Donahue@klgates.com
Victoria.Duarte@klgates.com

Michael J. Stortz (Cal. Bar No. 139386)
**K&L GATES LLP**
4 Embarcadero Ctr, Suite 1200
San Francisco, California 94111
Telephone: (415) 882-8200
Michael.Stortz@klgates.com

Richard W. Fields (D.C. Bar No. 418444)
Martin Cunniff (D.C. Bar No. 424219
Edward Han (D.C. Bar No. 394515)
**FIELDS HAN & CUNNIFF PLLC**
1701 Pennsylvania Avenue NW, Suite 200
Washington, D.C.
Telephone: (833) 382-9816
fields@fhcfirm.com
martincunniff@fhc.com
edhan@fhcfirm.com

*Counsel for Bon Secours Mercy Health, Inc., University Health Systems of*

Rebecca Bazan
**DUANE MORRIS LLP**
901 New York Avenue N.W., Ste 700
East
Washington, D.C. 20001
(202) 766-7800
rebazan@duanemorris.com

Wilson F. Green
**Wilson F. Green LLC**
301 19th Street North, Ste. 525
Birmingham, AL 35203
(205) 722-1018
wilson@wilsongreenlaw.com

*Attorneys for Plaintiffs Temple University Health System, Inc.; The Trustees of the University of Pennsylvania; The Children's Hospital of Philadelphia; Northwell Health, Inc.; HMH Hospitals Corporation; The Nemours Foundation; Penn State Health; WellSpan Health; Geisinger Health; MedStar Health, Inc.; Tower Health; Doylestown Hospital; Grand View Hospital d/b/a Grand View Health; Halifax Hospital Medical Center; Hunterdon Healthcare System, Inc.; Meadville Medical Center; St. Clair Health Corporation; Penn Highlands Healthcare, Inc.; Holy Redeemer Health System; St. Luke's Health Network, Inc. d/b/a St. Luke's University Health Network; Independence Health System; Eastern Maine Healthcare Systems d/b/a Northern Light Health; LHHealth, LLC, Harvard Medical Faculty Physicians at Beth Israel Deaconess*

*Eastern Carolina, Inc., Endeavor Health, INTEGRIS Health, Inc., Main Line Health, Inc., Medical University Hospital Authority, Mercy Health, Norton Healthcare, Inc., Providence St. Joseph Health, Roper St. Francis Healthcare, Sanford, Thomas Jefferson University, The Regents of the University of Michigan on behalf of University of Michigan Health, University of North Carolina Health Care System, University of Rochester, and West Virginia United Health System, Inc.*

*/s/ Cindy Reichline*
Keith Butler
Cindy Reichline
Shira Liu
Fiona Tang
Taylor Keating
Ryan Roth
**BRS LLP**
2121 Avenue of the Stars
Suite 800
Los Angeles, CA 90067
Tel: (310) 295-9524
kbutler@brsllp.com
creichline@brsllp.com
sliu@brsllp.com
ftang@brsllp.com
tkeating@brsllp.com
rroth@brsllp.com

*Attorneys for Plaintiffs Allina Health System; Atlantic Health System; CentraCare Health System; Fairview Health Services; Mayo Clinic; RWJ Barnabas Health, Inc.; University of*

Medical Center, Inc.; Radiology
Partners, Inc.; and Highlands
Oncology Group, P.A.

/s/ Kathryn A. Reilly
Kathryn A. Reilly
Michael T. Williams
Judith P. Youngman
Galen D. Bellamy
Joel S. Neckers
Michael R. Krantz
Michael Baker
370 17th Street, Suite 4500
Denver, CO 80202
**WHEELER TRIGG O'DONNELL
LLP**
370 17th Street, Suite 4500
Denver, CO 80202
Email: reilly@wtotrial.com
Telephone: (303) 244-1918
reilly@wtotrial.com
youngman@wtotrial.com
bellamy@wtotrial.com
neckers@wtotrial.com
krantz@wtotrial.com
mbaker@wtotrial.com

Attorneys for Plaintiffs Corewell
Health, Iowa Health System d/b/a
UnityPoint, and Hospital Sisters
Health System

BRENNA BIRD
Attorney General of Iowa

/s/ Eric H. Wessan
Eric H. Wessan
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319

Florida Health Corporation; and The
University of Chicago Medical Center

/s/ Jon Corey
Jon Corey
**MCKOOL SMITH, PC**
1717 K Street NW, Suite 1000
(202) 370-8300
jcorey@mckoolsmith.com

John Briody
James Smith
**MCKOOL SMITH, PC**
1301 Avenue of the Americas, 32nd
Floor
New York, New York 10019
(212) 402-9400
jbriody@mckoolsmith.com
jsmith@mckoolsmith.com

Lew LeClair
**MCKOOL SMITH, PC**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4000
lleclair@mckoolsmith.com

Attorneys for Plaintiffs Temple
University Health System, Inc.; The
Trustees of the University of
Pennsylvania; The Children's Hospital
of Philadelphia; Northwell Health, Inc.;
HMH Hospitals Corporation; The
Nemours Foundation; Penn State
Health; WellSpan Health; Geisinger
Health; MedStar Health, Inc.; Tower
Health; Doylestown Hospital; Grand
View Hospital d/b/a Grand View
Health; Halifax Hospital Medical
Center; Hunterdon Healthcare System,

18

(515) 823-9117
eric.wessan@ag.iowa.gov

*Counsel for State University of Iowa*

*/s/ Ross E. Elfand*
Robert M. Cooper
Hershel Wancjer
**KING & SPALDING LLP**
1700 Pennsylvania Avenue
NW Suite 900
Washington, DC 20006
rcooper@kslaw.com
hwancjer@kslaw.com
Telephone: (202) 737-0500

Damien Marshall
Ross E. Elfand
Marisa Manzi
Annika Burton
Alexandra Valas
Annie H. Somerville (admission to S.D.N.Y. pending)
**KING & SPALDING LLP**
1290 Avenue of the Americas
14th Floor New York, NY 10104
dmarshall@kslaw.com
relfand@kslaw.com
mmanzi@kslaw.com
aburton@kslaw.com
lvalas@kslaw.com
Telephone: (212) 556-2100

*Attorneys for Plaintiffs NorthBay Healthcare Corporation; ApolloMD Business Services, LLC; Beebe Medical Center, Inc. d/b/a Beebe Healthcare; Covenant Health, Inc.; Kaweah Delta Health Care District; Memorial Health Services d/b/a Inc.; Meadville Medical Center; St. Clair Health Corporation; Penn Highlands Healthcare, Inc.; Holy Redeemer Health System; St. Luke's Health Network, Inc. d/b/a St. Luke's University Health Network; Independence Health System; Eastern Maine Healthcare Systems d/b/a Northern Light Health; LHHealth, LLC, Harvard Medical Faculty Physicians at Beth Israel Deaconess Medical Center, Inc.; Radiology Partners, Inc.; and Highlands Oncology Group, P.A.*

*/s/ Ryan P. Phair*
Ryan P. Phair
Michael F. Murray
Carter C. Simpson
Christopher C. Brewer
Emma Hutchison
Terence Parker
Hasan Siddiqui
**PAUL HASTINGS LLP**
2050 M Street NW
Washington, DC 20036
ryanphair@paulhastings.com
michaelmurray@paulhastings.com
cartersimpson@paulhastings.com
chrisbrewer@paulhastings.com
emmahutchison@paulhastings.com
terenceparker@paulhastings.com
hasansiddiqui@paulhastings.com
Telephone: (202) 551-1751

Stephen J. McIntyre
**PAUL HASTINGS LLP**
515 South Flower Street, Fl. 25
Los Angeles, CA 90071
stephenmcintyre@paulhastings.com
Telephone: (213) 683-6110

*MemorialCare Health System; Mount Sinai Medical Center of Florida, Inc.; North Broward Hospital District d/b/a Broward Health; Ochsner Clinic Foundation; Ochsner LSU Health System of North Louisiana; Hospital Service District No. 1 of St. Charles Parish; St. Tammany Parish Hospital Service District No. 2; Salinas Valley Memorial Healthcare System d/b/a Salinas Valley Health; Steward Health Care System LLC; Tallahassee Memorial HealthCare, Inc.; Lubbock County Hospital District; CEP America, LLC d/b/a Vituity*

/s/ *Steven Sklaver*
Steven Sklaver
Glenn C. Bridgman
Molly A. Karlin
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ssklaver@susmangodfrey.com
gbridgman@susmangodfrey.com
mkarlin@susmangodfrey.com

Tanner Laiche
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
tlaiche@susmangodfrey.com

Cyril V. Smith
csmith@zuckerman.com
**ZUCKERMAN SPAEDER LLP**

*Attorneys for Adventist Health System Sunbelt Healthcare Corporation d/b/a AdventHealth; Adventist Health System/West; Ardent Health Partners, Inc.; Banner Health; Christiana Care Health Services, Inc.; City of Hope; CHS/Community Health Systems; Corewell Health; Duke Affiliations Network, Inc.; Duke Health Integrated Practice, Inc.; Duke University Affiliated Physicians, Inc.; Duke University Health System, Inc.; Duke University; Henry Ford Health System d/b/a Henry Ford Health; Hospital Sisters Health System; Inova Health Care Services; Iowa Health System d/b/a UnityPoint Health; Knight Health Holdings, LLC; Lifepoint Health, Inc.; Mass General Brigham Incorporated; Mercy Hospital, Iowa City, Iowa, and Mercy Service Iowa City, Inc.; Northeast Georgia Health System; Novant Health, Inc.; Rochester Regional Health; Sound Inpatient Physicians, Inc.; State University of Iowa; Sutter Health; Texas Health Resources; the University of Wisconsin Hospitals and Clinics Authority; Associated Health Services, Inc.*

/s/ *R. Bruce Barze, Jr.*
R. Bruce Barze, Jr. (asb-8163-R71R)
**Barze Taylor Noles Lowther LLC**
Lakeshore Park Plaza
2204 Lakeshore Drive, Ste. 425
Birmingham, Alabama 35209
(205) 872-1015
bbarze@btnllaw.com

*Attorney for Adventist Health System*

100 E Pratt Street, Suite 2440
Baltimore, MD  21202
Telephone: (410) 332-0444
Facsimile: (410) 659-0436
Christopher R. MacColl
cmaccall@zuckerman.com
**ZUCKERMAN SPAEDER LLP**
2100 L Street NW, Suite 400
Washington, D.C. 20037
Telephone: (202) 778-1800
Facsimile: (202) 822-8106

*Attorneys for Plaintiffs Memorial Hospital for Cancer and Allied Diseases, Memorial Sloan-Kettering Cancer Center, and South Shore Hospital, Inc.*

/s/ Daniel L. Warshaw
DANIEL L. WARSHAW
dwarshaw@pwfirm.com
BOBBY POUYA
bpouya@pwfirm.com
MICHAEL H. PEARSON
mpearson@pwfirm.com
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

*Attorneys for Plaintiffs IES Central Texas PLLC; IES HSP Indiana LLC; IAS Arizona PLLC; IAS Oklahoma LLC; IES Alabama PLLC; IES Arizona PLLC; IES Colorado PLLC; IES Carrollton PLLC; IES Florida PLLC; Integrative Emergency Services Physician Group -Houston, PLLC; IES HSP Oklahoma LLC; IES*

*Sunbelt Healthcare Corporation d/b/a AdventHealth; Adventist Health System/West; Ardent Health Partners, Inc.; Banner Health; Christiana Care Health Services, Inc.; City of Hope; CHS/Community Health Systems; Corewell Health; Henry Ford Health System d/b/a Henry Ford Health; Hospital Sisters Health System; Inova Health Care Services; Iowa Health System d/b/a UnityPoint Health; Knight Health Holdings, LLC; Lifepoint Health, Inc.; Mass General Brigham Incorporated; Northeast Georgia Health System; Novant Health, Inc.; Rochester Regional Health; Sound Inpatient Physicians, Inc.; State University of Iowa; Texas Health Resources; and the University of Wisconsin Hospitals and Clinics Authority*

/s/ Lee Van Voorhis
Lee Van Voorhis
Christos Christodoulou
**WOMBLE BOND DICKINSON (US) LLP**
2001 K Street NW
Washington, DC 20006
Lee.VanVoorhis@wbd-us.com
Christos.Christodoulou@wbd-us.com
Telephone: (202) 857-4563

Jason C. Hicks
Ian R. Dickinson
**WOMBLE BOND DICKINSON (US) LLP**
201 E. Main Street, Suite P
Charlottesville, VA 22902
Jason.Hicks@wbd-us.com

21

*Hospitalists PLLC; IES Oklahoma LLC; IES South Carolina LLC; Integrative Health Arizona LLC; Integrative Care Services Florida LLC; IES OBS Colorado PLLC; Integrative Emergency Services Physician Group, P.A.; IES Arkansas PLLC; IES Hsp Arkansas PLLC; IES Missouri LLC; IES Hsp Missouri LLC; Integrative Health Texas PLLC, AmeriTeam Services, LLC; Southeastern Emergency Physicians LLC; Texas Medicine Resources, LLP; Emergency Coverage, LLC; Florida Emergency Physicians Kang & Associates, M.D., LLC; Longhorn Emergency Medicine Associates, P.A.; Mid-Ohio Emergency Services LLC; ACS Primary Care Physicians – Southeast, P.C.; Fremont Emergency Services (Scherr), Ltd.; Texas Physician Resources, LLP; InPhyNet South Broward, LLC; Paragon Contracting Services, LLC; Paragon Emergency Services LLC; ACS Primary Care Physicians Southwest, P.A.; Southeastern Emergency Physicians of Memphis, LLC; Emergency Services of Oklahoma, P.C., CommonSpirit Health; Dignity Health; Dignity Community Care; Virginia Mason Franciscan Health; Catholic Health Initiatives Colorado; St. Luke's Health System Corporation d/b/a CHI St. Luke's Health; CHI Nebraska d/b/a CHI Health; and KentuckyOne Health, Inc.*

/s/ Harvey Wolkoff
Harvey J. Wolkoff

Ian.Dickinson@wbd-us.com
Telephone: (202) 857-4536

Richard J.R. Raleigh, Jr.
**WOMBLE BOND DICKINSON (US) LLP**
200 Davis Cir SW
Suite 200
Huntsville, Alabama 35801
Richard.Raleigh@wbd-us.com
Telephone: (256) 834-8651

*Attorneys for Plaintiffs Phoebe Putney Memorial Hospital, Inc., Phoebe Sumter Medical Center, Inc., Phoebe Worth Medical Center, Inc., and Phoebe Physician Group, Inc.*

/s/ William Lavery
William Lavery
Joseph Ostoyich
Danielle Morello
Jordan Passmore
Dorothea R. Allocca
Sung Shin
**CLIFFORD CHANCE US LLP**
2001 K Street NW
Washington, DC 20006
Tel: (202) 912-5000
william.lavery@cliffordchance.com
joseph.ostoyich@cliffordchance.com
danielle.morello@cliffordchance.com
jordan.passmore@cliffordchance.com
dodi.allocca@cliffordchance.com
sung.shin@cliffordchance.com

Sanaz Payandeh
**CLIFFORD CHANCE US LLP**
Two Manhattan West
375 9th Avenue

Aliki Sofis
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
111 Huntington Avenue, Suite 520
Boston, MA 02199-3600
Tel.: (617) 712-7100
harveywolkoff@quinnemanuel.com
alikisofis@quinnemanuel.com

Adam B. Wolfson
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
865 S. Figueroa St., 10th Fl.
Los Angeles, CA 90017
Tel.: (213) 443-3000
adamwolfson@quinnemanuel.com

David LeRay
Samuel I. Waranch
Vinay S. Basti
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
295 Fifth Ave., 9th Fl.
New York, NY 10016
Tel.: (212) 849 7100
davidleray@quinnemanuel.com
samuelwaranch@quinnemanuel.com
vinaybasti@quinnemanuel.com
*Attorneys for Plaintiffs Boston
Children's Hospital et al.*

New York, New York 10001
Tel: (212) 878-8000
sanaz.payandeh@cliffordchance.com

*Attorneys for Plaintiffs Mount Nittany
Health System and Weill Cornell
Medicine*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 26, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF System, which will send notices of such filing to all counsel of record.

Dated:  February 26, 2026

*s/ Michael E. Martínez*
Michael E. Martínez
