# EXHIBIT B

# CRAVATH

Lillian S. Grossbard
lgrossbard@cravath.com
T +1-212-474-1290
New York

October 10, 2025

*In re Blue Cross Blue Shield Antitrust Litigation, MDL No. 2406* (N.D. Ala.)

Counsel:

        I write on behalf of the Cravath Defendants[1] in response to Provider Opt-Out Plaintiffs' email of October 3, 2025, and further to the parties' meet and confer discussion on September 26, 2025, regarding structured data that Cravath Defendants have offered to reproduce to Plaintiffs in the above-captioned MDL. As previously discussed, Cravath Defendants have been proactively working with Plaintiffs on discovery—before any Complaint has been answered or any requests for production even served—in order to proceed efficiently through the early phases of these cases; however, Defendants cannot actually make any discovery reproductions until entry of a stipulated qualified protective order, and that is especially true for the structured data, which contains HIPAA-protected information. Defendants also will not make any structured data reproductions until we have definitive agreements on the parameters and terms, as discussed more fully below. Finally, please note that the offers discussed herein are made on the understanding and condition that there will not be duplicative discovery taken of this structured data (*e.g.*, reproduction of historic claims data from the BCBS Antitrust MDL (the "MDL") covering the period 2008 to 2014 will satisfy any request Plaintiffs might have for claims data from this time period).

---

    [1] In addition to the Blue Cross Blue Shield Association, the "Cravath Defendants" include the following Blue Plans: Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Arizona, Inc., Blue Cross and Blue Shield of Kansas City, Blue Cross and Blue Shield of Massachusetts, Inc., Blue Cross and Blue Shield of North Carolina, BlueCross BlueShield of South Carolina, BlueCross BlueShield of Tennessee, Inc., Blue Cross Blue Shield of Wyoming, California Physicians' Service d/b/a Blue Shield of California, Capital Blue Cross, CareFirst, Inc., CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; and CareFirst BlueChoice, Inc., GuideWell Mutual Holding Corporation and Blue Cross and Blue Shield of Florida, Inc., Hawaii Medical Service Association, Triple-S Management Corporation and Triple-S Salud, Inc., and Wellmark of South Dakota, Inc. and Wellmark, Inc.

**NEW YORK**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
T+1-212-474-1000
F+1-212-474-3700

**LONDON**
100 Cheapside
London, EC2V 6DT
T+44-20-7453-1000
F+44-20-7860-1150

**WASHINGTON, D.C.**
1601 K Street NW
Washington, D.C. 20006
T+1-202-869-7700
F+1-202-869-7600

Cravath, Swaine & Moore LLP

With that context, we provide below responses to Provider Opt-Outs' October 3 questions. For convenience, we have pasted your questions in italics below, with our answers directly underneath. These answers, of course, are in addition to all of the information Cravath Defendants provided during the parties' September 26 meet and confer, which we believe was a productive conversation.

**Question 1**: *Our understanding is that Cravath agrees to produce the following as summarized below.*

(1) *All productions in the Prime case. Cravath represented that the Prime production was already negotiated, and the collected data not produced in Prime or the MDL is kept in "cold storage" and not easily extracted. This set is, therefore, from your perspective the closest thing to an off-the-shelf production.*

**Answer**: You are correct that—for every Cravath Defendant that made a structured data production in *Prime*—Cravath Defendants propose reproducing that same structured data to Plaintiffs here in satisfaction of any request for Plan claims and enrollment data (other than data housed in the National Data Warehouse ("NDW"), discussed separately below) for the time period prior to 2015. As mentioned during the call, this is the most readily available and most-expeditiously produceable set of historic claims data. That is because any additional data that was produced in the MDL but not *Prime* (*e.g.*, subscriber-side actuarial, rating and premium data that was excluded from production in *Prime*) is in cold storage.

(2) *Cravath stated that it contains complete NDW data from around 2015-2023 and that prior to then, all individual Blue Plans did not send their data to NDW, and so production will include some NDW data prior to 2015 but will be incomplete.*

**Answer**: Prior to 2015, some Plans chose to send their data to NDW. In 2015, BCBSA began requiring Plans to provide claims and enrollment data to NDW, with some Plans making retroactive submissions of data to "true up" as of that date. In so doing, BCBSA provides instructions and guidelines to Blue Plans for the data submissions they are required to provide to NDW; but BCBSA does not separately verify that the data submitted is complete and/or accurate. With this context, BCBSA proposes making two reproductions of NDW data to plaintiffs: (i) pre-2015 NDW data that was collected and produced in the MDL and reproduced in *Prime* (on the express understanding that it is not complete and was never intended to be complete); and (ii) NDW data for the time period 2015-2023 that was collected and produced for the first time in *Prime*. Please note that, even though BCBSA would make these reproductions, any questions about individual Plan data would have to be directed to the underlying Blue Plan that submitted the data to NDW.

1. *Please confirm that the NDW data is for all Blue Plans regardless of whether they are in Prime or represented by Cravath.*

2

> **Answer**: This is confirmed for the period 2015-2023, with one exception: Triple-S (*i.e.*, Triple-S Management Corporation and Triple-S Salud, Inc.) does not submit data to NDW.

(3) *To the extent individual Blue Plan claims and enrollment data was produced in Prime, the Blues will produce it.*

> **Answer**: See the Answer to Question 1(1) pabove.
>
> 1. *Please confirm that this is largely pre-2015 given that all Blue Plans provided complete data through the NDW warehouse beginning in 2015.*
>
>    **Answer**: As a general matter, it is correct that the claims and enrollment data produced by individual Blue Plans in the MDL and reproduced in *Prime* predates 2015. Post-2015, such data is captured in the NDW data, subject to the further explanations provided in Question 1(2) and 1(2)(1) above.
>
> 2. *Please also confirm whether the individual Blue Plan data produced in Prime post-2015 contains all claims data for each Blue Plan, including the subscriber enrollment data.*
>
>    **Answer**: The post-2015 structured claims and enrollment data produced in *Prime* came exclusively from the NDW. It includes both claims and enrollment data for all Blue Plans, with the exception of Triple-S (*see* Question 1(2)(1) above).

(4) *Please confirm whether the data produced in Prime contains patient demographic data and, if not, whether Blue Plans agree to produce this data.*

> **Answer**: It is unclear to us what you mean by "patient demographic data". We can confirm that, as a general matter, the previously produced enrollment data contains date or year of birth and zip code of residence. But available demographic data fields ultimately vary by Plan in the individual Plan enrollment datasets.

(5) *Some Blue Plans represented by Cravath are not defendants in Prime. Cravath will identify which Blue Plans are Prime defendants and which are not. Cravath will produce structured data based on the negotiated parameters in Prime for the non-Prime Blue Plans represented by Cravath, although this will take additional time to pull the data for production.*

> **Answer**: The following Cravath Defendants are not defendants in *Prime*: Blue Cross and Blue Shield of Kansas City; Blue Cross Blue Shield of Wyoming; and Capital Blue Cross. You are correct that Cravath's proposal is that these Blue Plans will satisfy any request for historic claims and enrollment data (*i.e.*, from the MDL time period) using the negotiated parameters from *Prime*. As you note, this data will take longer to reproduce than the datasets described in answer to Question 1(1) above, since it has not been recently accessed or reproduced.

**Question 2**: *Please confirm that the data Cravath agrees to produce is nationwide data for each of the Blue Plans and NDW, and that there are no geographic limits on the data. The Cravath Blues' position is that previously produced structured data Bates stamped within the unstructured data database that constitutes individual Cravath Blue Plan "ASO-specific financial data" is not, according to the Blues, relevant to the Provider Opt-Outs' cases and is not deemed produced (See FN 3 to Exhibit A to Sept. 4, 2025 letter).*

**Answer**: There were no geographic limits imposed on the claims and enrollment data that Cravath is proposing to reproduce to Plaintiffs. As for the ASO-specific financial data, as explained during our meet and confer call, this is *structured data* that that ASO Plaintiffs ("ASOs") have now confirmed is maintained in an *unstructured* hosting environment. To the extent Plaintiffs receive access to such data through their agreement with ASOs to use the ASOs' unstructured documents database, Cravath Defendants do not agree to treat such data as produced in the above-captioned MDL.

**Question 3**: *Confirm that it is the Cravath Blues' position that they will not produce any subscriber structured or unstructured premiums data (including any structured premiums data Bates stamped within the unstructured data database) on the basis that premiums data is irrelevant.*

**Answer**: Plaintiffs misstate Cravath Defendants' position. Cravath Defendants propose making the reproductions outlined in response to Question 1 above for the reasons explained during our meet and confer—namely, this is a voluminous set of existing data that has already been heavily negotiated with other provider opt-out plaintiffs in *Prime* (represented by counsel appearing before this same Court in a different opt-out case, no less). There indeed may be actuarial, rating and/or pricing information in some of these large datasets; but such information was not systematically produced in *Prime* (and, therefore, may not be produced through reproduction of the *Prime* data here). To the extent Plaintiffs are now asking for this subscriber-side data, we should discuss: this would seriously impact the efficiency of the reproductions Cravath Defendants have proposed in satisfaction of any historic claims and/or enrollment data Plaintiffs might seek; if Plaintiffs are insisting on going back to the well in this way, we may need a different approach to historic structured data reproductions than what we are currently envisioning.

**Question 4**: *The Cravath Blue Plans and Association will initially produce structured data fields and data dictionaries for the Cravath Blue Plans that are Prime defendants. Please identify which, if any, Cravath Blue Plans' structured data productions in the Prime case are from sources for which you believe no data dictionaries or similar documents exist. We will at a minimum require that Cravath provide the data fields for any of these Cravath Blue Plans.*

**Answer**: All Cravath Defendants in *Prime* produced a data dictionary and/or crosswalk for their individual claims and enrollment data productions. BCBSA produced a data dictionary and other data documentation applicable to the NDW data, as well as a field layout showing the NDW fields produced in the litigation. Cravath will provide these to Plaintiffs within approximately one week following entry of a stipulated protective order.

4

(1) *To the extent Cravath needs to supplement the production of structured data for non-Prime defendant Cravath Blue Plans, Cravath agrees to provide the fields and/or data dictionaries related to these supplemental productions.*

**Answer**: The Cravath Defendants that are *not* in *Prime* will provide data dictionaries and/or crosswalks applicable to their individual claims and/or enrollment data reproductions, to the extent available and maintained in the ordinary course of business. For these Plans, we need to investigate the availability and location of any such dictionaries/crosswalks, and will update you on the timing of any such production following that investigation.

**Question 5**: *The Provider Opt-Outs would like to begin to review the structured data fields and data dictionaries prior to accessing the larger population of Prime produced structured data. Please let us know when we can expect Cravath to produce this information once the Protective Order is finalized and filed with the Court.*

**Answer**: This answer is provided above (see response to Question 4).

**Question 6**: *Please also let us know the following regarding timing: (1) how long will Cravath require to provide access to the structured data produced in the Prime case for the Cravath Blue Plans and Association, and 2) the estimated time it will take Cravath to provide the structured data based on the Prime production parameters for the non-Prime Cravath Blue Plans.*

**Answer**: Answers are provided below, in response to your more specific questions (see answers to Questions 6(3) and 6(4)).

(1) *When can Cravath identify to the Provider Opt-Outs the Blue Plans it represents that are not Prime defendants?*

**Answer**: This is provided above (see response to Question 1(5)).

(2) *When can Cravath provide the Provider Opt-Outs with the Prime defendant Blue Plans' structured data fields and data dictionaries?*

**Answer**: This is provided above (see response to Question 5).

(3) *How long will Cravath require to provide Provider Opt-Outs with access to the structured data produced in the Prime case for the Cravath Blue Plans and Association?*

**Answer**: As set forth above, assuming the parties have agreement on parameters and terms (including that these reproductions will be in satisfaction of requests for claims and enrollment data from this time period, and that Cravath Defendants will not be asked for duplicative structured data productions from this time period), we expect to be able to begin reproducing any agreed-upon structured data from *Prime* within approximately 2 weeks from entry of the protective order, and will aim to complete any such production within 4 weeks of that. We note that, given the size and complexity of the data sets, unanticipated issues may arise that may affect these timelines.

(4) *Once the non-Prime defendant Blue Plans' structured data is identified for production, how long will it take Cravath to provide to the Provider Opt-Outs the fields and data dictionaries for these Blue Plans?*

**Answer**:  As set forth above, we need to identify what, if any, field layouts, data dictionaries and/or crosswalks were produced in the MDL by the Cravath Defendants that are not defendants in *Prime*.  Once that investigation is complete, we can update you on timing of reproduction of that material (although we do not expect the reproduction itself to take significant time; it is the investigation into the existence and location of this very old documentation that we expect to take the bulk of the time).

(5) *How long does Cravath estimate it will take to supplement the Prime produced structured data with the non-Prime Cravath Blue Plan data?*

**Answer**:  We are not able to provide an estimate at this time.  As mentioned during our meet and confer, one lesson we learned from *Prime* is that unexpected issues and complications arise when data of this size is removed from cold storage and accessed for the first time that can significantly delay production.  We have begun the necessary work, and will update you when we have a more reliable estimate than we could provide at this time.  But for reference, to the extent helpful, it took approximately four months from the time negotiations were complete to make initial reproductions in *Prime*—and that was with significant preliminary work having already been complete, and with extra staffing in order to ensure compliance with a Court order.

\*   \*   \*

We trust the responses above address Provider Opt-Outs' questions regarding the Cravath Defendants' structured data.  We continue to work in good faith to provide Provider Opt-Outs the discovery they state they need to move this action forward efficiently.

Sincerely,

*/s/ Lillian S. Grossbard*
Lillian S. Grossbard

Stacy A. Hyman
K&L GATES
Stacey.Hyman@klgates.com

Federal Provider Opt-Out Plaintiffs' Counsel Group
bcbsprovideroptouts@zellelaw.com

BY EMAIL