FILED
2026 Feb-26 PM 08:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT D

| | |
|---|---|
| **From:** | Hyman, Stacey A. |
| **To:** | Jose, Elizabeth A.; Gross, Daniel B. |
| **Cc:** | Hyman, Stacey A.; David LeRay; Judith Zahid; bpouya@pwfirm.com; O"Laughlin Kulik, Sarah -EXTERNAL; Kelley, Derek W.; John Briody; Michael H. Pearson; hasansiddiqui@paulhastings.com; Fiona Tang; hwancjer@kslaw.com; lee.vanvoorhis@wbd-us.com; lvalas@kslaw.com; Cindy Reichline; Lew LeClair |
| **Subject:** | BCBS - Follow up to October 3, 2025 call |
| **Date:** | Friday, October 31, 2025 5:22:53 PM |

Elizabeth and Daniel:

Thank you for speaking with the Provider Opt-Outs on October 16, 2025. We are writing to confirm our understanding regarding the agreement of BCBSLA, BCBS-MN, BCBS-RI, Cambia/Regence, Elevance and Horizon (the "Hogan Lovells Blue Plans") to provide the Provider Opt-Outs with certain structured data previously produced in the MDL and to the ASO opt-outs. Please confirm that our understanding is accurate or provide clarification with respect to the Provider Opt-Outs' agreement with the Hogan Lovells Blue Plans regarding the following:

1. The Hogan Lovells Blue Plans agree to identify by Bates number any financial structured data that was: (1) produced with Bates numbers to the ASO opt-outs, and (2) that the Hogan Lovells Blue Plans wish to categorize as "not deemed produced." See fn. 3 to Appendix E to the Parties Joint Submission on September 10.
2. This "not deemed produced" structured data produced in unstructured format largely includes profit and loss data related to National ASO accounts that the Hogan Lovells Blue Plans believe are not relevant to the Provider Opt-Out matters.
3. The Hogan Lovells Blue Plans agree to produce to the Provider Opt-Outs all individual Hogan Lovells Blue Plan provider side data from at least 2008 through 2015. Data subsequent to this data will be included in the NDW data to be produced by Cravath.
4. The pre-NDW individual Hogan Lovells Blue Plan provider side data includes claims information and enrollment data. Please confirm the following with respect to this data:
    a. The level of granularity of the claims data, i.e., at the individual claim line level for a particular CPT or HCPCS code, DRG for inpatient, etc.
    b. Whether the claims data contains the final adjudication data or only includes the initial payments by the Hogan Lovells Blue Plans prior to any potential adjustments.
    c. Whether the claims data is in any way geographically limited.
    d. The structured data to be produced by the Hogan Lovells Blue Plans includes enrollment data.
    e. The level of detail related to the enrollment data, i.e., enrollee level, state level, provider level, facility level
5. The structured data the Hogan Lovells Blue Plans are <u>not</u> willing to produce at this time is limited to subscriber side data. If so, please confirm that this data includes premiums data, patient demographic data, and to the extent the Hogan Lovells Blue Plans are unwilling to provide enrollment data, patient enrollment data.

a. The Hogan Lovells Blue Plans do not believe this data is relevant to Provider Opt-Outs and/or that the data was extremely difficult to compile and produce to the ASO opt-outs, was extracted from numerous systems in both structured and unstructured form, and the data ultimately provided to the ASOs was incomplete.
b. In the event Provider Opt-Outs wish to pursue this type of data from the Hogan Lovells Blue Plans, the Hogan Lovells Blue Plans are open to further discussion regarding the relevancy and the scope of such a request.
c. To the extent the Hogan Lovells Blue Plans wish to pursue a two-sided market theory defense and refuses or is otherwise unable to produce such data in a usable form in discovery, the Hogan Lovells Blue Plans will not challenge Provider Opt-Outs' sourcing of such data from a third-party, such as the National Association of Insurance Commissioners ("NAIC").

6. The Hogan Lovells Blue Plans agree to produce any existing data dictionaries, crosswalks or field listings that exist related to the Hogan Lovells Blue Plans' structured data to be produced. Provider Opt-Outs request this information be produced ahead of the structured data to allow for Provider Opt-Outs to review the data fields and address any questions to the Hogan Lovells Blue Plans prior to the production of the large volume of structured data.

We appreciate you providing responses to the above. As we previously discussed, the production of structured data by the Hogan Lovells Blue Plans will be subject to a Stipulated Protective Order. The parties filed the Stipulated Protective Order on October 20, 2025, which largely mirrors the Protective Order previously entered in the MDL and ASO opt-out matters. Since the parties agree to be bound by the Stipulated Protective Order, there is no need to delay in providing Provider Opt-Outs with the documents requested in number 6 above. Please send them to my attention as soon as possible so that we may continue to meet and confer pursuant to Judge Proctor's August 8, 2025 Order.

Thank you,



**Stacey A. Hyman**
Partner
K&L Gates LLP
One Newark Center
10th Floor
Newark, New Jersey 07102
Phone: 973.848.4028
Fax: 973.848.4001
stacey.hyman@klgates.com
www.klgates.com

| | |
|---|---|
| **From:** | Hyman, Stacey A. |
| **To:** | Nick Snavely |
| **Cc:** | Hyman, Stacey A.; David LeRay; Judith Zahid; bpouya@pwfirm.com; O"Laughlin Kulik, Sarah -EXTERNAL; Kelley, Derek W.; John Briody; Michael H. Pearson; hasansiddiqui@paulhastings.com; Fiona Tang; hwancjer@kslaw.com; lee.vanvoorhis@wbd-us.com; lvalas@kslaw.com; Cindy Reichline; Lew LeClair |
| **Subject:** | BCBS - Follow up to October 3, 2025 call |
| **Date:** | Friday, October 31, 2025 5:22:24 PM |

Nick:

Thank you for speaking with the Provider Opt-Outs on October 16, 2025. We are writing to confirm our understanding regarding the agreement of Highmark, HCSC, BC-NEPA and HealthNow (the "Redgrave/Kirkland Blue Plans") to provide the Provider Opt-Outs with certain structured data previously produced in the MDL and to the ASO opt-outs. To the extent you have not already done so, please confirm that our understanding is accurate or provide clarification with respect to the Provider Opt-Outs' agreement with the Redgrave/Kirkland Blue Plans regarding the following:

1. The Redgrave/Kirkland Blue Plans agree to identify by Bates number any financial structured data that was: (1) produced with Bates numbers to the ASO opt-outs, and (2) that the Redgrave/Kirkland Blue Plans wish to categorize as "not deemed produced." See fn. 3 to Appendix E to the Parties Joint Submission on September 10.
2. This "not deemed produced" structured data produced in unstructured format largely includes profit and loss data related to National ASO accounts that the Redgrave/Kirkland Blue Plans believe are not relevant to the Provider Opt-Out matters.
3. The Redgrave/Kirkland Blue Plans agree to produce to the Provider Opt-Outs all individual Redgrave/Kirkland Blue Plan provider side data from at least 2008 through 2015. Data subsequent to this data will be included in the NDW data to be produced by Cravath.
4. The pre-NDW individual Redgrave/Kirkland Blue Plan provider side data includes claims information and enrollment/membership data. Please confirm the following with respect to this data:
    a. The level of granularity of the claims data, i.e., at the individual claim line level for a particular CPT or HCPCS code, DRG for inpatient, etc.
    b. Whether the claims data contains the final adjudication data or only includes the initial payments by the Redgrave/Kirkland Blue Plans prior to any potential adjustments.
    c. Whether the claims data is in any way geographically limited.
    d. The structured data to be produced by the Redgrave/Kirkland Blue Plans includes enrollment data.
    e. The level of detail related to the enrollment data, i.e., enrollee level, state level, provider level, facility level
5. The structured data the Redgrave/Kirkland Blue Plans are <u>not</u> willing to produce at this time is limited to subscriber side data. If so, please confirm that this data includes premiums data, patient demographic data, and to the extent the Redgrave/Kirkland Blue Plans are unwilling to provide enrollment data, patient enrollment data.

   a. The Redgrave/Kirkland Blue Plans do not believe this data is relevant to Provider Opt-Outs and/or that the data was extremely difficult to compile and produce to the ASO opt-outs, was extracted from numerous systems in both structured and unstructured form, and the data ultimately provided to the ASOs was incomplete.
   b. In the event Provider Opt-Outs wish to pursue this type of data from the Redgrave/Kirkland Blue Plans, the Redgrave/Kirkland Blue Plans are open to further discussion regarding the relevancy and the scope of such a request.
   c. To the extent the Redgrave/Kirkland Blue Plans wish to pursue a two-sided market theory defense and refuses or is otherwise unable to produce such data in a usable form in discovery, the Redgrave/Kirkland Blue Plans will not challenge Provider Opt-Outs' sourcing of such data from a third-party, such as the National Association of Insurance Commissioners ("NAIC").

We appreciate you providing responses to the above.  As we previously discussed, the production of structured data by the Redgrave/Kirkland Blue Plans will be subject to a Stipulated Protective Order.  The parties filed the Stipulated Protective Order on October 20, 2025, which largely mirrors the Protective Order previously entered in the MDL and ASO opt-out matters.  Since the parties agree to be bound by the Stipulated Protective Order, we ask that you permit the Provider Opt-Outs to proceed with our analysis, subject to the requirements of the Stipulated Protective Order, of the data dictionaries and crosswalks sent by you on October 7, 2025.

Thank you,



**Stacey A. Hyman**
Partner
K&L Gates LLP
One Newark Center
10th Floor
Newark, New Jersey 07102
Phone: 973.848.4028
Fax: 973.848.4001
stacey.hyman@klgates.com
www.klgates.com

| | |
|---|---|
| **From:** | Hyman, Stacey A. |
| **To:** | "Boppenheimer@axinn.com"; "klee@axinn.com" |
| **Cc:** | David LeRay; Judith Zahid; bpouya@pwfirm.com; O"Laughlin Kulik, Sarah -EXTERNAL; Kelley, Derek W.; John Briody; Michael H. Pearson; hasansiddiqui@paulhastings.com; Fiona Tang; hwancjer@kslaw.com; lee.vanvoorhis@wbd-us.com; lvalas@kslaw.com; Cindy Reichline; Lew LeClair; Hyman, Stacey A. |
| **Subject:** | BCBS - Follow up to October 15, 2025 call |
| **Date:** | Friday, October 31, 2025 5:21:39 PM |

Brooke and Kenina:

Thank you for speaking with the Provider Opt-Outs on October 17, 2025. We are writing to confirm our understanding regarding the agreement of IBX to provide the Provider Opt-Outs with certain structured data previously produced in the MDL and to the ASO opt-outs. Please confirm that our understanding is accurate or provide clarification with respect to the Provider Opt-Outs' agreement with IBX regarding the following:

1. IBX agrees to identify by Bates number any financial structured data that was: (1) produced with Bates numbers to the ASO opt-outs, and (2) that IBX wishes to categorize as "not deemed produced." See fn. 3 to Appendix E to the Parties Joint Submission on September 10.
2. This "not deemed produced" structured data produced in unstructured format largely includes profit and loss data related to National ASO accounts that IBX believes is not relevant to the Provider Opt-Out matters.
3. IBX agrees to produce to the Provider Opt-Outs all IBX provider side data from at least 2008 through 2015. Data subsequent to this data will be included in the NDW data to be produced by Cravath.
4. The pre-NDW individual IBX provider side data includes claims information and enrollment data. Please confirm the following with respect to this data:
    a. The level of granularity of the claims data, i.e., at the individual claim line level for a particular CPT or HCPCS code, DRG for inpatient, etc.
    b. Whether the claims data contains the final adjudication data or only includes the initial payments by IBX prior to any potential adjustments.
    c. Whether the claims data is in any way geographically limited.
    d. The structured data to be produced by IBX includes enrollment data.
    e. The level of detail related to the enrollment data, i.e., enrollee level, state level, provider level, facility level
5. The structured data that IBX is <u>not</u> willing to produce at this time is limited to subscriber side data. If so, please confirm that this data includes premiums data, patient demographic data, and to the extent IBX is unwilling to provide enrollment data, patient enrollment data.
    a. IBX does not believe this data is relevant to Provider Opt-Outs and/or that the data was extremely difficult to compile and produce to the ASO opt-outs, was extracted from numerous systems in both structured and unstructured form, and the data ultimately provided to the ASOs was incomplete.
    b. In the event Provider Opt-Outs wish to pursue this type of data from IBX, IBX is open to further discussion regarding the relevancy and the scope of such a request.

    c. To the extent IBX wishes to pursue a two-sided market theory defense and refuses or is otherwise unable to produce such data in a usable form in discovery, IBX will not challenge Provider Opt-Outs' sourcing of such data from a third-party, such as the National Association of Insurance Commissioners ("NAIC").

6. IBX agrees to produce any existing data dictionaries, crosswalks or field listings that exist related to the IBX structured data to be produced. Provider Opt-Outs request this information be produced ahead of the structured data to allow for Provider Opt-Outs to review the data fields and address any questions to IBX prior to the production of the large volume of structured data.

We appreciate you providing responses to the above. As we previously discussed, the production of structured data by IBX will be subject to a Stipulated Protective Order. The parties filed the Stipulated Protective Order on October 20, 2025, which largely mirrors the Protective Order previously entered in the MDL and ASO opt-out matters. Since the parties agree to be bound by the Stipulated Protective Order, there is no need to delay in providing Provider Opt-Outs with the documents requested in number 6 above. Please send them to my attention as soon as possible so that we may continue to meet and confer pursuant to Judge Proctor's August 8, 2025 Order.

Thank you,



**Stacey A. Hyman**
Partner
K&L Gates LLP
One Newark Center
10th Floor
Newark, New Jersey 07102
Phone: 973.848.4028
Fax: 973.848.4001
stacey.hyman@klgates.com
www.klgates.com

| | |
|---|---|
| **From:** | Hyman, Stacey A. |
| **To:** | jDesanto@crowell.com; Costello, Honor; Gilbert, Sarah |
| **Cc:** | Hyman, Stacey A.; David LeRay; Judith Zahid; bpouya@pwfirm.com; O"Laughlin Kulik, Sarah -EXTERNAL; Kelley, Derek W.; John Briody; Michael H. Pearson; hasansiddiqui@paulhastings.com; Fiona Tang; hwancjer@kslaw.com; lee.vanvoorhis@wbd-us.com; lvalas@kslaw.com; Cindy Reichline; Lew LeClair |
| **Subject:** | BCBS - Follow up to October 16, 2025 call |
| **Date:** | Friday, October 31, 2025 5:23:17 PM |

Jay, Honor and Sarah:

Thank you for speaking with the Provider Opt-Outs on October 16, 2025. We are writing to confirm our understanding regarding the agreement of BCBS-KS, BCBS-ND, BCBS-NE and BCI (the "Crowell Blue Plans") to provide the Provider Opt-Outs with certain structured data previously produced in the MDL and to the ASO opt-outs. Please confirm that our understanding is accurate or provide clarification with respect to the Provider Opt-Outs' agreement with the Crowell Blue Plans regarding the following:

1. The Crowell Blue Plans agree to identify by Bates number any financial structured data that was: (1) produced with Bates numbers to the ASO opt-outs, and (2) that the Crowell Blue Plans wish to categorize as "not deemed produced." See fn. 3 to Appendix E to the Parties Joint Submission on September 10.
2. This "not deemed produced" structured data produced in unstructured format largely includes profit and loss data related to National ASO accounts that the Crowell Blue Plans believe are not relevant to the Provider Opt-Out matters.
3. The Crowell Blue Plans agree to produce to the Provider Opt-Outs all individual Crowell Blue Plan provider side data from at least 2008 (as discussed on the October 16 call, you were going to confirm the start date for each of the Crowell Blue Plans) through 2015. Data subsequent to this data will be included in the NDW data to be produced by Cravath.
4. The pre-NDW individual Crowell Blue Plan provider side data includes claims information and enrollment data. Please confirm the following with respect to this data:
    a. The level of granularity of the claims data, i.e., at the individual claim line level for a particular CPT or HCPCS code, DRG for inpatient, etc.
    b. Whether the claims data contains the final adjudication data or only includes the initial payments by the Crowell Blue Plans prior to any potential adjustments.
    c. Whether the claims data is in any way geographically limited.
    d. The structured data to be produced by the Crowell Blue Plans includes enrollment data.
    e. The level of detail related to the enrollment data, i.e., enrollee level, state level, provider level, facility level
5. The structured data the Crowell Blue Plans are <u>not</u> willing to produce at this time is limited to subscriber side data. If so, please confirm that this data includes premiums data, patient demographic data, and to the extent the Crowell Blue Plans are unwilling to provide enrollment data, patient enrollment data.

    a. The Crowell Blue Plans do not believe this data is relevant to Provider Opt-Outs and/or that the data was extremely difficult to compile and produce to the ASO opt-outs, was extracted from numerous systems in both structured and unstructured form, and the data ultimately provided to the ASOs was incomplete.

    b. In the event Provider Opt-Outs wish to pursue this type of data from the Crowell Blue Plans, the Crowell Blue Plans are open to further discussion regarding the relevancy and the scope of such a request.

    c. To the extent the Crowell Blue Plans wish to pursue a two-sided market theory defense and refuses or is otherwise unable to produce such data in a usable form in discovery, the Crowell Blue Plans will not challenge Provider Opt-Outs' sourcing of such data from a third-party, such as the National Association of Insurance Commissioners ("NAIC").

6. The Crowell Blue Plans agree to produce any existing data dictionaries, crosswalks or field listings that exist related to the Crowell Blue Plans' structured data to be produced.  Provider Opt-Outs request this information be produced ahead of the structured data to allow for Provider Opt-Outs to review the data fields and address any questions to the Crowell Blue Plans prior to the production of the large volume of structured data.

We appreciate you providing responses to the above.  As we previously discussed, the production of structured data by the Crowell Blue Plans will be subject to a Stipulated Protective Order.  The parties filed the Stipulated Protective Order on October 20, 2025, which largely mirrors the Protective Order previously entered in the MDL and ASO opt-out matters.  Since the parties agree to be bound by the Stipulated Protective Order, there is no need to delay in providing Provider Opt-Outs with the documents requested in number 6 above.  Please send them to my attention as soon as possible so that we may continue to meet and confer pursuant to Judge Proctor's August 8, 2025 Order.

Thank you,



**Stacey A. Hyman**
Partner
K&L Gates LLP
One Newark Center
10th Floor
Newark, New Jersey 07102
Phone: 973.848.4028
Fax: 973.848.4001
stacey.hyman@klgates.com
www.klgates.com

| | |
|---|---|
| **From:** | Hyman, Stacey A. |
| **To:** | "amarkel@bodmanlaw.com"; "scylkowski@bodmanlaw.com" |
| **Cc:** | David LeRay; Judith Zahid; bpouya@pwfirm.com; O"Laughlin Kulik, Sarah -EXTERNAL; Kelley, Derek W.; John Briody; Michael H. Pearson; hasansiddiqui@paulhastings.com; Fiona Tang; hwancjer@kslaw.com; lee.vanvoorhis@wbd-us.com; lvalas@kslaw.com; Cindy Reichline; Lew LeClair; Hyman, Stacey A. |
| **Subject:** | BCBS - Follow up to October 17, 2025 call |
| **Date:** | Friday, October 31, 2025 5:22:38 PM |

Sarah and Alexandra:

Thank you for speaking with the Provider Opt-Outs on October 16, 2025. We are writing to confirm our understanding regarding the agreement of BCBSM and BCBS-VT (the "Bodman/A&O Blue Plans") to provide the Provider Opt-Outs with certain structured data previously produced in the MDL and to the ASO opt-outs. Please confirm that our understanding is accurate or provide clarification with respect to the Provider Opt-Outs' agreement with the Bodman/A&O Blue Plans regarding the following:

1. The Bodman/A&O Blue Plans agree to identify by Bates number any financial structured data that was: (1) produced with Bates numbers to the ASO opt-outs, and (2) that the Bodman/A&O Blue Plans wish to categorize as "not deemed produced." See fn. 3 to Appendix E to the Parties Joint Submission on September 10.
2. This "not deemed produced" structured data produced in unstructured format largely includes profit and loss data related to National ASO accounts that the Bodman/A&O Blue Plans believe are not relevant to the Provider Opt-Out matters.
3. The Bodman/A&O Blue Plans agree to produce to the Provider Opt-Outs all individual Bodman/A&O Blue Plan provider side data from at least 2008 through 2015. Data subsequent to this data will be included in the NDW data to be produced by Cravath.
4. The pre-NDW individual Bodman/A&O Blue Plan provider side data includes claims information and enrollment data. Please confirm the following with respect to this data:
    a. The level of granularity of the claims data, i.e., at the individual claim line level for a particular CPT or HCPCS code, DRG for inpatient, etc.
    b. Whether the claims data contains the final adjudication data or only includes the initial payments by the Bodman/A&O Blue Plans prior to any potential adjustments.
    c. Whether the claims data is in any way geographically limited.
    d. The structured data to be produced by the Bodman/A&O Blue Plans includes enrollment data.
    e. The level of detail related to the enrollment data, i.e., enrollee level, state level, provider level, facility level
5. The structured data the Bodman/A&O Blue Plans are <u>not</u> willing to produce at this time is limited to subscriber side data. If so, please confirm that this data includes premiums data, patient demographic data, and to the extent the Bodman/A&O Blue Plans are unwilling to provide enrollment data, patient enrollment data.

   a. The Bodman/A&O Blue Plans do not believe this data is relevant to Provider Opt-Outs and/or that the data was extremely difficult to compile and produce to the ASO opt-outs, was extracted from numerous systems in both structured and unstructured form, and the data ultimately provided to the ASOs was incomplete.
   b. In the event Provider Opt-Outs wish to pursue this type of data from the Bodman/A&O Blue Plans, the Bodman/A&O Blue Plans are open to further discussion regarding the relevancy and the scope of such a request.
   c. To the extent the Bodman/A&O Blue Plans wish to pursue a two-sided market theory defense and refuses or is otherwise unable to produce such data in a usable form in discovery, the Bodman/A&O Blue Plans will not challenge Provider Opt-Outs' sourcing of such data from a third-party, such as the National Association of Insurance Commissioners ("NAIC").
6. The Bodman/A&O Blue Plans agree to produce any existing data dictionaries, crosswalks or field listings that exist related to the Bodman/A&O Blue Plans' structured data to be produced.  Provider Opt-Outs request this information be produced ahead of the structured data to allow for Provider Opt-Outs to review the data fields and address any questions to the Bodman/A&O Blue Plans prior to the production of the large volume of structured data.

We appreciate you providing responses to the above.  As we previously discussed, the production of structured data by the Bodman/A&O Blue Plans will be subject to a Stipulated Protective Order.  The parties filed the Stipulated Protective Order on October 20, 2025, which largely mirrors the Protective Order previously entered in the MDL and ASO opt-out matters.  Since the parties agree to be bound by the Stipulated Protective Order, there is no need to delay in providing Provider Opt-Outs with the documents requested in number 6 above.  Please send them to my attention as soon as possible so that we may continue to meet and confer pursuant to Judge Proctor's August 8, 2025 Order.

Thank you,



**Stacey A. Hyman**
Partner
K&L Gates LLP
One Newark Center
10th Floor
Newark, New Jersey 07102
Phone: 973.848.4028
Fax: 973.848.4001
stacey.hyman@klgates.com
www.klgates.com

| | |
|---|---|
| **From:** | Hyman, Stacey A. |
| **To:** | Benje Bailey; Patrick McDowell |
| **Cc:** | David LeRay; Judith Zahid; bpouya@pwfirm.com; O"Laughlin Kulik, Sarah -EXTERNAL; Kelley, Derek W.; John Briody; Michael H. Pearson; hasansiddiqui@paulhastings.com; Fiona Tang; hwancjer@kslaw.com; lee.vanvoorhis@wbd-us.com; lvalas@kslaw.com; Cindy Reichline; Lew LeClair; Hyman, Stacey A. |
| **Subject:** | BCBS - Follow up to October 17, 2025 call |
| **Date:** | Friday, October 31, 2025 5:21:53 PM |

Patrick and Benje:

Thank you for speaking with the Provider Opt-Outs on October 17, 2025. We are writing to confirm our understanding regarding the agreement of BCBSMS to provide the Provider Opt-Outs with certain structured data previously produced in the MDL and to the ASO opt-outs. Please confirm that our understanding is accurate or provide clarification with respect to the Provider Opt-Outs' agreement with BCBSMS regarding the following:

1. BCBSMS agrees to identify by Bates number any financial structured data that was: (1) produced with Bates numbers to the ASO opt-outs, and (2) that BCBSMS wishes to categorize as "not deemed produced." See fn. 3 to Appendix E to the Parties Joint Submission on September 10.
2. This "not deemed produced" structured data produced in unstructured format largely includes profit and loss data related to National ASO accounts that BCBSMS believes is not relevant to the Provider Opt-Out matters.
3. BCBSMS agrees to produce to the Provider Opt-Outs all BCBSMS provider side data from at least 2008 through 2015. Data subsequent to this data will be included in the NDW data to be produced by Cravath.
4. The pre-NDW individual BCBSMS provider side data includes claims information and enrollment data. Please confirm the following with respect to this data:
    a. The level of granularity of the claims data, i.e., at the individual claim line level for a particular CPT or HCPCS code, DRG for inpatient, etc.
    b. Whether the claims data contains the final adjudication data or only includes the initial payments by BCBSMS prior to any potential adjustments.
    c. Whether the claims data is in any way geographically limited.
    d. The structured data to be produced by BCBSMS includes enrollment data.
    e. The level of detail related to the enrollment data, i.e., enrollee level, state level, provider level, facility level
5. The structured data that BCBSMS is not willing to produce at this time is limited to subscriber side data. If so, please confirm that this data includes premiums data, patient demographic data, and to the extent BCBSMS is unwilling to provide enrollment data, patient enrollment data.
    a. BCBSMS does not believe this data is relevant to Provider Opt-Outs and/or that the data was extremely difficult to compile and produce to the ASO opt-outs, was extracted from numerous systems in both structured and unstructured form, and the data ultimately provided to the ASOs was incomplete.

      b. In the event Provider Opt-Outs wish to pursue this type of data from BCBSMS, BCBSMS is open to further discussion regarding the relevancy and the scope of such a request.

      c. To the extent BCBSMS wishes to pursue a two-sided market theory defense and refuses or is otherwise unable to produce such data in a usable form in discovery, BCBSMS will not challenge Provider Opt-Outs' sourcing of such data from a third-party, such as the National Association of Insurance Commissioners ("NAIC").

6. BCBSMS agrees to produce any existing data dictionaries, crosswalks or field listings that exist related to the BCBSMS structured data to be produced. Provider Opt-Outs request this information be produced ahead of the structured data to allow for Provider Opt-Outs to review the data fields and address any questions to BCBSMS prior to the production of the large volume of structured data.

We appreciate you providing responses to the above. As we previously discussed, the production of structured data by BCBSMS will be subject to a Stipulated Protective Order. The parties filed the Stipulated Protective Order on October 20, 2025, which largely mirrors the Protective Order previously entered in the MDL and ASO opt-out matters. Since the parties agree to be bound by the Stipulated Protective Order, there is no need to delay in providing Provider Opt-Outs with the documents requested in number 6 above. Please send them to my attention as soon as possible so that we may continue to meet and confer pursuant to Judge Proctor's August 8, 2025 Order.

Thank you,



**Stacey A. Hyman**
Partner
K&L Gates LLP
One Newark Center
10th Floor
Newark, New Jersey 07102
Phone: 973.848.4028
Fax: 973.848.4001
stacey.hyman@klgates.com
www.klgates.com

| | |
|---|---|
| **From:** | Hyman, Stacey A. |
| **To:** | Payton, Gwendolyn; Fisher, Jeff |
| **Cc:** | David LeRay; Judith Zahid; bpouya@pwfirm.com; O"Laughlin Kulik, Sarah -EXTERNAL; Kelley, Derek W.; John Briody; Michael H. Pearson; hasansiddiqui@paulhastings.com; Fiona Tang; hwancjer@kslaw.com; lee.vanvoorhis@wbd-us.com; lvalas@kslaw.com; Cindy Reichline; Lew LeClair; Hyman, Stacey A. |
| **Subject:** | BCBS - Follow up to October 17, 2025 call |
| **Date:** | Friday, October 31, 2025 5:20:26 PM |

Gwendolyn and Jeff:

Thank you for speaking with the Provider Opt-Outs on October 17, 2025. We are writing to confirm our understanding regarding the agreement of Premera to provide the Provider Opt-Outs with certain structured data previously produced in the MDL and to the ASO opt-outs. Please confirm that our understanding is accurate or provide clarification with respect to the Provider Opt-Outs' agreement with Premera regarding the following:

1. Premera agrees to identify by Bates number any financial structured data that was: (1) produced with Bates numbers to the ASO opt-outs, and (2) that Premera wishes to categorize as "not deemed produced." See fn. 3 to Appendix E to the Parties Joint Submission on September 10.
2. This "not deemed produced" structured data produced in unstructured format largely includes profit and loss data related to National ASO accounts that Premera believes is not relevant to the Provider Opt-Out matters.
3. Premera agrees to produce to the Provider Opt-Outs all Premera provider side data from at least 2008 through 2015. Data subsequent to this data will be included in the NDW data to be produced by Cravath.
4. The pre-NDW individual Premera provider side data includes claims information and enrollment data. Please confirm the following with respect to this data:
    a. The level of granularity of the claims data, i.e., at the individual claim line level for a particular CPT or HCPCS code, DRG for inpatient, etc.
    b. Whether the claims data contains the final adjudication data or only includes the initial payments by Premera prior to any potential adjustments.
    c. Whether the claims data is in any way geographically limited.
    d. The structured data to be produced by Premera includes enrollment data.
    e. The level of detail related to the enrollment data, i.e., enrollee level, state level, provider level, facility level
5. The structured data that Premera is *not* willing to produce at this time is limited to subscriber side data. If so, please confirm that this data includes premiums data, patient demographic data, and to the extent Premera is unwilling to provide enrollment data, patient enrollment data.
    a. Premera does not believe this data is relevant to Provider Opt-Outs and/or that the data was extremely difficult to compile and produce to the ASO opt-outs, was extracted from numerous systems in both structured and unstructured form, and the data ultimately provided to the ASOs was incomplete.
    b. In the event Provider Opt-Outs wish to pursue this type of data from Premera, Premera is open to further discussion regarding the relevancy

      and the scope of such a request.

    c. To the extent Premera wishes to pursue a two-sided market theory defense and refuses or is otherwise unable to produce such data in a usable form in discovery, Premera will not challenge Provider Opt-Outs' sourcing of such data from a third-party, such as the National Association of Insurance Commissioners ("NAIC").

6. Premera agrees to produce any existing data dictionaries, crosswalks or field listings that exist related to the Premera structured data to be produced. Provider Opt-Outs request this information be produced ahead of the structured data to allow for Provider Opt-Outs to review the data fields and address any questions to Premera prior to the production of the large volume of structured data.

We appreciate you providing responses to the above.  As we previously discussed, the production of structured data by Premera will be subject to a Stipulated Protective Order.  The parties filed the Stipulated Protective Order on October 20, 2025, which largely mirrors the Protective Order previously entered in the MDL and ASO opt-out matters.  Since the parties agree to be bound by the Stipulated Protective Order, there is no need to delay in providing Provider Opt-Outs with the documents requested in number 6 above.  Please send them to my attention as soon as possible so that we may continue to meet and confer pursuant to Judge Proctor's August 8, 2025 Order.

Thank you,



**Stacey A. Hyman**
Partner
K&L Gates LLP
One Newark Center
10th Floor
Newark, New Jersey 07102
Phone: 973.848.4028
Fax: 973.848.4001
stacey.hyman@klgates.com
www.klgates.com

| | |
|---|---|
| **From:** | Hyman, Stacey A. |
| **To:** | Dhazel@foley.com; Arutenberg@foley.com |
| **Cc:** | David LeRay; Judith Zahid; bpouya@pwfirm.com; O"Laughlin Kulik, Sarah -EXTERNAL; Kelley, Derek W.; John Briody; Michael H. Pearson; hasansiddiqui@paulhastings.com; Fiona Tang; hwancjer@kslaw.com; lee.vanvoorhis@wbd-us.com; lvalas@kslaw.com; Cindy Reichline; Lew LeClair; Hyman, Stacey A. |
| **Subject:** | BCBS - Follow up to October 21, 2025 |
| **Date:** | Friday, October 31, 2025 5:20:00 PM |

Diane and Alan:

Thank you for speaking with the Provider Opt-Outs on October 21, 2025. We are writing to confirm our understanding regarding the agreement of USAble to provide the Provider Opt-Outs with certain structured data previously produced in the MDL and to the ASO opt-outs. Please confirm that our understanding is accurate or provide clarification with respect to the Provider Opt-Outs' agreement with USAble regarding the following:

1. USAble agrees to identify by Bates number any financial structured data that was: (1) produced with Bates numbers to the ASO opt-outs, and (2) that USAble wishes to categorize as "not deemed produced." See fn. 3 to Appendix E to the Parties Joint Submission on September 10.
2. This "not deemed produced" structured data produced in unstructured format largely includes profit and loss data related to National ASO accounts that USAble believes is not relevant to the Provider Opt-Out matters.
3. USAble agrees to produce to the Provider Opt-Outs all USAble provider side data from at least 2008 through 2015. Data subsequent to this data will be included in the NDW data to be produced by Cravath.
4. The pre-NDW individual USABLE provider side data includes claims information and enrollment data. Please confirm the following with respect to this data:
    a. The level of granularity of the claims data, i.e., at the individual claim line level for a particular CPT or HCPCS code, DRG for inpatient, etc.
    b. Whether the claims data contains the final adjudication data or only includes the initial payments by USAble prior to any potential adjustments.
    c. Whether the claims data is in any way geographically limited.
    d. The structured data to be produced by USAble includes enrollment data.
    e. The level of detail related to the enrollment data, i.e., enrollee level, state level, provider level, facility level
5. The structured data that USAble is not willing to produce at this time is limited to subscriber side data. If so, please confirm that this data includes premiums data, patient demographic data, and to the extent USAble is unwilling to provide enrollment data, patient enrollment data.
    a. USAble does not believe this data is relevant to Provider Opt-Outs and/or that the data was extremely difficult to compile and produce to the ASO opt-outs, was extracted from numerous systems in both structured and unstructured form, and the data ultimately provided to the ASOs was incomplete.
    b. In the event Provider Opt-Outs wish to pursue this type of data from USAble, USAble is open to further discussion regarding the relevancy and the scope of such a request.

   c. To the extent USAble wishes to pursue a two-sided market theory defense and refuses or is otherwise unable to produce such data in a usable form in discovery, USAble will not challenge Provider Opt-Outs' sourcing of such data from a third-party, such as the National Association of Insurance Commissioners ("NAIC").
6. USAble agrees to produce any existing data dictionaries, crosswalks or field listings that exist related to the USAble structured data to be produced. Provider Opt-Outs request this information be produced ahead of the structured data to allow for Provider Opt-Outs to review the data fields and address any questions to USAble prior to the production of the large volume of structured data.

We appreciate you providing responses to the above. As we previously discussed, the production of structured data by USAble will be subject to a Stipulated Protective Order. The parties filed the Stipulated Protective Order on October 20, 2025, which largely mirrors the Protective Order previously entered in the MDL and ASO opt-out matters. Since the parties agree to be bound by the Stipulated Protective Order, there is no need to delay in providing Provider Opt-Outs with the documents requested in number 6 above. Please send them to my attention as soon as possible so that we may continue to meet and confer pursuant to Judge Proctor's August 8, 2025 Order.

Thank you,



**Stacey A. Hyman**
Partner
K&L Gates LLP
One Newark Center
10th Floor
Newark, New Jersey 07102
Phone: 973.848.4028
Fax: 973.848.4001
stacey.hyman@klgates.com
www.klgates.com

| | |
|---|---|
| **From:** | Hyman, Stacey A. |
| **To:** | Paula P. Plaza; Anna Mercado Clark |
| **Cc:** | Hyman, Stacey A.; David LeRay; Judith Zahid; bpouya@pwfirm.com; O"Laughlin Kulik, Sarah -EXTERNAL; Kelley, Derek W.; John Briody; Michael H. Pearson; hasansiddiqui@paulhastings.com; Fiona Tang; hwancjer@kslaw.com; lee.vanvoorhis@wbd-us.com; lvalas@kslaw.com; Cindy Reichline; Lew LeClair |
| **Subject:** | BCBS - Follow up to October 27, 2025 call |
| **Date:** | Friday, October 31, 2025 5:22:05 PM |

Paula and Anna:

Thank you for speaking with the Provider Opt-Outs on October 27, 2025. We are writing to confirm our understanding regarding the agreement of Excellus to provide the Provider Opt-Outs with certain structured data previously produced in the MDL and to the ASO opt-outs. Please confirm that our understanding is accurate or provide clarification with respect to the Provider Opt-Outs' agreement with Excellus regarding the following:

1. Excellus agrees to identify by Bates number any financial structured data that was: (1) produced with Bates numbers to the ASO opt-outs, and (2) that Excellus wishes to categorize as "not deemed produced." See fn. 3 to Appendix E to the Parties Joint Submission on September 10.
2. This "not deemed produced" structured data produced in unstructured format largely includes profit and loss data related to National ASO accounts that Excellus believes is not relevant to the Provider Opt-Out matters.
3. Excellus agrees to produce to the Provider Opt-Outs all Excellus provider side data from at least 2008 through 2015. Data subsequent to this data will be included in the NDW data to be produced by Cravath.
4. The pre-NDW individual Excellus provider side data includes claims information and enrollment data. Please confirm the following with respect to this data:
    a. The level of granularity of the claims data, i.e., at the individual claim line level for a particular CPT or HCPCS code, DRG for inpatient, etc.
    b. Whether the claims data contains the final adjudication data or only includes the initial payments by Excellus prior to any potential adjustments.
    c. Whether the claims data is in any way geographically limited.
    d. The structured data to be produced by Excellus includes enrollment data.
    e. The level of detail related to the enrollment data, i.e., enrollee level, state level, provider level, facility level
5. The structured data that Excellus is <u>not</u> willing to produce at this time is limited to subscriber side data. If so, please confirm that this data includes premiums data, patient demographic data, and to the extent Excellus is unwilling to provide enrollment data, patient enrollment data.
    a. Excellus does not believe this data is relevant to Provider Opt-Outs and/or that the data was extremely difficult to compile and produce to the ASO opt-outs, was extracted from numerous systems in both structured and unstructured form, and the data ultimately provided to the ASOs was incomplete.
    b. In the event Provider Opt-Outs wish to pursue this type of data from Excellus, Excellus is open to further discussion regarding the relevancy

        and the scope of such a request.
- c. To the extent Excellus wishes to pursue a two-sided market theory defense and refuses or is otherwise unable to produce such data in a usable form in discovery, Excellus will not challenge Provider Opt-Outs' sourcing of such data from a third-party, such as the National Association of Insurance Commissioners ("NAIC").

6. Excellus agrees to produce any existing data dictionaries, crosswalks or field listings that exist related to the Excellus structured data to be produced. Provider Opt-Outs request this information be produced ahead of the structured data to allow for Provider Opt-Outs to review the data fields and address any questions to Excellus prior to the production of the large volume of structured data.

We appreciate you providing responses to the above. As we previously discussed, the production of structured data by Excellus will be subject to a Stipulated Protective Order. The parties filed the Stipulated Protective Order on October 20, 2025, which largely mirrors the Protective Order previously entered in the MDL and ASO opt-out matters. Since the parties agree to be bound by the Stipulated Protective Order, there is no need to delay in providing Provider Opt-Outs with the documents requested in number 6 above. Please send them to my attention as soon as possible so that we may continue to meet and confer pursuant to Judge Proctor's August 8, 2025 Order.

Thank you,



**Stacey A. Hyman**
Partner
K&L Gates LLP
One Newark Center
10th Floor
Newark, New Jersey 07102
Phone: 973.848.4028
Fax: 973.848.4001
stacey.hyman@klgates.com
www.klgates.com