FILED
2026 Sep-17 PM 10:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No. 2406)** | **Master Case No.: 2:25-md-10000-AMM**<br><br>**This document relates to the Provider Opt-Out cases.** |

**<u>DEFENDANTS' SUBMISSION IN ADVANCE OF SEPTEMBER 22, 2026 HEARING</u>**

# TABLE OF CONTENTS


INTRODUCTION .......... 1

I. Absent Bellwethering, the Court Should Adopt Defendants' Alternative Proposal. .......... 2

II. Plaintiffs' Proposal Is a Recipe for Delay and Is Not Required Under Section 1407. .......... 5

a. Plaintiffs' Proposal Is Inefficient. .......... 5

b. Plaintiffs' Proposal Is Not Required Under Section 1407. .......... 8

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Delgado v. Boston Sci. Corp.*,
No. 6:20-cv-1842-Orl-40LRH, 2020 WL 13356790 (M.D. Fla. Nov. 3, 2020) ....3

*In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holders Derivative Litig.*,
2019 WL 11499332 (S.D. Fla. Nov. 5, 2019) ....8

*In re Denture Cream Prods. Liab. Litig.*,
624 F. Supp. 2d 1379 (J.P.M.L. 2009) ....9

*In re Neurontin Mktg., Sales Pracs., & Prods. Liab. Litig.*,
245 F.R.D. 55 (D. Mass. 2007) ....3

*In re Silica Prods. Liab. Litig.*,
398 F. Supp. 2d 563 (S.D. Tex. 2005) ....3, 9

*In re U.S. Office Prods. Co. Secs. Litig.*,
251 F. Supp. 2d 58 (D.D.C. 2003) ....3

*U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*,
498 F. Supp. 2d 25 (D.D.C. 2007) ....6, 9

*Uber Techs., Inc. v. U.S. Jud. Panel on Multidistrict Litig.*,
131 F.4th 661 (9th Cir. 2025) ....10

## Statutes & Rules

28 U.S.C. § 1407 ....3

Pursuant to the Court's September 11, 2026 Order (Dkt. 174), Defendants respectfully request that the Court adopt Defendants' bellwether proposal (Dkt. 129 at 64-70; Dkt. 153 at 7), or in the alternative, Defendants' scheduling proposal, reflected in Exhibit A.

## INTRODUCTION

In transferring these cases to the MDL, the JPML articulated a clear set of goals: (1) "serv[ing] the convenience of the parties and witnesses;" (2) "promot[ing] the just and efficient conduct of the litigation;" and (3) "eliminat[ing] the potential for duplicative discovery and inconsistent pretrial rulings." (Dkt. 1 at 1.) Defendants' proposals best serve those goals.

The most practical path forward is to implement Defendants' bellwether proposal outlined in the parties' original Rule 26(f) report (*see* Dkt. 129 at 45-70; Dkt. 153 at 7), which would quickly bring an illustrative set of claims to full resolution and provide valuable guidance about how the remaining cases should proceed. However, should the Court decline to adopt Defendants' bellwether proposal, it should adopt the schedule reflected in Exhibit A (Defendants' updated alternative scheduling proposal) and discussed below.

Under Defendants' proposal, the parties would complete all fact discovery in four years, by mid-2030, and be ready for both remand and trial by 2032. Plaintiffs' schedule, by contrast, would have this Court remand these cases with

extensive written discovery, depositions, expert discovery, and dispositive motions still outstanding. Under Plaintiffs' proposal, judges around the country, who will be new to the issues in these complex cases, will be forced to manage years of additional discovery and pre-trial proceedings without the benefit of coordination and to individually rule on issues capable of common resolution. That is the exact result the JPML sought to avoid. (Dkt. 1 at 2 (noting it would be "far more efficient" for a "single judge with extensive familiarity with the issues, discovery, and players in this litigation" to coordinate "pretrial schedules among actions pending in at least seven district courts").) Thus, should the Court decline to implement Defendants' bellwether proposal, Defendants respectfully request the Court adopt their alternative scheduling proposal.

## I. Absent Bellwethering, the Court Should Adopt Defendants' Alternative Proposal.

Unlike Plaintiffs' proposal, which would send dozens of cases back to their home courts in mid-2030 with the need for substantial additional discovery and motion practice remaining, Defendants' proposal would ensure that all 22 cases are remanded as trial-ready in early 2032. Under Defendants' proposal, the parties would complete all document and written discovery by 2028 and would then phase depositions to ensure that Defendants have a fair opportunity to take discovery of

the massive number of providers that have brought suit.[1] (*See* Dkt. 169 at 10-12.)

This proposal allows the Court and the parties to avoid duplication and inconsistent rulings—which is precisely what transfer to an MDL is meant to accomplish. *See In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 668 (S.D. Tex. 2005). (*See also* Dkt. 1 at 1-2.) For this reason, once a case is transferred, an MDL court has "broad" power to oversee as much of the pretrial proceedings as needed to achieve these goals. *See In re Neurontin Mktg., Sales Pracs., & Prods. Liab. Litig.*, 245 F.R.D. 55, 58 (D. Mass. 2007); *see also In re U.S. Office Prods. Co. Secs. Litig.,* 251 F. Supp. 2d 58, 64-65 (D.D.C. 2003) ("In a MDL action, the transferee judge has the same jurisdiction and power over pretrial proceedings that the transferor judge would have in the absence of the transfer."); *Delgado v. Boston Sci. Corp.*, No. 6:20-cv-1842-Orl-40LRH, 2020 WL 13356790, at *2 (M.D. Fla. Nov. 3, 2020) (explaining the transferee court "has complete jurisdiction over all pretrial matters, including discovery, *Daubert* motions, dispositive motions").[2]

Defendants' proposal is more convenient and efficient because many of the same questions will need to be answered across these cases. As set forth in the Joint Report (Dkt. 169 at 7), those questions include:

---

[1] Plaintiffs' proposal appears to assume that only one person per hospital system will need to sit for a deposition and is designed to prejudice Defendants' ability to seek full discovery into each Plaintiff.

[2] In most cases transferred under Section 28 U.S.C. § 1407, "substantially all discovery will be completed before remand." Manual for Complex Litigation, Fourth, § 11.61 at 120.

1. Do Plaintiffs have standing to pursue their claims?
2. How do statute of limitations issues bear on Plaintiffs' damages claims?
3. Have Plaintiffs adequately alleged antitrust injury?
4. What are the relevant product and geographic markets, and is the relevant market two-sided?
5. What are the competitive conditions in the relevant markets (including each side's bargaining power, competitors, competitive position, etc.)?
6. What are the effects (procompetitive or anticompetitive) of the challenged restraints in the relevant market?
7. What trademark rights do Plaintiffs have, and how do Plaintiffs use those trademark rights?
8. Were Plaintiffs under reimbursed for their services?

Defendants' proposal allows this Court, already familiar with these complicated issues, to oversee all discovery and dispositive motions in these cases, building on the years of work the parties have already done in this MDL and allowing for central coordination of all discovery (not just document discovery).

Defendants' proposal eliminates the potential for duplicative discovery and inconsistent pretrial rulings because all issues across these cases (many of which involve copycat complaints across overlapping geographic markets) would be addressed in the MDL. Defendants' proposed phased deposition schedule allows the parties to get through the many depositions that will need to be taken in these cases, without forcing witnesses (on both sides) to sit for redundant depositions.

## II. Plaintiffs' Proposal Is a Recipe for Delay and Is Not Required Under Section 1407.

Plaintiffs' proposal is one-sided, inefficient, inconvenient, burdensome and risks unnecessary duplication and inconsistent pretrial rulings—all of which the MDL is meant to avoid. Plaintiffs' insistence that their proposal (which is framed around an unjustifiably narrow definition of "common issues") is required under 28 U.S.C. § 1407 is also incorrect as a matter of law.

### *a. Plaintiffs' Proposal Is Inefficient.*

For several reasons, Plaintiffs' proposal fails to advance the goals of coordination that an MDL is meant to achieve. *First*, Plaintiffs' proposal would result in an unfair and lopsided use of this MDL. Under their proposal, the parties would engage in full document discovery on all issues, but then limit depositions, expert discovery, and dispositive motions to so-called "common issues" before the cases are remanded for further proceedings in their home courts. (Dkt. 169-1 at 2-3.) Plaintiffs' proposal defines "common issues" so narrowly as to effectively mean "one-sided discovery into Defendants and no discovery into Plaintiffs." Indeed, aside from the agreed-upon briefing on the *Love* releases (Dkt. 169 at 2 n.1), Plaintiffs intend to limit non-document discovery in the MDL to (i) "the history and origins of the Blue System and the Blue marks;" (ii) "the applicable standard of review;" and (iii) "whether the Blues constitute a single entity" (*id.* at

2). Each of these issues focuses on Defendants, not Plaintiffs. One-way discovery into Defendants is not a "just" or "efficient" use of the MDL. (Dkt. 1 at 1.)

*Second*, Plaintiffs' proposal is inefficient and will result in delay. Under Plaintiffs' proposal, the MDL will be disbanded in three years (in mid-2029), with Defendants having virtually no discovery (beyond document discovery) into Plaintiffs. After remand, each case will still require hundreds of depositions, extensive expert discovery, and additional dispositive motions. That is years of additional discovery and motion practice before trial, all before new judges who are entirely unfamiliar with these cases and these issues. *See U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 38 (D.D.C. 2007) (remand inappropriate where court's "familiarity with the issues in this case" made it "more efficient to proceed to summary judgment motions in this Court rather than to ask the transferor court to play catch-up"). Speedy remand in Plaintiffs' proposal is thus an illusion. Consider, for instance, how fact depositions would play out under Plaintiffs' proposal: because all of Plaintiffs' proposed "common" issues involve one-way discovery into Defendants, nearly all depositions of Plaintiffs—across 22 cases involving thousands of providers—would need to take place upon remand. That will take years. Defendants' witnesses would also need to sit for both a "common" deposition in the MDL and then a "non-common" deposition upon remand, because they would only be deposed in the MDL on

extremely narrow topics. That flies in the face of the JPML's goal of "serv[ing] the convenience of the parties and the witnesses." (Dkt. 1 at 1.)

*Third*, Plaintiffs' proposal will result in duplicative discovery. For example, Plaintiffs do not agree that issues related to antitrust injury are "common" (Dkt. 169 at 4-5)—even though the allegations related to this issue are effectively copy-and-pasted across the 22 complaints and will inevitably involve common factual questions. Nor do Plaintiffs agree that issues related to two-sided markets are appropriate for depositions in this MDL. (*Id.*) If depositions on two-sided markets, for example, are appropriate only after remand as Plaintiffs propose, Defendants' witnesses would then be repeatedly asked the very same questions, in multiple cases across multiple jurisdictions on that issue.

*Fourth*, and relatedly, Plaintiffs' proposal creates a high risk of inconsistent pretrial rulings. On market definition, for instance, Plaintiffs argue that these cases involve "multiple, highly localized markets requiring individualized attention." (*Id.* at 4.) But across Plaintiffs' complaints, many of the claimed geographic markets overlap. As just one example across the 22 cases, both the *Memorial Hospital* (filed in California)[3] and *Boston Children's* (filed in Massachusetts)[4]

---

[3] Complaint ¶ 235, *Memorial Hosp. v. Blue Cross Blue Shield Ass'n*, (N.D. Cal. Aug. 20, 2025).

[4] Complaint ¶ 238, *Children's Hosp. Corp. v. Blue Cross Blue Shield Ass'n*, (D. Mass. June 16, 2025).

complaints assert Massachusetts as the relevant geographic market.[5] And the question of product market definition, including whether the market is two-sided, is plainly identical across all cases. If issues related to market definition are left to the home courts to decide, as Plaintiffs propose, there is a serious risk that there will be inconsistent rulings on these core, common factual questions about each geographic market.[6]

***b. Plaintiffs' Proposal Is Not Required Under Section 1407.***

Plaintiffs argue that remand is appropriate "when the discrete function performed by the transferee court has been completed and when everything that remains to be done is case-specific," and that it is therefore appropriate to remand the cases when discovery into and resolution of their narrow list of "common issues" is complete. (Dkt. 169 at 3 (quotation omitted).)[7] But courts often recognize that a transferee court can, and in appropriate cases should, retain cases

[5] As another example, both the *Northwell* (filed in Pennsylvania) and *Memorial Hospital* (filed in California) complaints include Plaintiffs which operate hospitals in the New York City metropolitan area. Complaint ¶ 18, *Northwell Health, Inc. v. Blue Cross Blue Shield Ass'n*, (E.D. Pa. July 15, 2025); Complaint ¶ 47, *Memorial Hosp. v. Blue Cross and Blue Shield Ass'n*, (N.D. Cal. Aug. 20, 2025).

[6] Judge Proctor's Show Cause Order in the Provider Class Cases does not provide otherwise. (*See* Dkt. 169 at 4 (citing MDL Dkt. 3075 at 6).) Rather, the Show Cause Order reflected that Judge Proctor had streamlined cases alleging an Alabama market—an approach very similar to bellwethering. As set forth above, here, there are multiple different geographic markets that are alleged that *overlap* across cases, creating a real risk of inconsistent rulings.

[7] Plaintiffs rely on *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holders Derivative Litig.*, No. 08-01916-MD-MARRA, 2019 WL 11499332, at *3 (S.D. Fla. Nov. 5, 2019), for this proposition, but there, the court found that "remand [was] not appropriate because common issues central to the core claims of all Plaintiffs yet remain for determination." *Id* at *3.

through all pretrial proceedings, to preside over issues both common and non-common. *See Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d at 37 (finding continued coordination in an MDL is appropriate "so long as there is some 'common core' that makes it more just or efficient that the cases continue to be handled in one court or before one judge"); *In re Denture Cream Prods. Liab. Litig.*, 624 F. Supp. 2d 1379, 1381 (J.P.M.L. 2009) (finding MDL judge has the power to order "discovery with respect to any non-common issues to proceed concurrently with discovery on common issues"). Courts have further acknowledged that remand is not appropriate "when continued consolidation will 'eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary,'" as is the case here. *See In re Silica Prods. Liab. Litig.*, 398 F. Supp. at 668. In short, even if Plaintiffs' narrow list of issues reflected all "common" issues (which it does not), this Court still has the authority to order broader discovery and dispositive motions to serve the goals of the MDL.

Finally, if the Court is inclined to limit the issues addressed in this MDL to "common questions" under Section 1407 (which need not be the case), at the very least, the list of common questions should include the questions on Defendants'

proposed list. (*See supra* at 4; Dkt. 169 at 7.)[8] Defendants' proposed list of common questions includes questions that are clearly common across these cases, such as how the statute of limitations bears on Plaintiffs' damages claims—a question that will need to be answered in each of these cases, relying on similar discovery and legal arguments. By contrast, Plaintiffs' narrow list of "common" issues misunderstands how courts define common questions. Common questions addressed through MDL pretrial coordination need not have common answers. (Dkt. 169 at 5 (citing *Uber Techs., Inc. v. U.S. Jud. Panel on Multidistrict Litig.*, 131 F.4th 661, 668-70 (9th Cir. 2025)).)[9]

## CONCLUSION

For the foregoing reasons, if the Court is not inclined to adopt Defendants' bellwether proposal (Dkt. 129 at 64-70), Defendants respectfully request the Court enter Defendants' alternative scheduling proposal (*see* Exhibit A).

---

[8] Plaintiffs argue that Defendants previously characterized issues such as antitrust injury and market definition as "inherently individualized," and that it is inconsistent for Defendants now to call them "common." (Dkt. 169 at 5.) There is no inconsistency. In the class context, the question was whether common proof could establish class-wide injury or liability. Here, the question is whether coordinated discovery and pretrial proceedings on these overlapping factual and legal questions is more efficient than having dozens of courts around the country independently manage the same or similar issues. It plainly is.

[9] In the Joint Report, Plaintiffs attempt to distinguish *Uber* by claiming it says only "that common questions need not lead to common answers about the disposition of the case." (Dkt. 169 at 10 (emphasis omitted).) But *Uber* is clear that any "attempt to equate common questions with common answers" is misguided. 131 F.4th at 670. Plaintiffs seek to use the terminology of "common questions" from Section 1407 to narrow the issues this MDL is able to address; as such, they cannot then ignore that courts broadly interpret the "common questions" language of the statute. (*See* Dkt. 169 at 5-7.)

Dated: September 17, 2026

Respectfully submitted,

/s/ Karin A. DeMasi

Karin A. DeMasi
Lauren R. Kennedy
David H. Korn
Lillian S. Grossbard
Rebecca J. Schindel
Hannah L. Dwyer
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212) 474-1000
Fax: (212) 474-3700
kdemasi@cravath.com
lkennedy@cravath.com
dkorn@cravath.com
lgrossbard@cravath.com
rschindel@cravath.com
hdwyer@cravath.com

*Lead Counsel for the Blue Cross Blue Shield System; Counsel for Defendants Blue Cross Blue Shield Association; Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Arizona, Inc.; GuideWell Mutual Holding Corporation; Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of North Carolina; BlueCross BlueShield of South Carolina; BlueCross BlueShield of Tennessee, Inc.; Blue Cross*

*Blue Shield of Wyoming; California Physicians' Service d/b/a Blue Shield of California; Capital Blue Cross; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.; Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Triple-S Management Corporation; Triple-S Salud, Inc.*

E. Desmond Hogan
Justin Bernick
Elizabeth Jose
W. David Maxwell
HOGAN LOVELLS CADWALADER US LLP
Columbia Square
555 13th Street, N.W.

Kimberly R. West (Liaison Counsel)
Mark M. Hogewood
WALLACE, JORDAN, RATLIFF & BRANDT, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL 35209

Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
desmond.hogan@hlc.com
justin.bernick@hlc.com
elizabeth.jose@hlc.com
david.maxwell@hlc.com

*Counsel for Elevance Health f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, INC. (Blue Cross and Blue Shield of Minnesota); Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Cambia Health Solutions, Inc.; Regence BlueShield of Idaho, Inc.; Regence BlueCross BlueShield of Utah; Regence BlueShield; Regence BlueCross BlueShield of Oregon*

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 255-9421
Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendants Blue Cross Blue Shield Association; Blue Cross and Blue Shield of Arizona, Inc.; BlueCross BlueShield of South Carolina; Blue Cross and Blue Shield of Wyoming; Capital Blue Cross; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Highmark Health; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark BCBSD Inc.; California Physicians' Service d/b/a Blue Shield of California; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark*

*Counsel for Elevance Health f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, INC. (Blue Cross and Blue Shield of Minnesota); BlueCross BlueShield of South Carolina; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Cambia Health Solutions, Inc.; Regence BlueShield of Idaho, Inc.; Regence BlueCross BlueShield of Utah; Regence BlueShield; Regence BlueCross BlueShield of Oregon; Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Triple-S Salud, Inc; Defendants Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; BlueCross BlueShield of Tennessee, Inc.*

Jason Tompkins
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642

*Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii)*

Carl S. Burkhalter
MAYNARD NEXSEN PC
1901 6th Avenue North, Suite 2400
Regions Harbert Plaza
Birmingham, AL 35203
Tel: (205) 254-1000
Fax: (205) 254-1999
cburkhalter@maynardnexsen.com

Pamela B. Slate
HILL HILL CARTER FRANCO COLE & BLACK, P.C.
425 South Perry Street
Montgomery, AL 36104
Tel: (334) 834-7600
Fax: (334) 386-4381
pslate@hillhillcarter.com

*With Cravath, Swaine & Moore LLP, counsel for Defendant Blue Cross Blue Shield of Alabama*

Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
jzeiger@kirkland.com

Tel: (205) 226-8743
Fax: (205) 488-5860
jtompkins@balch.com

*Counsel for Elevance Health, f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, INC. (Blue Cross and Blue Shield of Minnesota); Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Cambia Health Solutions, Inc.; Regence BlueShield of Idaho, Inc.; Regence BlueCross BlueShield of Utah; Regence BlueShield; Regence BlueCross BlueShield of Oregon*

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
Tel: (206) 626-7714
Fax: (206) 299-0414
gpayton@kilpatricktownsend.com

*Counsel for Defendant Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska*

Brian K. Norman
SHAMOUN & NORMAN, LLP
1800 Valley View Lane, Suite 200

*Counsel for Defendants Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Highmark Health; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark BCBSD Inc.; Highmark Western and Northeastern New York Inc.; Blue Cross and Blue Shield of Kansas City*

Jonathan M. Redgrave
REDGRAVE, LLP
4800 Westfields Blvd, Suite 250
Chantilly, VA 20151
Tel: (703) 592-1155
Fax: (612) 332-8915
jredgrave@redgravellp.com

*Additional Counsel for HCSC and Highmark Defendants and California Physicians' Service d/b/a Blue Shield of California*

Todd M. Stenerson
Brian C. Hauser

Farmers Branch, TX 75234
Tel: (214) 987-1745
Fax: (214) 521-9033
bkn@snlegal.com

H. James Koch
ARMBRECHT JACKSON LLP
RSA Tower, 27th Floor
11 North Water Street
Mobile, AL 36602
Tel: (251) 405-1300
Fax: (251) 432-6843
hjk@ajlaw.com

*Counsel for Defendants CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.*

M. Patrick McDowell
Norman E. "Benje" Bailey, Jr.
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
190 East Capitol Street
The Pinnacle Building, Suite 100
Jackson, MS 39201
Tel: (601) 948-3101
Fax: (601) 960-6902
pmcdowell@brunini.com
bbailey@brunini.com

Cheri D. Green
BLUE CROSS & BLUE SHIELD OF MISSISSIPPI, A MUTUAL INSURANCE COMPANY

ALLEN OVERY SHEARMAN STERLING US LLP
1101 New York Avenue N.W.
Washington, DC 20005
Tel: (202) 683-3800
Fax: (202) 683-3999
todd.stenerson@aoshearman.com
brian.hauser@aoshearman.com

Rachel Mossman Zieminski
ALLEN OVERY SHEARMAN STERLING US LLP
2601 Olive Street, Suite 1700
Dallas, TX 75201
Tel: (214) 271-5777
Fax: (214) 271-5778
rachel.zieminski@aoshearman.com

*Counsel for Defendants Blue Cross and Blue Shield of Michigan Mutual Insurance Company; Blue Cross and Blue Shield of Vermont; Independence Health Group, Inc.; Independence Blue Cross, LLC; Independence Hospital Indemnity Plan, Inc. (f/k/a Independence Blue Cross); QCC Insurance Company; and Independence Assurance Company*

Sarah L. Cylkowski
Alexandra Markel
BODMAN PLC
1901 Saint Antoine Street
6th Floor at Ford Field

P.O. Box 1043
Jackson, MS 39215
Tel: (601) 932-3704
cdgreen@bcbsms.com

*Counsel for Defendant Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company*

Alan D. Rutenberg
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, DC 20007
Tel: (202) 672-5491
Fax: (202) 672-5399
arutenberg@foley.com

Kimberly A. Klinsport
FOLEY & LARDNER LLP
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2418
Tel: (213) 972-4741
Fax: (213) 486-0065
kklinsport@foley.com

*Counsel for Defendant USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield and as BlueAdvantage Administrators of Arkansas*

Robert R. Riley, Jr.
RILEY & JACKSON, P.C.
3530 Independence Drive
Birmingham, AL 35209
Tel: (205) 879-5000
Fax: (205) 879-5901
Detroit, MI 48226
Tel: (313) 259-7777
Fax: (734) 930-2494
scylkowski@bodmanlaw.com
amarkel@bodmanlaw.com

Andy P. Campbell
A. Todd Campbell
Yawanna N. McDonald
CAMPBELL PARTNERS LLC
505 North 20th Street, Suite 1600
Birmingham, AL 35203
Tel: (205) 224-0750
Fax: (205) 224-8622
andy@campbellpartnerslaw.com
todd@campbellpartnerslaw.com
yawanna@campbellpartnerslaw.com

*Counsel for Defendants Blue Cross and Blue Shield of Michigan Mutual Insurance Company; Blue Cross and Blue Shield of Vermont*

Stephen A. Rowe
Aaron G. McLeod
ADAMS AND REESE LLP
1901 Sixth Avenue North, Suite 3000
Birmingham, AL 35203
Tel: (205) 250-5080
Fax: (205) 250-5034
steve.rowe@arlaw.com
aaron.mcleod@arlaw.com

*Counsel for Defendants*

rob@rileyjacksonlaw.com

*Counsel for Defendants Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; BlueCross BlueShield of Tennessee, Inc.*

*Independence Health Group, Inc.; Independence Blue Cross, LLC; Independence Hospital Indemnity Plan, Inc. (f/k/a Independence Blue Cross); QCC Insurance Company; and Independence Assurance Company*

Sarah M. Gilbert
Honor R. Costello
Robert A. Mantel
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212) 223-4000
Fax: (212) 223-4134
sgilbert@crowell.com
hcostello@crowell.com
rmantel@crowell.com

John M. Johnson
Brian P. Kappel
LIGHTFOOT FRANKLIN & WHITE LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203
Tel: (205) 581-0700
Fax: (205) 581-0799
jjohnson@lightfootlaw.com
bkappel@lightfootlaw.com

*Counsel for Defendants Blue Cross and Blue Shield of Nebraska; Blue*

*Cross of Idaho Health Service, Inc.; Blue Cross and Blue Shield of Kansas, Inc.; Blue Cross Blue Shield of North Dakota (f/k/a Noridian Mutual Insurance Company); Excellus Health Plan Inc. d/b/a Excellus BlueCross BlueShield; GoodLife Partners, Inc.; HealthyDakota Mutual Holdings; Gemstone Holdings, Inc.; and Lifetime Healthcare, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 17, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: September 17, 2026

*/s/ Karin A. DeMasi*
Karin A. DeMasi