FILED
2026 Oct-27 PM 05:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION**<br><br>**(MDL No. 2406)** | **Case No. 2:25-md-10000-AMM**<br><br>Provider Opt-Out Cases |
| THIS DOCUMENT RELATES TO PROVIDER OPT-OUT CASES | OPPOSED |

**PROVIDER OPT-OUTS' MOTION FOR PROTECTIVE ORDER
REGARDING INTERROGATORY NO. 4**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1
BACKGROUND .......... 2
ARGUMENT .......... 4
I. Market Definition Is an Individualized Issue Outside This MDL's Scope. .......... 5
A. Interrogatory No. 4 Makes the Commonality Question Ripe for the Court's Consideration. .......... 5
B. Market Definition Is an Individualized Issue Best Addressed on Remand. .......... 6
II. This Premature Contention Interrogatory Demands a Market Definition Exercise That Cannot Be Meaningfully Conducted at This Stage. .......... 8
III. Deferral Even Until Remand Would Not Prejudice the Blues. .......... 13
CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Checking Acct. Overdraft Litig.*,
2010 WL 5136043 (S.D. Fla. Dec. 16, 2010)....9, 13

*Consol. Gas Co. of Fla. v. City Gas Co. of Fla.*,
623 F. Supp. 1357 (S.D. Fla. 1985)....15

*In re Convergent Techs. Sec. Litig.*,
108 F.R.D. 328 (N.D. Cal. 1985)....9, 13

*In re Domestic Air Transp. Antitrust Litig.*,
1992 WL 120351 (N.D. Ga. Apr. 8, 1992)....8, 9, 12, 13

*In re eBay Seller Antitrust Litig.*,
2008 WL 5212170 (N.D. Cal. Dec. 11, 2008)....12

*FTC v. Amazon.com, Inc.*,
2025 WL 1557189 (W.D. Wash. June 2, 2025)....10

*In re Generic Digoxin & Doxycycline Antitrust Litig.*,
222 F. Supp. 3d 1341 (J.P.M.L. 2017)....7

*Gulf States Reorganization Grp., Inc. v. Nucor Corp.*,
822 F. Supp. 2d 1201 (N.D. Ala. 2011), *aff'd*, 721 F.3d 1281 (11th Cir. 2013)....9, 10

*Lyons v. Saeilo Inc.*,
2022 WL 22895582 (N.D. Ala. Mar. 8, 2022)....4

*McWane, Inc. v. F.T.C.*,
783 F.3d 814 (11th Cir. 2015)....12

*O'Brien v. Int'l Bhd. of Elec. Workers*,
443 F. Supp. 1182 (N.D. Ga. 1977)....9

*PhantomALERT Inc. v. Apple Inc.*,
183 F.4th 790 (D.C. Cir. 2026)....11

*Procaps S.A. v. Patheon, Inc.*,
2015 WL 1608807 (S.D. Fla. Apr. 10, 2015) ........................................................ 9

*Saint Alphonsus Med. Ctr.-Nampa, Inc. v. St. Luke's Health Sys., Ltd.*,
2014 WL 407446 (D. Idaho Jan. 24, 2014) ........................................................ 11

*Saint Alphonsus Med. Ctr.-Nampa, Inc. v. St. Luke's Health Sys., Ltd.*,
778 F.3d 775 (9th Cir. 2015) ........................................................ 11, 15

*Sprint Commc'ns, Inc. v. Calabrese*,
2019 WL 9598506 (S.D. Fla. Aug. 20, 2019) ........................................................ 9

*Thompson v. Metropolitan Multi-List, Inc.*,
934 F.2d 1566 (11th Cir. 1991) ........................................................ 14

*Todd v. Exxon Corp.*,
275 F.3d 191 (2d Cir. 2001) ........................................................ 11

*Vasquez v. Indiana Univ. Health*,
40 F.4th 582 (7th Cir. 2022) ........................................................ 10, 11, 15

**Other Authorities**

Fed. R. Civ. P. 26 ........................................................ 1, 4

Fed. R. Civ. P. 33 ........................................................ 1, 4

Judge David G. Campbell & Jeffrey A. Kilmark, *Advice to a New MDL Judge on Discovery Management*, 89 UMKC L. Rev. 889 (2021) ........................................................ 8

## INTRODUCTION

The Provider Opt-Out Plaintiffs ("Provider Opt-Outs") respectfully move under Federal Rules of Civil Procedure 26(c) and 33(a)(2) for a protective order discharging their obligation to respond to Defendants' ("Blues") Interrogatory No. 4 until the cases are remanded or, at a minimum, until after the close of fact discovery. Interrogatory No. 4 asks every Plaintiff to define the relevant antitrust market, including both the geographic and product market, and to state "all facts" supporting that market definition before discovery even begins in earnest. This contention interrogatory burdens each Plaintiff with an individualized, fact-intensive, and expert-driven economic exercise that is premature, especially at this stage of discovery.

Provider Opt-Outs seek this relief on three grounds. First, market definition is an individualized issue that should be addressed in each transferor court, not in this MDL. Second, the contention interrogatory is premature at this early stage of discovery. Third, the Blues would suffer no prejudice from an order deferring any response to Interrogatory No. 4 until after remand.

Pursuant to the Court's Order, the parties have agreed upon the following briefing schedule for this Motion: Provider Opt-Outs' opening brief is filed on October 27, 2026; the Blues' opposition is due November 4, 2026; and Provider Opt-Outs' reply is due November 9, 2026. *See* Doc. 194.

## BACKGROUND

Discovery is just beginning in the Provider Opt-Out phase of this long-running MDL. While no formal case schedule has yet been entered, Provider Opt-Outs have nonetheless worked to move this MDL forward efficiently and expeditiously, consistent with the stated goal of a Spring 2029 remand. At the outset, Provider Opt-Outs agreed to provide detailed fact sheets and responses to the Blues' discovery requests by October 15, 2026, and worked diligently to meet that deadline. *See* Doc. 169 at 2. Similarly, Provider Opt-Outs have agreed to complete all document discovery in this MDL, on both common and individual issues, while limiting other written discovery in the MDL to focus on common issues. *Id.* at 2, 7–8, 10; Doc. 177 at 1. The Blues have now served two sets of interrogatories and 79 requests for production, and Provider Opt-Outs are working hard to respond to those discovery requests expeditiously.

The Blues, however, take an all-encompassing approach to discovery that erases the critical distinction between "common" and individualized issues in this MDL. On September 22, 2026, the Court held oral argument on what should be deemed common and individualized. The parties briefed their respective positions on a number of issues, including whether market definition was a common or an individualized issue. For example, Provider Opt-Outs reiterated that "key issues here do not involve a national market"; the ESAs are "a state-by-state issue and, quite

likely, maybe even more localized than that." Sept. 22, 2026 Hearing Tr. at 7:24–8:10; *see* Doc. 177 at 7–8.

While the Court declined to make a decision on what issues are sufficiently "common" to be addressed in this MDL—preferring not to delineate them "in a vacuum" but instead "in the context of actual propounded discovery requests"—the Blues have now forced the Court's hand. Sept. 22, 2026 Hearing Tr. at 17:17–23. Indeed, ***just two hours*** after the September 22, 2026 hearing, the Blues served a contention interrogatory on a prototypical individualized issue in antitrust cases: market definition. That contention interrogatory—Interrogatory No. 4—reads:

> Describe what You contend is the relevant antitrust market, Including the relevant geographic and product market, and state all facts that support Your proposed relevant antitrust market definition.

The Blues define "describe" to require "a complete description and explanation of the facts, circumstances, analyses, opinion, and other information" on the subject, and they demand an answer for every affiliate, facility, and assignor, nationwide, from January 1, 2008, to the present. Thus, Interrogatory No. 4 attempts to call for multiples of entity-specific responses on highly individualized issues. Worse, the Blues demand those responses by October 22, 2026—just one week after Provider Opt-Outs' fact sheets were served, and one week before the parties submit revised case schedules that will begin to define the timeline for fact discovery, expert discovery, and remand.

## ARGUMENT

District courts have "wide discretion" in determining what discovery is permissible under the Federal Rules of Civil Procedure. *Lyons v. Saeilo Inc.*, 2022 WL 22895582, at *1 (N.D. Ala. Mar. 8, 2022) (citing *Harris v. Chapman*, 97 F.3d 499, 506 (11th Cir. 1996)); *see* Fed. R. Civ. P. 33(a)(2) ("[T]he court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time."). The Court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by "forbidding the disclosure or discovery" or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (D).

Good cause exists to enter a protective order here for at least three reasons. First, Interrogatory No. 4 renews the parties' dispute over whether market definition is a common issue by ripening for the Court's consideration the problems with expanding the scope of this MDL to oversee complex individualized inquiries. Second, Interrogatory No. 4 is a premature contention interrogatory that demands a market definition exercise that cannot be meaningfully conducted at the very start of discovery. Third, the Blues will suffer no prejudice from deferring any response to Interrogatory No. 4, even until remand.

## I. Market Definition Is an Individualized Issue Outside This MDL's Scope.

### A. Interrogatory No. 4 Makes the Commonality Question Ripe for the Court's Consideration.

While the Court declined to decide which issues are common at the September 22, 2026 hearing, cautioning that doing so now would mean deciding them "in a vacuum," rather than "in the context of actual propounded discovery requests," the Blues' hurried service of the instant contention interrogatory has fully ripened the parties' dispute on common issues with respect to market definition. Sept. 22, 2026 Hearing Tr. at 17:17–23. The Blues themselves conceded at the hearing that deciding "what's common right now" would be "premature" because the issue "will evolve as discovery continues." *Id.* at 19:7–12. Yet just two hours after the hearing ended––before the fact sheets had been served, and before any schedule was set—the Blues served an interrogatory demanding that each Plaintiff provide "all facts" supporting its market definition, for every affiliate, individual, and facility.

Whether market definition is common or individualized has been a highly disputed issue, especially for purposes of determining the scope of written discovery in this MDL. *See* Doc. 177 at 1, 7. That dispute is now presented in the context of an "actual propounded discovery request," and resolving Provider Opt-Outs' obligation to respond to Interrogatory No. 4 on market definition will necessarily require the Court to consider which issues are common and fall within, and outside, the ambit of this MDL. Sept. 22, 2026 Hearing Tr. at 17:17–23. As explained below,

market definition is an individualized issue best addressed by the transferor courts on remand.

### B. Market Definition Is an Individualized Issue Best Addressed on Remand.

On the merits, market definition is an individualized, not common, issue of fact most appropriately addressed by transferor courts—where any factual disputes over both product and geographic market definition can actually be decided comprehensively. The Panel centralized the actions in this MDL because they "will require common discovery of the defendants' alleged conspiracy," which it contrasted with "unique discovery as to damages issues." Doc. 1 at 2.

Market definition is inherently case-specific. The Blues themselves have said so. When opposing class certification, the Blues told Judge Proctor that "[g]eographic markets, while generally local, vary by provider type and would likely need to be determined on a provider by provider basis." MDL Doc. 2490 at 83. Defendants Blue Cross Blue Shield Association and Blue Cross Blue Shield of Michigan Mutual Insurance Company even recently acknowledged that "defining a market is a fact-intensive process, and several courts have held that 'expert testimony is necessary to establish a relevant market.'" Defendants' Mot. for Summ. J. at 18–19, *Ford Motor Co. v. Blue Cross Blue Shield of Mich. Mutual Ins. Co. and Blue Cross Blue Shield Ass'n*, No. 2:23-cv-11286, Doc. 88 (E.D. Mich. Oct. 23, 2026) (quoting *Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,

588 F.3d 908, 919 (6th Cir. 2009) (citing *Colsa Corp. v. Martin Marietta Servs., Inc.*, 133 F.3d 853, 855 n.4 (11th Cir. 1998))).

If market definition requires provider-by-provider analysis—and it undoubtedly does—it cannot be a common question across all Provider Opt-Outs nationwide. Judge Proctor agreed. After a decade of coordinated proceedings, he observed that further motions "in the cases not directly filed here will be tailored to unique issues, (*e.g*., the economic markets)[,]" that "any individualized discovery in those cases will be just that – dictated by the unique issues in each of those cases[,]" and he "wonder[ed] if it would be best for that litigation to occur in the transferor courts." MDL Doc. 3075 at 6. In other matters, the Panel has likewise recognized that even where there are "overlaps in factual issues[,]" "issues pertaining to the market definition for each pharmaceutical product" may be "unique to one or more of the centralized actions" and "weigh in favor of returning those actions to their transferor courts." *In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341, 1343–44 (J.P.M.L. 2017).

Unlike "nationwide price fixing cases following on DOJ actions where the markets are national," this MDL turns on highly localized markets—at a minimum, state-by-state. *See* Sept. 22, 2026 Hearing Tr. at 7:24–8:10. The Blues concede these actions involve "many different, highly individualized geographic markets," arguing only that there is "significant overlap." Doc. 169 at 6. But the fact that some Provider

Opt-Outs may have select facilities in the same general area does not make a provider-specific inquiry common, and any efficiency concern is addressed by the coordinated document discovery Provider Opt-Outs have already agreed to complete in this MDL. *Id.* at 2, 8. Compelling contention interrogatory responses on the relevant antitrust market definition for each particular Plaintiff's claims now would require this Court to oversee the kind of "plaintiff-specific discovery" that MDL courts "cannot and should not attempt to oversee." Judge David G. Campbell & Jeffrey A. Kilmark, *Advice to a New MDL Judge on Discovery Management*, 89 UMKC L. Rev. 889 (2021). Moreover, as addressed further in Sections II and III, geographic market definition often involves detailed questions of fact, and any genuine dispute over those questions is one this MDL Court could not ultimately resolve. Accordingly, this Court should defer Interrogatory No. 4 until remand, when each transferor court can address each Plaintiff's relevant market or markets—a factual, expert-driven determination—on a fuller record.

## II. This Premature Contention Interrogatory Demands a Market Definition Exercise That Cannot Be Meaningfully Conducted at This Stage.

Courts regularly defer responses to contention interrogatories that call for a party's legal theories and expert analysis. Courts in this Circuit decline to compel such answers "before meaningful discovery has been completed," even where "merits discovery has been available since the inception of this action." *In re Domestic Air Transp. Antitrust Litig.*, 1992 WL 120351, at *2 (N.D. Ga. Apr. 8,

1992); *cf. O'Brien v. Int'l Bhd. of Elec. Workers*, 443 F. Supp. 1182, 1187 (N.D. Ga. 1977) (finding contention interrogatory not premature where "the discovery period is nearly complete" unlike here where discovery has barely begun). "Frequently a party will not be able to provide useful answers to contention interrogatories until all discovery is completed." *In re Checking Acct. Overdraft Litig.*, 2010 WL 5136043, at *3 (S.D. Fla. Dec. 16, 2010); *see also In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 336–37 (N.D. Cal. 1985) (noting that considerable recent authority suggests the "wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period" particularly where a "complaint presents a relatively detailed specification of the real world events giving rise to it, and proceeds on relatively well established legal theories, an attempt to justify early use of contention interrogatories on the ground that answers would clarify the issues would not be especially persuasive"); *Sprint Commc'ns, Inc. v. Calabrese*, 2019 WL 9598506, at *4 (S.D. Fla. Aug. 20, 2019) (citing *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. at 334–35) (denying motion to compel contention interrogatory responses, finding that the contention interrogatories served early in the litigation were premature because they "unreasonably compounded the 'time, effort, and cost' of the litigation").

Courts apply this principle with particular force to contention interrogatories that seek a party's definitions of relevant product and geographic markets, which

turn on expert economic analysis. *Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 822 F. Supp. 2d 1201, 1234 n.41 (N.D. Ala. 2011) (Proctor, J.), *aff'd*, 721 F.3d 1281 (11th Cir. 2013). In *FTC v. Amazon.com, Inc.*, the court denied a motion to compel answers to market-definition interrogatories because "[a] working theory . . . is not a 'basic fact'; it can be shaped by expert testimony about market definitions," and "determining the competitors in a market that is not yet fully defined is not a basic factual question that can be answered at this stage." 2025 WL 1557189, at *8 (W.D. Wash. June 2, 2025) (internal citations omitted); *cf. Procaps S.A. v. Patheon, Inc.*, 2015 WL 1608807, at *3–4 (S.D. Fla. Apr. 10, 2015) (compelling the plaintiff to respond to some extent to an interrogatory about market participants and shares *after* the defendant shared its own expert economist report).

Because market definition is often a fact-intensive, expert-driven economic inquiry, courts, particularly those in this Circuit, do not require written discovery regarding market definition issues at the start of discovery. *See Gulf States*, 822 F. Supp. 2d at 1235 (noting that in addition to this Circuit's high standard for demanding expert testimony, defining the relevant market(s) requires fact-intensive examination of "(a) demand substitution; (b) supply substitution; (c) price sensitivity; (d) specialized distribution channels; and (e) industry recognition"); *see also Vasquez v. Ind. Univ. Health*, 40 F.4th 582, 585 (7th Cir. 2022) (explaining that, in the healthcare context, "[t]he hypothetical-monopolist test remains the best

approach to geographic-market analysis," and that "the determination of the area of effective competition poses a question of fact, not one of law"). Other circuit courts have likewise recognized that market definition is fact-intensive and generally requires discovery. *Todd v. Exxon Corp.*, 275 F.3d 191, 199–200 (2d Cir. 2001) (describing market definition as a "deeply fact-intensive inquiry"); *PhantomALERT Inc. v. Apple Inc.*, 183 F.4th 790, 801 (D.C. Cir. 2026) ("[T]he process of defining a product market often involves inquiry into economic realities and industry practice, and so is ordinarily a deeply fact-intensive inquiry unsuited to resolution before any opportunity for discovery.") (cleaned up); *Saint Alphonsus Med. Ctr.-Nampa, Inc. v. St. Luke's Health Sys., Ltd.*, 2014 WL 407446, at *6–8 (D. Idaho Jan. 24, 2014) (defining geographic market after trial based on evidence of patient preferences, travel patterns, and health plans' need for local physicians), *aff'd*, 778 F.3d 775, 783–85 (9th Cir. 2015) (reviewing geographic market definition as a factual finding for clear error). Provider Opt-Outs cannot be required to provide the expert analysis that this Circuit often requires for relevant market definition before formal discovery even begins in earnest.

When it comes to cases where fact discovery has not been fully developed, courts have heavily scrutinized the utility of requiring responses. In *In re eBay Seller Antitrust Litigation*, the court denied a motion to compel contention interrogatories on market definition and damages, explaining that "courts tend to deny contention

interrogatories filed before substantial discovery has taken place," and that "[i]t is not apparent how these broad interrogatories . . . will serve to clarify the issues or narrow the scope of the litigation at this juncture." 2008 WL 5212170, at *1–2 (N.D. Cal. Dec. 11, 2008). The same reasoning applies to Interrogatory No. 4, which asks each Plaintiff to commit to a market definition and to disclose its bases—a working theory that, in this Circuit, must often be established through "expert testimony." *Gulf States*, 822 F. Supp. 2d at 1234; *see also McWane, Inc. v. F.T.C.*, 783 F.3d 814, 829 (11th Cir. 2015) (recognizing that in some circumstances market definition must be based on expert testimony and cannot be based upon lay opinion testimony). Like the interrogatories in *eBay*, Interrogatory No. 4 was served before any substantial discovery, and demands "all facts" supporting that definition. Because market definition will need to be developed and revisited through fact and expert discovery, including both Plaintiff-specific information and additional Defendants' documents, data, and testimony regarding markets outside of Alabama, it would not be fruitful to compel an answer now.

Courts have also applied this principle more broadly to contention interrogatories seeking all factual bases. In *In re Domestic Air Transportation Antitrust Litigation*, an antitrust MDL, the defendants served interrogatories that tracked the complaint and sought "the complete factual basis of each of plaintiffs' claims." 1992 WL 120351, at *1. The court refused to compel answers, holding that

"[p]laintiffs' responses to the contention interrogatories at this point without the benefit of more discovery would do little to further the defense," such that it "will not require plaintiffs to respond to defendants' contention interrogatories before meaningful discovery has been completed." *Id.* at *2. Notably, the court reached that result even though "the first round of depositions" was already underway. *Id.* Here, by contrast, fact discovery has not begun. As the *Convergent* court observed, there is "considerable recent authority for the view that the wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period." *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. at 336; *see In re Checking Acct. Overdraft Litig.*, 2010 WL 5136043, at *3 (adopting the reasoning of *In re Convergent Techs.* and finding that compelling responses to interrogatories prior to "completion of document review or other phases of discovery, lacks finality and compounds the time, effort and cost of the litigation" and is "wasteful"). Requiring Provider Opt-Outs to engage in the individualized market definition exercise in this MDL, where fact discovery on common issues has only begun, would demand the same "wasteful, unproductive exercise" *Convergent* warned against. 108 F.R.D. at 354.

## III. Deferral Even Until Remand Would Not Prejudice the Blues.

Finally, deferral until remand will not prejudice the Blues, particularly in light of the material they have already been provided and the existing limitations on this

MDL Court's ability to comprehensively decide any genuine factual disputes on market definition. Indeed, Provider Opt-Outs have already provided some basic information about the potentially relevant markets. First, the Statement of Claims identifies and compares across the Provider Opt-Outs' complaints both the alleged product markets, including "[t]he purchase of products and services from healthcare providers" and related submarkets, and the alleged geographic markets, including "each Blue's ESA," "a national" market, and regional submarkets. Doc. 73-1 at 5–6. Second, the fact sheets served on October 15 identify, among other information, each Plaintiff entity's geographic location, primary address, health system affiliation, and contracted Blue Plan—a starting place for identifying potentially relevant geographic markets. And because Provider Opt-Outs have agreed to complete all document discovery in this MDL, the Blues will have the documents bearing on market definition before remand. Doc. 169 at 2.

Nor would deferral prejudice the Blues when, at this stage, an answer to Interrogatory No. 4 could offer the Blues little more than a preliminary market definition, one that could itself be the subject of a factual dispute this MDL Court would not be positioned to resolve. Particularly when it comes to geography, "the parameters of a given market are questions of fact," and "summary judgment is inappropriate if there are material differences of fact." *Thompson v. Metro. Multi-List, Inc.*, 934 F.2d 1566, 1573–74 (11th Cir. 1991); *see also Consol. Gas Co. of Fla.*

*v. City Gas Co. of Fla.*, 623 F. Supp. 1357, 1361–62 (S.D. Fla. 1985) (denying summary judgment where product and geographic markets were in substantial dispute and "the record [was] woefully inadequate to permit th[e] Court to determine relevant geographic market"). In the healthcare context, that inquiry ordinarily proceeds under the hypothetical monopolist test, *see Vasquez*, 40 F.4th at 585, and turns on record evidence such as patient patterns and health-plan testimony, *see Saint Alphonsus*, 778 F.3d at 784–85—evidence that will be developed through the very document discovery Provider Opt-Outs have agreed to complete in this MDL. Whether a Plaintiff's geographic market is ultimately resolved at summary judgment or at trial, that determination will rest on the fully developed factual and expert record, not on a contention response served before that record exists. Thus, the Blues face no prejudice from a protective order that defers resolution of this issue until comprehensive decisions on both product and geographic market definition can be delivered.

## CONCLUSION

For the foregoing reasons, Provider Opt-Outs respectfully request that the Court enter a protective order providing that Provider Opt-Outs need not answer the Blues' Interrogatory No. 4 until after remand or, at a minimum, until after the close of fact discovery.

Dated: October 27, 2026

/s/ Jon Corey
Jon Corey
**MCKOOL SMITH, PC**
1717 K Street NW, Suite 1000
Washington, DC 20006
(202) 370-8300
jcorey@mckoolsmith.com

John Briody
James Smith
**MCKOOL SMITH, PC**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
(212) 402-9400
jbriody@mckoolsmith.com
jsmith@mckoolsmith.com

Lew LeClair
**MCKOOL SMITH, PC**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4000
lleclair@mckoolsmith.com

*Attorneys for Plaintiffs Temple University Health System, Inc.; The Trustees of the University of Pennsylvania; The Children's Hospital of Philadelphia; Northwell Health, Inc.; HMH Hospitals Corporation; The Nemours Foundation; Penn State Health; WellSpan Health; Geisinger Health; MedStar Health, Inc.; Tower Health; Doylestown Hospital; Grand View Hospital d/b/a Grand View*

Respectfully submitted,

/s/ Ryan P. Phair
Ryan P. Phair
Michael F. Murray
Carter C. Simpson
Christopher C. Brewer
Emma Hutchison
Terence Parker
**PAUL HASTINGS LLP**
2050 M Street NW
Washington, DC 20036
ryanphair@paulhastings.com
michaelmurray@paulhastings.com
cartersimpson@paulhastings.com
chrisbrewer@paulhastings.com
emmahutchison@paulhastings.com
terenceparker@paulhastings.com
Telephone: (202) 551-1751

Stephen J. McIntyre
Hasan Siddiqui
**PAUL HASTINGS LLP**
515 South Flower Street, Fl. 25
Los Angeles, CA 90071
stephenmcintyre@paulhastings.com
hasansiddiqui@paulhastings.com
Telephone: (213) 683-6110

*Attorneys for Adventist Health System Sunbelt Healthcare Corporation d/b/a AdventHealth; Adventist Health System/West; Ardent Health Partners, Inc.; Banner Health; Christiana Care Health Services, Inc.; City of Hope; CHS/Community Health Systems; Corewell Health; Duke Affiliations Network, Inc.; Duke Health Integrated Practice, Inc.; Duke University*

*Health; Halifax Hospital Medical Center; Hunterdon Healthcare System, Inc.; Meadville Medical Center; St. Clair Health Corporation; Penn Highlands Healthcare, Inc.; Holy Redeemer Health System; St. Luke's Health Network, Inc. d/b/a St. Luke's University Health Network; Independence Health System; Eastern Maine Healthcare Systems d/b/a Northern Light Health; LHHealth, LLC, Harvard Medical Faculty Physicians at Beth Israel Deaconess Medical Center, Inc.; Radiology Partners, Inc.; and Highlands Oncology Group, P.A.*

/s/ Sean S. Zabaneh
Sean S. Zabaneh
Sean P. McConnell
Sarah O'Laughlin Kulik
Jessica Priselac
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, Pennsylvania 19103
(215) 979-1000
sszabaneh@duanemorris.com
spmcconnell@duanemorris.com
sckulik@duanemorris.com
jpriselac@duanemorris.com

Rebecca Bazan
Katherine Celeste Speegle
**DUANE MORRIS LLP**
901 New York Avenue N.W., Ste 700 East
Washington, D.C. 20001
(202) 766-7800
rebazan@duanemorris.com

*Affiliated Physicians, Inc.; Duke University Health System, Inc.; Duke University; Henry Ford Health System d/b/a Henry Ford Health; Hospital Sisters Health System; Inova Health Care Services; Iowa Health System d/b/a UnityPoint Health; Knight Health Holdings, LLC; Lifepoint Health, Inc.; Mass General Brigham Incorporated; Mercy Hospital, Iowa City, Iowa, and Mercy Service Iowa City, Inc.; Northeast Georgia Health System; Novant Health, Inc.; Rochester Regional Health; Sound Inpatient Physicians, Inc.; State University of Iowa; Sutter Health; Texas Health Resources; the University of Wisconsin Hospitals and Clinics Authority; Associated Health Services, Inc.*

/s/ R. Bruce Barze, Jr.
R. Bruce Barze, Jr. (asb-8163-R71R)
**Barze Taylor Noles Lowther LLC**
Lakeshore Park Plaza
2204 Lakeshore Drive, Ste. 425
Birmingham, Alabama 35209
(205) 872-1015
bbarze@btnllaw.com

*Attorney for Adventist Health System Sunbelt Healthcare Corporation d/b/a AdventHealth; Adventist Health System/West; Ardent Health Partners, Inc.; Banner Health; Christiana Care Health Services, Inc.; City of Hope; CHS/Community Health Systems; Corewell Health; Henry Ford Health System d/b/a Henry Ford Health; Hospital Sisters Health System; Inova Health Care Services; Iowa Health*

Wilson F. Green
**Wilson F. Green LLC**
301 19th Street North, Ste. 525
Birmingham, AL 35203
(205) 722-1018
wilson@wilsongreenlaw.com

*Attorneys for Plaintiffs Temple University Health System, Inc.; The Trustees of the University of Pennsylvania; The Children's Hospital of Philadelphia; Northwell Health, Inc.; HMH Hospitals Corporation; The Nemours Foundation; Penn State Health; WellSpan Health; Geisinger Health; MedStar Health, Inc.; Tower Health; Doylestown Hospital; Grand View Hospital d/b/a Grand View Health; Halifax Hospital Medical Center; Hunterdon Healthcare System, Inc.; Meadville Medical Center; St. Clair Health Corporation; Penn Highlands Healthcare, Inc.; Holy Redeemer Health System; St. Luke's Health Network, Inc. d/b/a St. Luke's University Health Network; Independence Health System; Eastern Maine Healthcare Systems d/b/a Northern Light Health; LHHealth, LLC, Harvard Medical Faculty Physicians at Beth Israel Deaconess Medical Center, Inc.; Radiology Partners, Inc.; and Highlands Oncology Group, P.A.*

/s/ Robert M. Cooper
Robert M. Cooper
Hershel Wancjer

*System d/b/a UnityPoint Health; Knight Health Holdings, LLC; Lifepoint Health, Inc.; Mass General Brigham Incorporated; Northeast Georgia Health System; Novant Health, Inc.; Rochester Regional Health; Sound Inpatient Physicians, Inc.; State University of Iowa; Texas Health Resources; and the University of Wisconsin Hospitals and Clinics Authority*

/s/ David G. Hymer
David G. Hymer
J. Thomas Richie
Macy M. Walters
**BRADLEY ARANT BOULT CUMMINGS LLP**
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: 205.521.8000
Facsimile: 205.521.8800

*Attorneys for Plaintiffs Adventist Health System Sunbelt Healthcare Corporation d/b/a AdventHealth; Adventist Health System/West; Ardent Health Partners, Inc.; Banner Health; ChristianaCare Health Services, Inc.; Community Health Systems; City of Hope; Corewell Health; Henry Ford Health; Hospital Sisters Health System; Inova Health Care Services; Knight Health Holdings, LLC d/b/a ScionHealth; Lifepoint Health; Mass General Brigham Inc.; Northeast Georgia Health System; Rochester Regional Health; Sound Inpatient Physicians, Inc.; Texas Health Resources; University of Iowa Health*

**KING & SPALDING LLP**
1700 Pennsylvania Avenue
NW Suite 900
Washington, DC 20006
rcooper@kslaw.com
hwancjer@kslaw.com
Telephone: (202) 737-0500

Damien Marshall
Ross E. Elfand
Marisa Manzi
Annika Burton
Alexandra Valas
Annie H. Somerville (admission to S.D.N.Y. pending)
**KING & SPALDING LLP**
1290 Avenue of the Americas
14th Floor New York, NY 10104
dmarshall@kslaw.com
relfand@kslaw.com
mmanzi@kslaw.com
aburton@kslaw.com
lvalas@kslaw.com
Telephone: (212) 556-2100

*Attorneys for Plaintiffs NorthBay Healthcare Corporation; ApolloMD Business Services, LLC; Beebe Medical Center, Inc. d/b/a Beebe Healthcare; Covenant Health, Inc.; Kaweah Delta Health Care District; Memorial Health Services d/b/a MemorialCare Health System; Mount Sinai Medical Center of Florida, Inc.; North Broward Hospital District d/b/a Broward Health; Ochsner Clinic Foundation; Ochsner LSU Health System of North Louisiana; Hospital Service District No. 1 of St. Charles Parish; St. Tammany Parish Hospital Care; UnityPoint Health; University of Wisconsin Hospitals and Clinics Authority*

*/s/ Judith A. Zahid*
Judith A. Zahid
Eric W. Buetzow
Heather T. Rankie
Sarah Van Culin
**Zelle LLP**
555 12th Street, Suite 1230
Oakland, CA 94607
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
jzahid@zellelaw.com
ebuetzow@zellelaw.com
hrankie@zellelaw.com
svanculin@zellelaw.com

*Attorneys for Associated Health Services, Inc.; Duke Affiliations Network, Inc.; Duke Health Integrated Practice, Inc.; Duke University Affiliated Physicians, Inc.; Duke University Health System, Inc.; Duke University*

*/s/ Kathryn A. Reilly*
Kathryn A. Reilly
Michael T. Williams
Judith P. Youngman
Galen D. Bellamy
Joel S. Neckers
Michael R. Krantz
Michael Baker
Carolyn M. Welter
370 17th Street, Suite 4500
Denver, CO 80202
**WHEELER TRIGG O'DONNELL LLP**

*Service District No. 2; Salinas Valley Memorial Healthcare System d/b/a Salinas Valley Health; Steward Health Care System LLC; Tallahassee Memorial HealthCare, Inc.; Lubbock County Hospital District; CEP America, LLC d/b/a Vituity; Healthcare Justice Coalition, LLC; American Physician Partners Liquidating Trust; and NES America, Inc.*

*/s/ Daniel L. Warshaw*
DANIEL L. WARSHAW
dwarshaw@pwfirm.com
BOBBY POUYA
bpouya@pwfirm.com
MICHAEL H. PEARSON
mpearson@pwfirm.com
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

*Attorneys for Plaintiffs IES Central Texas PLLC; IES HSP Indiana LLC; IAS Arizona PLLC; IAS Oklahoma LLC; IES Alabama PLLC; IES Arizona PLLC; IES Colorado PLLC; IES Carrollton PLLC; IES Florida PLLC; Integrative Emergency Services Physician Group -Houston, PLLC; IES HSP Oklahoma LLC; IES Hospitalists PLLC; IES Oklahoma LLC; IES South Carolina LLC; Integrative Health Arizona LLC; Integrative Care Services Florida LLC; IES OBS Colorado PLLC; Integrative Emergency Services*

370 17th Street, Suite 4500
Denver, CO 80202
Telephone: (303) 244-1918
Email: reilly@wtotrial.com
youngman@wtotrial.com
bellamy@wtotrial.com
neckers@wtotrial.com
krantz@wtotrial.com
mbaker@wtotrial.com
welter@wtotrial.com

*Attorneys for Plaintiffs Corewell Health, Iowa Health System d/b/a UnityPoint, and Hospital Sisters Health System*

BRENNA BIRD
*Attorney General of Iowa*

*/s/ Eric H. Wessan*
Eric H. Wessan
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
eric.wessan@ag.iowa.gov

*Counsel for State University of Iowa*

*/s/ Michael E. Martínez*
Michael E. Martínez (Ill. Bar No. 6275452)
Lauren Norris Donahue (Ill. Bar No. 6294505)
Victoria S. Pereira Duarte (Ill. Bar No. 6336540)
**K&L GATES LLP**
70 W. Madison St., Suite 3300
Chicago, IL 60602
Telephone: (312) 372-1121

*Physician Group, P.A.; IES Arkansas PLLC; IES Hsp Arkansas PLLC; IES Missouri LLC; IES Hsp Missouri LLC; Integrative Health Texas PLLC, AmeriTeam Services, LLC; Southeastern Emergency Physicians LLC; Texas Medicine Resources, LLP; Emergency Coverage, LLC; Florida Emergency Physicians Kang & Associates, M.D., LLC; Longhorn Emergency Medicine Associates, P.A.; Mid-Ohio Emergency Services LLC; ACS Primary Care Physicians – Southeast, P.C.; Fremont Emergency Services (Scherr), Ltd.; Texas Physician Resources, LLP; InPhyNet South Broward, LLC; Paragon Contracting Services, LLC; Paragon Emergency Services LLC; ACS Primary Care Physicians Southwest, P.A.; Southeastern Emergency Physicians of Memphis, LLC; Emergency Services of Oklahoma, P.C., CommonSpirit Health; Dignity Health; Dignity Community Care; Virginia Mason Franciscan Health; Catholic Health Initiatives Colorado; St. Luke's Health System Corporation d/b/a CHI St. Luke's Health; CHI Nebraska d/b/a CHI Health; and KentuckyOne Health, Inc.*

*/s/ Lee Van Voorhis*
Lee Van Voorhis
Christos Christodoulou
**WOMBLE BOND DICKINSON (US) LLP**
2001 K Street NW
Washington, DC 20006
Lee.VanVoorhis@wbd-us.com
Michael.Martinez@klgates.com
Lauren.Donahue@klgates.com
Victoria.Duarte@klgates.com

Michael J. Stortz (Cal. Bar No. 139386)
**K&L GATES LLP**
4 Embarcadero Ctr, Suite 1200
San Francisco, California 94111
Telephone: (415) 882-8200
Michael.Stortz@klgates.com

Richard W. Fields (D.C. Bar No. 418444)
Martin Cunniff (D.C. Bar No. 424219)
Edward Han (D.C. Bar No. 394515)
**FIELDS HAN & CUNNIFF PLLC**
1701 Pennsylvania Avenue NW, Suite 200
Washington, D.C.
Telephone: (833) 382-9816
fields@fhcfirm.com
martincunniff@fhc.com
edhan@fhcfirm.com

*Counsel for Bon Secours Mercy Health, Inc., University Health Systems of Eastern Carolina, Inc., Endeavor Health, INTEGRIS Health, Inc., Main Line Health, Inc., Medical University Hospital Authority, Mercy Health, Norton Healthcare, Inc., Providence St. Joseph Health, Roper St. Francis Healthcare, Sanford, Thomas Jefferson University, The Regents of the University of Michigan on behalf of University of Michigan Health, University of North Carolina Health Care System, University of Rochester, and West Virginia United Health System, Inc.*

Christos.Christodoulou@wbd-us.com
Telephone: (202) 857-4563

Jason C. Hicks
Ian R. Dickinson
**WOMBLE BOND DICKINSON (US) LLP**
201 E. Main Street, Suite P
Charlottesville, VA 22902
Jason.Hicks@wbd-us.com
Ian.Dickinson@wbd-us.com
Telephone: (202) 857-4536

Richard J.R. Raleigh, Jr.
**WOMBLE BOND DICKINSON (US) LLP**
200 Davis Cir SW
Suite 200
Huntsville, Alabama 35801
Richard.Raleigh@wbd-us.com
Telephone: (256) 834-8651

*Attorneys for Plaintiffs Phoebe Putney Memorial Hospital, Inc., Phoebe Sumter Medical Center, Inc., Phoebe Worth Medical Center, Inc., and Phoebe Physician Group, Inc.*

*/s/ Harvey J. Wolkoff*
Harvey J. Wolkoff
Aliki Sofis
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
111 Huntington Avenue, Suite 520
Boston, MA 02199-3600
Tel.: (617) 712-7100
harveywolkoff@quinnemanuel.com
alikisofis@quinnemanuel.com

*/s/ Keith Butler*
Keith Butler
Cindy Reichline
Shira Liu
Fiona Tang
Taylor Keating
Ryan Roth
**BRS LLP**
2121 Avenue of the Stars
Suite 800
Los Angeles, CA 90067
Tel: (310) 295-9524
kbutler@brsllp.com
creichline@brsllp.com
sliu@brsllp.com
ftang@brsllp.com
tkeating@brsllp.com
rroth@brsllp.com

*Attorneys for Plaintiffs Allina Health System; Atlantic Health System; CentraCare Health System; Fairview Health Services; Mayo Clinic; RWJ Barnabas Health, Inc.; University of Florida Health Corporation; and The University of Chicago Medical Center*

*/s/ William Lavery*
William Lavery
Joseph Ostoyich
Danielle Morello
Jordan Passmore
Dorothea R. Allocca
Sung Shin
**CLIFFORD CHANCE US LLP**
2001 K Street NW
Washington, DC 20006
Tel: (202) 912-5000
william.lavery@cliffordchance.com
joseph.ostoyich@cliffordchance.com

Adam B. Wolfson
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 S. Figueroa St., 10th Fl.
Los Angeles, CA 90017
Tel.: (213) 443-3000
adamwolfson@quinnemanuel.com

Samuel I. Waranch
Vinay S. Basti
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
295 Fifth Ave., 9th Fl.
New York, NY 10016
Tel.: (212) 849-7100
samuelwaranch@quinnemanuel.com
vinaybasti@quinnemanuel.com

*Attorneys for Plaintiffs Boston Children's Hospital et al.*

Cyril V. Smith
csmith@zuckerman.com
**ZUCKERMAN SPAEDER LLP**
100 E Pratt Street, Suite 2440
Baltimore, MD 21202
Telephone: (410) 332-0444
Facsimile: (410) 659-0436

Christopher R. MacColl
cmaccoll@zuckerman.com
**ZUCKERMAN SPAEDER LLP**
2100 L Street NW, Suite 400
Washington, D.C. 20037
Telephone: (202) 778-1800
Facsimile: (202) 822-8106

Michael R. Waxman
mwaxman@zuckerman.com
**ZUCKERMAN SPAEDER LLP**

danielle.morello@cliffordchance.com
jordan.passmore@cliffordchance.com
dodi.allocca@cliffordchance.com
sung.shin@cliffordchance.com

Sanaz Payandeh
**CLIFFORD CHANCE US LLP**
Two Manhattan West
375 9th Avenue
New York, New York 10001
Tel: (212) 878-8000
sanaz.payandeh@cliffordchance.com

*Attorneys for Plaintiffs Mount Nittany Health System and Weill Cornell Medicine*

*/s/ Steven Sklaver*
Steven Sklaver
Glenn C. Bridgman
Molly A. Karlin
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ssklaver@susmangodfrey.com
gbridgman@susmangodfrey.com
mkarlin@susmangodfrey.com

Tanner Laiche
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
tlaiche@susmangodfrey.com

483 Madison Avenue, 19th Floor
New York, NY 10022
Telephone: (212) 704-9600
Facsimile: (212) 704-4256

*Attorneys for Plaintiffs Memorial Hospital for Cancer and Allied Diseases, Memorial Sloan-Kettering Cancer Center, and South Shore Hospital, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 27, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: October 27, 2026

*/s/ Ryan P. Phair*
Ryan P. Phair