FILED
2026 Nov-09 AM 11:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

**IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION**

**(MDL No. 2406)**

THIS DOCUMENT RELATES TO PROVIDER OPT-OUT CASES

**Case No. 2:25-md-10000-AMM**

Provider Opt-Out Cases

# PROVIDER OPT-OUTS' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER REGARDING INTERROGATORY NO. 4

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................ 1

ARGUMENT ........................................................................................ 1

I. Provider Opt-Outs' Motion Meets the Requirements for a Protective Order Under Rules 33(a)(2) and 26(c)(1). ........................ 1

A. Rules 33(a)(2) and 26(c)(1) Allow This Court to Enter a Protective Order and Defer Provider Opt-Outs' Response. ........................................ 1

B. Because Market Definition Requires Burdensome Individualized Economic Analysis, Good Cause Exists to Defer Responses. ........................................ 3

C. The Balance of Interests Favors Granting the Protective Order. ........................................ 5

II. Provider Opt-Outs Have Already Given "Basic Information." ........... 6

III. The "Best of Your Ability" Compromise Is Illusory. ........................ 9

CONCLUSION ........................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Christie*,
488 F.3d 1324 (11th Cir. 2007) ....................2

*In re Domestic Air Transp. Antitrust Litig.*,
1992 WL 120351 (N.D. Ga. Apr. 8, 1992)....................3

*Ekokotu v. Fed. Express Corp.*,
408 F. App'x 331 (11th Cir. 2011) ....................2

*FTC v. Amazon.com, Inc.*,
2025 WL 1557189 (W.D. Wash. June 2, 2025) ....................4, 5

*Gulf States Reorganization Grp., Inc. v. Nucor Corp.*,
822 F. Supp. 2d 1201 (N.D. Ala. 2011), *aff'd*, 721 F.3d 1281 (11th Cir. 2013) ....................3, 9

*Hodge v. Tide Tamer Indus., Inc.*,
2020 WL 7634228 (N.D. Fla. Mar. 16, 2020)....................2

*Speed Trac Techs., Inc. v. Estes Express Lines, Inc.*,
2008 WL 2309011 (D. Kan. June 3, 2008)....................2

*Thompson v. Metro. Multi-List, Inc.*,
934 F.2d 1566 (11th Cir. 1991) ....................5

*Trinos v. Quality Staffing Servs. Corp.*,
250 F.R.D. 696 (S.D. Fla. 2008)....................2

*United States v. Garrett*,
571 F.2d 1323 (5th Cir. 1978) ....................2

*Vasquez v. Ind. Univ. Health, Inc.*,
40 F.4th 582 (7th Cir. 2022) ....................3, 4

**Other Authorities**

Fed. R. Civ. P. 12 .......... 8

Fed. R. Civ. P. 26 .......... 1, 2

Fed. R. Civ. P. 33 .......... 1, 2, 9

## INTRODUCTION

The Federal Rules and Provider Opt-Outs' prior pleadings and discovery to date fully support a protective order deferring responses to Interrogatory No. 4. First, Rules 33(a)(2) and 26(c), and Eleventh Circuit case law, tilt decidedly in Provider Opt-Outs' favor. Second, contrary to the Blues' suggestion that Provider Opt-Outs have been obstinate, Provider Opt-Outs have already made significant and burdensome compromises to provide information relevant to market definition. Third, market definition is the prototypical individualized issue and cannot be done piecemeal; any answer now would need substantial revision after expert discovery. Accordingly, the Court should grant the motion and defer responses until remand for individual economic analysis while this MDL focuses on common issues.

## ARGUMENT

### I. Provider Opt-Outs' Motion Meets the Requirements for a Protective Order Under Rules 33(a)(2) and 26(c)(1).

#### A. Rules 33(a)(2) and 26(c)(1) Allow This Court to Enter a Protective Order and Defer Provider Opt-Outs' Response.

The Blues cannot reasonably dispute that the Federal Rules authorize precisely the relief that Provider Opt-Outs seek. Under Rule 33, the Court may order that a contention interrogatory "need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33(a)(2). Under Rule 26, the Court may, "for good cause, issue an order to protect a party . . .

from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). While showing good cause under Rule 26 may require "a 'particular and specific demonstration of fact,'" "the district court *must* 'balance the interests of those requesting the order.'" *Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 336 (11th Cir. 2011) (per curiam) (emphasis added) (citations omitted).[1] There is also no requirement that the proponent of a protective order offer record evidence to establish burden or expense as the basis for good cause under Rule 26, particularly for an order merely deferring a party's interrogatory response.[2]

Additionally, courts have wide discretion and regularly defer responses to contention interrogatories like Interrogatory No. 4 that call for a party's legal theories and expert analysis. *See, e.g.*, *Adkins v. Christie*, 488 F.3d 1324, 1331 (11th Cir. 2007); Mot. at 8–9. Courts in this Circuit also decline to compel such answers "before meaningful discovery has been completed," even where "merits discovery

---

[1] The good-cause cases that the Blues cite arose in unrelated procedural postures, and none involved a request under Rule 33(a)(2) to defer a contention interrogatory. *See United States v. Garrett*, 571 F.2d 1323, 1325–26 & n.3 (5th Cir. 1978) (government's "bare request" "without citing any reason" to bar all depositions of IRS agents in summons enforcement proceeding); *Ekokotu*, 408 F. App'x at 334–36 (employee's motion to protect his "privacy" at videotaped deposition); *Hodge v. Tide Tamer Indus., Inc.*, 2020 WL 7634228, at *1 (N.D. Fla. Mar. 16, 2020) (motion to bar deposition of third-party witness to prior incident under trial admissibility standard).

[2] The Blues' non-binding cases are likewise misplaced; each involved burdens provable only through facts outside the record. *See Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 699 (S.D. Fla. 2008) (plaintiffs' finances and deposition travel); *Speed Trac Techs., Inc. v. Estes Express Lines, Inc.*, 2008 WL 2309011, at *5 (D. Kan. June 3, 2008) (non-party subpoena costs). Here, the burden is evident from the face of Interrogatory No. 4, and the Eleventh Circuit has never "required a party raising an undue-burden objection . . . to produce evidentiary support for the objection." *Ekokotu*, 408 F. App'x at 335.

has been available since the inception of this action." *In re Domestic Air Transp. Antitrust Litig.*, 1992 WL 120351, at *2 (N.D. Ga. Apr. 8, 1992).

**B. Because Market Definition Requires Burdensome Individualized Economic Analysis, Good Cause Exists to Defer Responses.**

Good cause is particularly evident here because Interrogatory No. 4 demands an individualized economic analysis that must incorporate expert opinion—a point the Blues do not dispute. Opp. at 9. "Eleventh Circuit precedent requires an antitrust plaintiff to proffer expert testimony to establish a relevant product market and a relevant geographic market." *Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 822 F. Supp. 2d 1201, 1234 (N.D. Ala. 2011) (Proctor, J.), *aff'd*, 721 F.3d 1281 (11th Cir. 2013). The Blues call *Gulf States* "inapposite" because it did not address contention interrogatories, Opp. at 12 n.8, but they miss the point. It is cited for what it holds: Eleventh Circuit precedent requires expert testimony to establish relevant markets, and it examines the evidence needed for an economically meaningful market definition—which is why a contention response served before expert analysis would be wasteful. *See* 822 F. Supp. 2d at 1234–35. *Vasquez v. Ind. Univ. Health, Inc.* likewise cautions that an alternative geographic market "may turn out to be the best object of analysis as this litigation progresses and further facts emerge." 40 F.4th 582, 586 n.2 (7th Cir. 2022).

In antitrust cases, market definition bears on impact and damages and often proceeds under the hypothetical monopolist, or "SSNIP," test, which asks whether a

hypothetical monopolist in a candidate area could profitably raise prices and, if not (because of substitution), "rerun[s]" the analysis "with ever-larger candidates until it identifies a relevant geographic market." *Id.* at 585 (citation omitted). On the buyer side, the test in healthcare cases involving insurers' anticompetitive conduct examines how providers would likely respond to a monopsonist imposing a payment decrease in candidate markets—with the smallest candidate in which the reduction remains profitable generally representing the relevant market.[3] That evaluation is not only burdensome, but "is a task that requires expert testimony." *Vasquez*, 40 F.4th at 586. Indeed, the Blues told this Court that they had "never . . . seen anyone but a PhD economist perform" a SSNIP test. 4/4/2025 Hr'g Tr. at 98:7–9, *Alaska Air et al. v. Anthem Inc., et al.*, No. 2:21-cv-01209 (N.D. Ala.), Doc. 578.

The requisite economic analysis also depends on documents and data Provider Opt-Outs have not yet analyzed—evidence that has not yet been fully developed in this MDL.[4] As *FTC v. Amazon.com, Inc.* explained, "determining the competitors in

[3] This corollary is sometimes called a SSNRP test (examining small but significant non-transitory *reduction* in price). *See In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2017 WL 2797267, at *5 (N.D. Ala. June 28, 2017).

[4] During the parties' various discussions regarding unstructured data, Defendants have been reticent to answer basic questions about the data they produced in prior litigation—answers which are necessary for Provider Opt-Outs' experts to define the relevant markets. In addition, Provider Opt-Outs served several requests for production regarding additional structured data required to engage in this analysis. The parties are still in the process of meeting and conferring regarding these requests and Defendants have yet to finalize a position regarding whether they will produce additional responsive data.

a market that is not yet fully defined is not a basic factual question that can be answered at this stage." 2025 WL 1557189, at *8 (W.D. Wash. June 2, 2025).[5]

### C. The Balance of Interests Favors Granting the Protective Order.

The balance of interests clearly favors a protective order. Answering now would require every Plaintiff to perform an expert-driven, plaintiff-specific exercise on limited information, yielding at best a provisional answer of little use, or at worst, one that confines their claims to it. Little is at stake for the Blues: they already have the complaints, Statement of Claims, and fact sheets, as well as ongoing MDL document and data productions bearing on market definition. *See infra* Part II. Provider Opt-Outs recognize the Blues' trial-preparation interests, but deferral infringes none of them; Provider Opt-Outs will put forward their market definitions when that exercise can be informed by a developed record and expert analysis.

Nor would compelling answers now serve this Court's interest in efficiency. "[T]he parameters of a given market are questions of fact," and "summary judgment is inappropriate if there are material differences of fact." *Thompson v. Metro. Multi-List, Inc.*, 934 F.2d 1566, 1573–74 (11th Cir. 1991). With the pleading stage past, genuine market disputes will be decided by the trier of fact on remand, so compelling

[5] The Blues attempt to distinguish *Amazon.com* because the interrogatories sought "each and every Person" in the market, Opp. at 12 n.9, but "all facts" supporting a market necessarily include its competitors. And *Amazon* rejected the same "basic facts" argument: a "working theory . . . is not a 'basic fact.'" 2025 WL 1557189, at *8.

plaintiff-by-plaintiff responses now would merely have this Court supervise an exercise whose disputes it could not decide.

For the same reason, the Blues' warning of "conflicting decisions across different courts about the very same markets" does not tip the balance. Opp. at 7–8. They presume the answer to the very question at issue—that some hospitals are in the same market—when the relevant markets are not necessarily "the very same." Any genuine dispute over the geographic boundaries alleged in any Plaintiff's complaint will be resolved after remand based on the individual evidence presented in that Plaintiff's case. Comprehensive MDL discovery cannot prevent different remand courts, with different factfinders, from reaching different determinations about relevant geographic markets. And, as the Blues acknowledge, this is not a class action requiring a common market-definition methodology. Opp. at 8 n.3.

## II. Provider Opt-Outs Have Already Given "Basic Information."

The Blues suggest that Provider Opt-Outs have not yet provided "basic information" about their market definitions, and that Provider Opt-Outs have refused to "compromise." Opp. at 1. Neither is true here.

*First*, as a sign of goodwill and compromise,[6] Provider Opt-Outs filed a

[6] At the September 24, 2025 Status Conference, Provider Opt-Outs first pitched the statement of claims "table that maps the theories out" as a compromise in lieu of a consolidated complaint. Tr. 42:15-44:13. Despite the Blues' continued opposition, the Court ordered that it obviated the need for any consolidated complaint. Doc. 96.

statement of claims, Doc. 73-1, providing the sort of "basic information" about the Provider Opt-Outs' alleged markets that the Blues' opposition says they need. For instance, the statement of claims explains which Provider Opt-Outs have alleged that "[t]he relevant geographic markets include each Blue's ESA," which have alleged "[t]he relevant geographic markets may include submarkets based on core-based statistical areas," and which have alleged "[t]he relevant geographic markets may include other regional submarkets." *Id.* at 6. That table also shows the alleged relevant markets are not common across all Provider Opt-Outs' complaints. This should be sufficient to satisfy the request for "basic information" at this juncture.

If the complaints themselves and the statement of claims were not enough, the Provider Opt-Outs also agreed to undertake the extremely time-intensive and burdensome task of completing fact sheets on behalf of all Plaintiffs. Those fact sheets provided the primary addresses for thousands of entities and identified the Blue plan that those entities are currently contracted with; the Blues and their experts are just as capable of reading the map for any "basic information." In addition to preparing both the statement of claims and the fact sheets, Provider Opt-Outs have continued to push efficiency by agreeing to complete all document discovery in this MDL—on both common and individual issues.

*Second*, the Blues characterize the Interrogatory as seeking "clarity on the market Plaintiffs should already have alleged in their complaints," Opp. at 6, 13, but

its plain language belies their demand for "basic" information. Interrogatory No. 4 asks each Plaintiff to "state *all facts* that support Your proposed relevant antitrust market definition," under a definition of "describe" that sweeps in "analyses" and "opinion," for every affiliate, facility, and assignor nationwide over an eighteen-year period. Ultimately, any basic information the Blues claim they seek on relevant markets is already in the Blues' hands: the complaints, which differentiate among Plaintiffs in considerable detail,[7] the statement of claims, and the fact sheets. What Interrogatory No. 4 actually demands is a complete evidentiary and analytical defense of each Plaintiff's market—work that would require expert analysis of a fully developed factual record.

*Finally*, the Blues argue that Provider Opt-Outs "were required to plead [market definition] with specificity" and that the complaints "generally plead the alleged geographic market in a conclusory fashion." Opp. at 6, 9 n.4. Those are pleading-sufficiency arguments, properly raised under Rule 12(b)(6) or 12(c). Having elected not to test the pleadings, the Blues cannot repackage those arguments to prematurely compel all-facts contention responses.

---

[7] For example, th*e Bon Secour*s complaint devotes twenty-nine pages (88 to 117) to its market framework and plaintiff-specific market-power allegations, pleading each Blue's service area with alternative narrower MSA, USA, and county submarkets, and distinguishing, for instance, Plaintiff UNC's Boone, North Carolina's USA (83% BCBS-NC market share) from Plaintiff ECU Health's Washington and Roanoke Rapids, North Carolina USAs (84% and 82% BCBS-NC market share). Compl. ¶ 406, *Bon Secours Mercy Health, Inc. v. Blue Cross Blue Shield Ass'n,* No. 2:25-cv-01394 (N.D. Ala. Mar. 4, 2025), Doc. 1.

## III. The "Best of Your Ability" Compromise Is Illusory.

The Blues argue that their proposal—respond now to the best of your ability and supplement after fact and expert discovery have progressed further—"obviate[s] any prematurity concern." Opp. at 2, 4, 10–13. It does not. That proposal itself ignores that a meaningful answer beyond the allegations in the complaints cannot be given today, which is precisely the circumstance Rule 33(a)(2) addresses. It would require each Plaintiff to perform the burdensome economic exercise at least twice, producing an interim answer the Blues have already signaled they will deem inadequate. *See id.* at 9 n.4. And because the SSNIP test is iterative, *see supra* Part I.B, it cannot be performed halfway: an answer today would be an untested candidate market, not a market definition. Worse, an interim answer invites the Blues to argue later that Plaintiffs are bound to it, prejudicing the more accurate, expert-informed definitions produced after fact discovery. *Cf. Gulf States*, 822 F. Supp. 2d at 1234.

The Blues' principal authority for their compromise is Judge Proctor's handling of a market definition contention interrogatory in the ASO Opt-Out Actions. Opp. at 10–11. That analogy fails for at least three reasons.

*First*, the ASO Opt-Out Actions were filed directly in this District. There was no Section 1407 commonality question to answer, and this Court was itself the trial court—capable of resolving genuine disputes of material fact about the product and geographic markets. Neither is true for transferred Provider Opt-Out cases.

*Second*, the timing was materially different. Judge Proctor ordered a response to ASO plaintiffs' market definition interrogatory, served approximately two months prior, near the close of fact discovery. *See* ASO Docs. 504, 585. Here, by contrast, Interrogatory No. 4 was served before any schedule was entered, and responses were due one week after the agreed-upon deadline for fact sheets.

*Third*, the Blues themselves argued in the ASO Opt-Out Actions that they should not have to answer a market definition contention interrogatory until the close of *expert* discovery. *Id.* at 10. The Blues said such an interrogatory "tasked us with drafting an expert report," and that contention interrogatories are deferred "to not . . . lock a party into a position" and because "it's a lot of resources to continuously . . . write a lengthy interrogatory, then supplement it again at the end of depositions, and then supplement it again at the end of expert discovery." 4/4/2025 Hr'g Tr., *supra*, at 94–97. The Blues were right then. Likening this task to drafting an expert report, they cannot credibly claim now that it "asks for far less." Opp. at 12 n.9.

## CONCLUSION

For the foregoing reasons, Provider Opt-Outs respectfully request that the Court enter a protective order deferring responses to the Blues' Interrogatory No. 4 until after remand or, at a minimum, until after the close of fact discovery.

Dated: November 9, 2026

/s/ Sean S. Zabaneh
Sean S. Zabaneh
Sean P. McConnell
Sarah O'Laughlin Kulik
Jessica Priselac
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, Pennsylvania 19103
(215) 979-1000
sszabaneh@duanemorris.com
spmcconnell@duanemorris.com
sckulik@duanemorris.com
jpriselac@duanemorris.com

Katherine Celeste Speegle
Rebecca Bazan
**DUANE MORRIS LLP**
901 New York Avenue N.W., Ste 700 East
Washington, D.C. 20001
(202) 766-7800
rebazan@duanemorris.com

John Briody
James Smith
**MCKOOL SMITH, PC**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
(212) 402-9400
jbriody@mckoolsmith.com
jsmith@mckoolsmith.com

Wilson F. Green
**Wilson F. Green LLC**
301 19th Street North, Ste. 525
Birmingham, AL 35203

Respectfully submitted,

/s/ Ryan P. Phair
Ryan P. Phair
Michael F. Murray
Carter C. Simpson
Christopher C. Brewer
Emma Hutchison
Terence Parker
**PAUL HASTINGS LLP**
2050 M Street NW
Washington, DC 20036
ryanphair@paulhastings.com
michaelmurray@paulhastings.com
cartersimpson@paulhastings.com
chrisbrewer@paulhastings.com
emmahutchison@paulhastings.com
terenceparker@paulhastings.com
Telephone: (202) 551-1751

Stephen J. McIntyre
Hasan Siddiqui
**PAUL HASTINGS LLP**
515 South Flower Street, Fl. 25
Los Angeles, CA 90071
stephenmcintyre@paulhastings.com
hasansiddiqui@paulhastings.com
Telephone: (213) 683-6110

*Attorneys for Adventist Health System Sunbelt Healthcare Corporation d/b/a AdventHealth; Adventist Health System/West; Ardent Health Partners, Inc.; Banner Health; Christiana Care Health Services, Inc.; City of Hope; CHS/Community Health Systems; Corewell Health; Duke Affiliations Network, Inc.; Duke Health Integrated Practice, Inc.; Duke University*

(205) 722-1018
wilson@wilsongreenlaw.com

*Attorneys for Plaintiffs Temple University Health System, Inc.; The Trustees of the University of Pennsylvania; The Children's Hospital of Philadelphia; Northwell Health, Inc.; HMH Hospitals Corporation; The Nemours Foundation; Penn State Health; WellSpan Health; Geisinger Health; MedStar Health, Inc.; Tower Health; Doylestown Hospital; Grand View Hospital d/b/a Grand View Health; Halifax Hospital Medical Center; Hunterdon Healthcare System, Inc.; Meadville Medical Center; St. Clair Health Corporation; Penn Highlands Healthcare, Inc.; Holy Redeemer Health System; St. Luke's Health Network, Inc. d/b/a St. Luke's University Health Network; Independence Health System; Eastern Maine Healthcare Systems d/b/a Northern Light Health; LHHealth, LLC, Harvard Medical Faculty Physicians at Beth Israel Deaconess Medical Center, Inc.; Radiology Partners, Inc.; and Highlands Oncology Group, P.A.*

/s/ Robert M. Cooper
Robert M. Cooper
Hershel Wancjer
**KING & SPALDING LLP**
1700 Pennsylvania Avenue
NW Suite 900
Washington, DC 20006
rcooper@kslaw.com
hwancjer@kslaw.com

*Affiliated Physicians, Inc.; Duke University Health System, Inc.; Duke University; Henry Ford Health System d/b/a Henry Ford Health; Hospital Sisters Health System; Inova Health Care Services; Iowa Health System d/b/a UnityPoint Health; Knight Health Holdings, LLC; Lifepoint Health, Inc.; Mass General Brigham Incorporated; Mercy Hospital, Iowa City, Iowa, and Mercy Service Iowa City, Inc.; Northeast Georgia Health System; Novant Health, Inc.; Providence St. Joseph Health; Rochester Regional Health; Sound Inpatient Physicians, Inc.; State University of Iowa; Sutter Health; Texas Health Resources; the University of Wisconsin Hospitals and Clinics Authority; Associated Health Services, Inc.*

/s/ R. Bruce Barze, Jr.
R. Bruce Barze, Jr. (asb-8163-R71R)
**Barze Taylor Noles Lowther LLC**
Lakeshore Park Plaza
2204 Lakeshore Drive, Ste. 425
Birmingham, Alabama 35209
(205) 872-1015
bbarze@btnllaw.com

*Attorney for Adventist Health System Sunbelt Healthcare Corporation d/b/a AdventHealth; Adventist Health System/West; Ardent Health Partners, Inc.; Banner Health; Christiana Care Health Services, Inc.; City of Hope; CHS/Community Health Systems; Corewell Health; Henry Ford Health System d/b/a Henry Ford Health; Hospital Sisters Health System; Inova*

Telephone: (202) 737-0500

Damien Marshall
Ross E. Elfand
Marisa Manzi
Annika Burton
Alexandra Valas
Annie H. Somerville (admission to S.D.N.Y. pending)
**KING & SPALDING LLP**
1290 Avenue of the Americas
14th Floor New York, NY 10104
dmarshall@kslaw.com
relfand@kslaw.com
mmanzi@kslaw.com
aburton@kslaw.com
lvalas@kslaw.com
Telephone: (212) 556-2100

*Attorneys for Plaintiffs NorthBay Healthcare Corporation; ApolloMD Business Services, LLC; Beebe Medical Center, Inc. d/b/a Beebe Healthcare; Covenant Health, Inc.; Kaweah Delta Health Care District; Memorial Health Services d/b/a MemorialCare Health System; Mount Sinai Medical Center of Florida, Inc.; North Broward Hospital District d/b/a Broward Health; Ochsner Clinic Foundation; Ochsner LSU Health System of North Louisiana; Hospital Service District No. 1 of St. Charles Parish; St. Tammany Parish Hospital Service District No. 2; Salinas Valley Memorial Healthcare System d/b/a Salinas Valley Health; Steward Health Care System LLC; Tallahassee Memorial HealthCare, Inc.; Lubbock County Hospital District; CEP Health Care Services; Iowa Health System d/b/a UnityPoint Health; Knight Health Holdings, LLC; Lifepoint Health, Inc.; Mass General Brigham Incorporated; Northeast Georgia Health System; Novant Health, Inc.; Rochester Regional Health; Sound Inpatient Physicians, Inc.; State University of Iowa; Texas Health Resources; and the University of Wisconsin Hospitals and Clinics Authority*

*/s/ David G. Hymer*
David G. Hymer
J. Thomas Richie
Macy M. Walters
**BRADLEY ARANT BOULT CUMMINGS LLP**
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: 205.521.8000
Facsimile: 205.521.8800

*Attorneys for Plaintiffs Adventist Health System Sunbelt Healthcare Corporation d/b/a AdventHealth; Adventist Health System/West; Ardent Health Partners, Inc.; Banner Health; ChristianaCare Health Services, Inc.; Community Health Systems; City of Hope; Corewell Health; Henry Ford Health; Hospital Sisters Health System; Inova Health Care Services; Knight Health Holdings, LLC d/b/a ScionHealth; Lifepoint Health; Mass General Brigham Inc.; Northeast Georgia Health System; Rochester Regional Health; Sound Inpatient Physicians, Inc.; Texas Health*

*America, LLC d/b/a Vituity; Healthcare Justice Coalition, LLC; American Physician Partners Liquidating Trust; and NES America, Inc.*

*/s/ Daniel L. Warshaw*
DANIEL L. WARSHAW
dwarshaw@pwfirm.com
BOBBY POUYA
bpouya@pwfirm.com
MICHAEL H. PEARSON
mpearson@pwfirm.com
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

*Attorneys for Plaintiffs IES Central Texas PLLC; IES HSP Indiana LLC; IAS Arizona PLLC; IAS Oklahoma LLC; IES Alabama PLLC; IES Arizona PLLC; IES Colorado PLLC; IES Carrollton PLLC; IES Florida PLLC; Integrative Emergency Services Physician Group -Houston, PLLC; IES HSP Oklahoma LLC; IES Hospitalists PLLC; IES Oklahoma LLC; IES South Carolina LLC; Integrative Health Arizona LLC; Integrative Care Services Florida LLC; IES OBS Colorado PLLC; Integrative Emergency Services Physician Group, P.A.; IES Arkansas PLLC; IES Hsp Arkansas PLLC; IES Missouri LLC; IES Hsp Missouri LLC; Integrative Health Texas PLLC, AmeriTeam Services, LLC; Southeastern Emergency Physicians Resources; University of Iowa Health Care; UnityPoint Health; University of Wisconsin Hospitals and Clinics Authority*

*/s/ Judith A. Zahid*
Judith A. Zahid
Eric W. Buetzow
Heather T. Rankie
Sarah Van Culin
**Zelle LLP**
555 12th Street, Suite 1230
Oakland, CA 94607
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
jzahid@zellelaw.com
ebuetzow@zellelaw.com
hrankie@zellelaw.com
svanculin@zellelaw.com

*Attorneys for Associated Health Services, Inc.; Duke Affiliations Network, Inc.; Duke Health Integrated Practice, Inc.; Duke University Affiliated Physicians, Inc.; Duke University Health System, Inc.; Duke University*

*/s/ Kathryn A. Reilly*
Kathryn A. Reilly
Michael T. Williams
Judith P. Youngman
Galen D. Bellamy
Joel S. Neckers
Michael R. Krantz
Michael Baker
Carolyn M. Welter
370 17th Street, Suite 4500
Denver, CO 80202

*LLC; Texas Medicine Resources, LLP; Emergency Coverage, LLC; Florida Emergency Physicians Kang & Associates, M.D., LLC; Longhorn Emergency Medicine Associates, P.A.; Mid-Ohio Emergency Services LLC; ACS Primary Care Physicians – Southeast, P.C.; Fremont Emergency Services (Scherr), Ltd.; Texas Physician Resources, LLP; InPhyNet South Broward, LLC; Paragon Contracting Services, LLC; Paragon Emergency Services LLC; ACS Primary Care Physicians Southwest, P.A.; Southeastern Emergency Physicians of Memphis, LLC; Emergency Services of Oklahoma, P.C., CommonSpirit Health; Dignity Health; Dignity Community Care; Virginia Mason Franciscan Health; Catholic Health Initiatives Colorado; St. Luke's Health System Corporation d/b/a CHI St. Luke's Health; CHI Nebraska d/b/a CHI Health; and KentuckyOne Health, Inc.*

*/s/ Lee Van Voorhis*
Lee Van Voorhis
Christos Christodoulou
**WOMBLE BOND DICKINSON (US) LLP**
2001 K Street NW
Washington, DC 20006
Lee.VanVoorhis@wbd-us.com
Christos.Christodoulou@wbd-us.com
Telephone: (202) 857-4563

Jason C. Hicks
Ian R. Dickinson

**WHEELER TRIGG O'DONNELL LLP**
370 17th Street, Suite 4500
Denver, CO 80202
Telephone: (303) 244-1918
Email: reilly@wtotrial.com
youngman@wtotrial.com
bellamy@wtotrial.com
neckers@wtotrial.com
krantz@wtotrial.com
mbaker@wtotrial.com
welter@wtotrial.com

*Attorneys for Plaintiffs Corewell Health, Iowa Health System d/b/a UnityPoint, and Hospital Sisters Health System*

BRENNA BIRD
*Attorney General of Iowa*

*/s/ Eric H. Wessan*
Eric H. Wessan
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
eric.wessan@ag.iowa.gov

*Counsel for State University of Iowa*

*/s/ Michael E. Martínez*
Michael E. Martínez (Ill. Bar No. 6275452)
Lauren Norris Donahue (Ill. Bar No. 6294505)
Victoria S. Pereira Duarte (Ill. Bar No. 6336540)
**K&L GATES LLP**
70 W. Madison St., Suite 3300

**WOMBLE BOND DICKINSON (US) LLP**
201 E. Main Street, Suite P
Charlottesville, VA 22902
Jason.Hicks@wbd-us.com
Ian.Dickinson@wbd-us.com
Telephone: (202) 857-4536

Richard J.R. Raleigh, Jr.
**WOMBLE BOND DICKINSON (US) LLP**
200 Davis Cir SW
Suite 200
Huntsville, Alabama 35801
Richard.Raleigh@wbd-us.com
Telephone: (256) 834-8651

*Attorneys for Plaintiffs Phoebe Putney Memorial Hospital, Inc., Phoebe Sumter Medical Center, Inc., Phoebe Worth Medical Center, Inc., and Phoebe Physician Group, Inc.*

*/s/ Harvey J. Wolkoff*
Harvey J. Wolkoff
Aliki Sofis
Junesoo Seong
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
111 Huntington Avenue, Suite 520
Boston, MA 02199-3600
Telephone: (617) 712-7100
harveywolkoff@quinnemanuel.com
alikisofis@quinnemanuel.com

Adam B. Wolfson
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 S. Figueroa St., 10th Fl.
Chicago, IL 60602
Telephone: (312) 372-1121
Michael.Martinez@klgates.com
Lauren.Donahue@klgates.com
Victoria.Duarte@klgates.com

Michael J. Stortz (Cal. Bar No. 139386)
**K&L GATES LLP**
4 Embarcadero Ctr, Suite 1200
San Francisco, California 94111
Telephone: (415) 882-8200
Michael.Stortz@klgates.com

Richard W. Fields (D.C. Bar No. 418444)
Martin Cunniff (D.C. Bar No. 424219)
Edward Han (D.C. Bar No. 394515)
**FIELDS HAN & CUNNIFF PLLC**
1701 Pennsylvania Avenue NW, Suite 200
Washington, D.C.
Telephone: (833) 382-9816
fields@fhcfirm.com
martincunniff@fhc.com
edhan@fhcfirm.com

*Counsel for Bon Secours Mercy Health, Inc., University Health Systems of Eastern Carolina, Inc., Endeavor Health, INTEGRIS Health, Inc., Main Line Health, Inc., Medical University Hospital Authority, Mercy Health, Norton Healthcare, Inc., Providence St. Joseph Health; Roper St. Francis Healthcare, Sanford, Thomas Jefferson University, The Regents of the University of Michigan on behalf of University of Michigan Health, University of North Carolina Health Care System, University of Rochester,*

Los Angeles, CA 90017
Tel.: (213) 443-3000
adamwolfson@quinnemanuel.com

Samuel I. Waranch
Vinay S. Basti
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
295 Fifth Ave., 9th Fl.
New York, NY 10016
Tel.: (212) 849-7100
samuelwaranch@quinnemanuel.com
vinaybasti@quinnemanuel.com

*Attorneys for Plaintiffs Boston Children's Hospital et al.*

Cyril V. Smith
csmith@zuckerman.com
**ZUCKERMAN SPAEDER LLP**
100 E Pratt Street, Suite 2440
Baltimore, MD 21202
Telephone: (410) 332-0444
Facsimile: (410) 659-0436

Christopher R. MacColl
cmaccoll@zuckerman.com
**ZUCKERMAN SPAEDER LLP**
2100 L Street NW, Suite 400
Washington, D.C. 20037
Telephone: (202) 778-1800
Facsimile: (202) 822-8106

Michael R. Waxman
mwaxman@zuckerman.com
**ZUCKERMAN SPAEDER LLP**
483 Madison Avenue, 19th Floor
New York, NY 10022
Telephone: (212) 704-9600
Facsimile: (212) 704-4256

*and West Virginia United Health System, Inc.*

*/s/ Keith Butler*
Keith Butler
Cindy Reichline
Shira Liu
Fiona Tang
Taylor Keating
Ryan Roth
**BRS LLP**
2121 Avenue of the Stars
Suite 800
Los Angeles, CA 90067
Tel: (310) 295-9524
kbutler@brsllp.com
creichline@brsllp.com
sliu@brsllp.com
ftang@brsllp.com
tkeating@brsllp.com
rroth@brsllp.com

*Attorneys for Plaintiffs Allina Health System; Atlantic Health System; CentraCare Health System; Fairview Health Services; Mayo Clinic; RWJ Barnabas Health, Inc.; University of Florida Health Corporation; and The University of Chicago Medical Center*

*/s/ William Lavery*
William Lavery
Joseph Ostoyich
Danielle Morello
Jordan Passmore
Dorothea R. Allocca
Sung Shin
**CLIFFORD CHANCE US LLP**
2001 K Street NW
Washington, DC 20006

*Attorneys for Plaintiffs Memorial Hospital for Cancer and Allied Diseases, Memorial Sloan-Kettering Cancer Center, and South Shore Hospital, Inc.*

*/s/ Steven Sklaver*
Steven Sklaver
Glenn C. Bridgman
Molly A. Karlin
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ssklaver@susmangodfrey.com
gbridgman@susmangodfrey.com
mkarlin@susmangodfrey.com

Tel: (202) 912-5000
william.lavery@cliffordchance.com
joseph.ostoyich@cliffordchance.com
danielle.morello@cliffordchance.com
jordan.passmore@cliffordchance.com
dodi.allocca@cliffordchance.com
sung.shin@cliffordchance.com

Sanaz Payandeh
**CLIFFORD CHANCE US LLP**
Two Manhattan West
375 9th Avenue
New York, New York 10001
Tel: (212) 878-8000
sanaz.payandeh@cliffordchance.com

*Attorneys for Plaintiffs Mount Nittany Health System and Weill Cornell Medicine*

Tanner Laiche
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
tlaiche@susmangodfrey.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 9, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: November 9, 2026

*/s/ Ryan P. Phair*
Ryan P. Phair